**"Complaint for Claims for the Detinue Action for the Return of Marital Property to the Plaintiff and Law in Support"**

## TABLE OF CONTENTS

. LEGAL AUTHORITIES THAT ARE APPLIED TO, IN THIS CASE . . . . . . . . . . . . . . . . (1)

"U.S. Supreme Court
  Erie Railroad Co. v. Tompkins, 304 U.S. 64(1938)" . . . . . . . . . . . . . . . . . . . (2)

"RASATO v. OFFICE OF PERSONNEL MANAGEMENT". . . . . . . . . . . . . . . . . (3)

. FEDERAL LAWS THAT ARE APPLIED TO, IN THIS CASE . . . . . . . . . . . . . . . . . (5)

. MARYLAND LAWS AND RULES THAT ARE APPLIED TO, IN THIS CASE . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (23)

. Maryland Rules, Title 10 Guardians and other Fiduciaries
  Chapter 700. Fiduciary Estates Including Guardian of the Property that are
  Applied to, in this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .(30)

. Maryland Rules, Estates and Trusts, Title 13, that is Applied to, in this Case
  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .(31)

CHOO WASHBURN
Plaintiff

v.

COURT ORDERED BENEFITS SECTION MANAGER (OPM)
Defendant

Choo washburn April 29, 2021

"U.S. Supreme Court
Erie Railroad Co. v. Tompkins, 304 U.S. 64(1938)
Erie Railroad Co. v. Tompkins No.367
Argued January 31, 1938
Decided April 25, 1938
304 U.S. 64
Syllabus"

"1. The liability of a railroad company for injury caused by negligent operation of its train to a pedestrian on a much-used, beaten path on its right-of-way along and near the rails depends, in the absence of a federal or state statute, upon the unwritten law of the state where the accident occurred. Pp. 304 U.S. 71 et seq.

2.A federal court exercising jurisdiction over such a case on the ground of diversity of citizenship, is not free to treat this question as one of so – called "general law", but must apply the state law as declared by the highest state court. Swift v. Tyson, 16 pet. 1, overruled. *Id*.
3.There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a State whether they be local in their nature or "general", whether they be commercial law or a part of the law of torts. And no clause in the constitution purports to confer such a power upon the federal courts. Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its legislature in a statute or by its highest court in a decision is not a matter of federal concern. P. 304 U.S. 78.

4.In disapproving the doctrine of Swift v. Tyson, the court does not hold unconstitutional Section 34 of the Federal Judiciary Act of 1789 or any other Act of Congress. It merely declares that, by applying the doctrine of that case, rights which are reserved by the constitution to the several states have been invaded. P.304 U.S. 79.

90 F. 2d 603 reversed
Page 304 U.S. 65
Page 304 U.S. 65

CERTIORARI, 302 U.S. 671, to review the affirmance of a judgment recovered against the railroad company in an action for personal injuries. The accident was in Pennsylvania. The action was in New York, jurisdiction being used on diversity of citizenship Page 304 U.S. 69"

"ROSATO v. OFFICE OF PERSONNEL MANAGEMENT"

"United States Court of Appeals, Federal Circuit
No.97-3332
Decided: January 25, 1999
Circuit Judges: Honorable Newman, Plager, and Clevenger"

"Federal law contemplates that a federal employee may yield such benefits to a spouse in divorce proceedings. In particular, the law provides that:

"payments under this subchapter which would otherwise be made to an Employee, Member, or annuitant based on service of that individual shall Paid(in whole or in part) by the office to another person if and to the extent Expressly provided for in the terms of –
(A) Any court decree of divorce, annulment, or legal separation, or the Terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal Separation. 5 U.S.C.   8345(j)(1)(1994)"

"It is well-settled that section 8345(j)(1) authorizes OPM to comply with an appropriate court decree of divorce or property settlement of an employee who is entitled to payments pursuant to the Civil Service Retirement System." Donlan v. Office of Personnel Management, 907 F. 2d 1132, 1133(Fed. Cir.1990). To implement this statute, OPM has promulgated regulations that define when an order of divorce or property settlement is a "court order acceptable for processing." See 5 C.F.R.   838.101(b)(1); 838.103; 838.301 – 838.306(1997). The pertinent regulations specify that, to qualify for processing by OPM, the court must identify the retirement system under which the annuity exists and expressly state the portion to which the former spouse is entitled under the court order. See 5 C.F.R. 838.303; See also 5 C.F.R.   838.305(portion must be stated as a fixed

amount, percentage, or fraction, or formula calculable solely from face of court order).

In the event OPM receives an application from a former spouse for benefits pursuant to a divorce decree, and the application fails to comply with the regulations defining an order acceptable for processing, OPM notifies the applicant of the specific reasons for disapproving the application. See 5 C.F.R.   838.424(1997). The applicant then has an opportunity to cure any error in the application and to reapply for the benefits.

""The pertinent regulation also state that "OPM must comply with court orders, decrees, or court-approved property settlement agreements." 5 C.F.R.   838.101(a)(1). Moreover, OPM's regulations direct that:

> "In executing court orders under this part, OPM must honor the clear instructions of the court. Instructions must be specific and unambiguous. OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws. In carrying out the Court's instructions, OPM performs purely ministerial actions in accordance with these regulations.""

"Disagreement between the parties concerning the validity or the provisions of any court order must be resolved by the court. 5 C.F.R.   838.101(a)(2)(emphasis supplied).

Federal law thus provides the method whereby divorcing spouses may divide their entitlements to federal employee benefits. The statute and rules are clear: OPM will not look behind a state court divorce decree or property settlement order to ascertain the intent of the parties. So long as the decree or order complies with the specificity requirements of the regulations, which implement the statutory requirement that the decree or order "expressly" direct payment to another than the employee, OPM will follow its prescriptions. An order lacking the requisite specificity will be rejected by OPM, with an opportunity for the applicant to cure any indicated error."

**FEDERAL LAWS THAT ARE APPLIED TO, IN THIS CASE:**

"5 C.F.R.   838.101 – Purpose and Scope"

"(a)

(1) This part regulates the Office of Personnel Management's handling of court orders affecting the Civil Service Retirement System(CSRS) or the Federal Employees Retirement System(FERS), both of which are administered by the Office of Personnel Management(OPM). Generally, OPM must comply with court orders, decrees, or court-approved property settlement agreements in connection with divorces, annulments of marriage, or legal separations of employees, Members, or retirees that award a portion of the former employee's or Member's retirement benefits or a survivor annuity to a former spouse.

(2) In executing court orders under this part, OPM must honor the clear instructions of the court. Instructions must be specific and unambiguous. OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws. In carrying out the court's instructions, OPM performs purely ministerial actions in accordance with these regulations. Disagreement between the parties concerning the validity or the provisions of any court order must be resolved by the court.

(b) This part prescribes –

(1) The requirements that a court order must meet to be acceptable for processing under this part;

(2) The procedures that a former spouse or child abuse creditor must follow when applying for benefits based on a court order under Sections 8341(h), 8345(j), 8445 or 8467 of title 5, United States Code;
(3) The procedures that OPM will follow in honoring court orders and in making payments to the former spouse or child abuse creditor; and

(4) The effect of certain words and phrases commonly used in court orders affecting retirement benefits.
(c)

(1) Subparts A through I of this part apply only to court orders received by OPM on or after January 1, 1993.

(2)Subpart J of this part applies only to court orders received by OPM before January 1, 1993.

(3) Subpart K of this part applies only to court orders received by OPM on or after October 14, 1994.

(d) This part has no application to the Thrift Savings Plan described in Subchapter III of chapter 84 of title 5, United States Code."


**"5 C F R   838.303 – Expressly dividing employee annuity."**

"(a)A Court order directed at employee annuity is not a Court Order Acceptable for Processing unless it expressly divides the employee annuity as provided in paragraph(b) of this section.

(b) To expressly divide employee annuity as required by paragraph (a) of this section the court order must –
    (1) identify the retirement system using terms that are sufficient to identify the Retirement system as explained in 838.611; and

    (2) Expressly state that the former spouse is entitled to a portion of the employee annuity using terms that are sufficient to identify the employee annuity as explained in    838.612."


**"5 C.F.R.    838.1004 – Qualifying Court Orders"**

"(a) A former spouse is entitled to a portion of an employee's retirement benefit only to the extent that the division of retirement benefits is expressly provided for by the court order. The court order must divide employee retirement benefits,

award a payment from employee retirement benefits, or award a former spouse annuity.

(b) The court order must state the former spouse's share as a fixed amount, a percentage or a fraction of the annuity, or by a formula that does not contain any variables whose value is not readily ascertainable from the face of the order or normal OPM files.

(c)

(1) For purposes of payments from employee retirement benefits, **OPM will review court orders as a whole to determine whether the language of the order shows an intent by the court that the former spouse should receive a portion of the employee's retirement benefits directly from the United States**.

(i) Orders that direct or imply that OPM is to make payment of a portion of employee retirement benefits, or are neutral about the source of payment, will be honored unless the retiree can demonstrate that the order is invalid in accordance with    838.1009.

(ii) Orders that specifically direct the retiree to pay a portion of employee retirement benefits to a former spouse (and do not contain language to show the court intends payment from the Civil Service Retirement System) will be honored unless the retiree objects to direct payment by OPM within the 30 – day notice period prescribed in    838. 1008, but will not be honored even if the retiree raises only a general objection to payment by OPM within that 30 – day notice period.

(2) For purposes of awarding a former spouse annuity, the court order must either state the former spouse's entitlement to a survivor annuity or direct an employee, Member, or retiree to provide a former spouse annuity.

(e)

(1) For purposes of awarding, increasing, reducing, or eliminating a former spouse survivor annuity, or explaining, interpreting, or clarifying a court order that awards, increases, reduces or eliminates a former spouse annuity, the court order must be –

(i)Issued on a day prior to the date of retirement or date of death of the employee; or

(ii) <u>The first order dividing the marital property of the retiree and the former spouse</u>.

(2)In paragraph (e)(1) of this section, "<u>date of retirement" means</u> the later of -
   (i) <u>The date that the employee files an application for retirement</u>; or
   (ii) The effective commencing date for the employee's annuity.

(3) In paragraphs (e)(1) and (e)(4) of this section "issued" means actually filed with the clerk of the court, and does not mean the effective date of a retroactive court order that is effective prior to the date when actually filed with the clerk of the court (e.g., a court order issued nunc pro tunc).

(4)
   (i) In paragraph (e)(1)(ii) of this section, the "<u>first order dividing, the marital property of the retiree and the former spouse" means</u> –

   (A)<u>The original written order that first ends</u> (or first documents an oral order ending) <u>the marriage if the court divides any marital property</u> (or approves a property settlement agreement that divides any marital property) <u>in that order, or in any order issued before that order</u>; or

   (B) The original written order issued after the marriage has been terminated in which the court first divides any marital property (or first approves a property settlement agreement that divides any marital property) if no marital property has been divided prior to the issuance of that order.

   (ii) <u>The first order dividing marital property does not include</u> –

   (A)Any court order that amends, explains, clarifies, or interprets the original written order regardless of the effective date of the court order making the amendment, explanation, clarification, or interpretation; or

   (B) Any court order issued under reserved jurisdiction or any other court orders issued subsequent to the original written order that divide any

marital property regardless of the effective date of the court order."

**"5 U. S. Code   8341. Survivor annuities**

"(b)

(1) Except as provided in paragraph (2) of this subsection, if an employee or Member dies after having retired under this subchapter and is survived by a widow or widower, the widow or widower is entitled to an annuity equal to

55 percent (or 50 percent if retired before October 11, 1962) of an annuity computed under section 8339 (a) – (i), (n), (p), (q), (r), and (s) as may apply with respect to the annuitant, or of such portion thereof as may have been designated for this purpose under section 8339(j)(1) of this title, unless the right to a survivor annuity was waived under such section 8339(j)(1) or, in the case of remarriage, the employee or Member did not file an election under section 8339(j)(5)(C) or section 8339(k)(2) of this title, as the case may be.

(2) If an annuitant –
  (A) …
  (B) who elected a reduced annuity provided in paragraph (2) of section
  8339(k) of this title;
dies and is survived by a widow or widower, the widow, widower is entitled to an annuity in an amount which would have been paid had the annuitant been married to the widow or widower at the time of retirement.
(3) …

(4) Notwithstanding the preceding provisions of this subsection, the annuity payable under this subsection to the widow or widower of a retired employee or Member may not exceed the difference between –

(A) The amount which would otherwise be payable to such widow or widower under this subsection (determined without regard to any waiver or designation under section 8339 (j)(1) of this title or a prior similar provision of law), and

(B) The amount of the survivor annuity payable to any former spouse of such

employee or Member under subsection (h) of this section."

"(c) the annuity of a survivor named under section 8339 (k)(1) of this title is 55 percent of the reduced annuity of the retired employee or Member. The annuity of the survivor commences on the day after the retired employee or Member dies. This annuity and the right thereto terminate on the last day of the month before the survivor dies."

"(d) if an employee or Member dies after completing at least 18 months of civilian service, his widow or widower is entitled to an annuity equal to 55 percent of an annuity computed under section 8339 (a) – (f), (i), (n), (p), (q), (r), and (s) as may apply with respect to the employee or Member, except that, in the computation of the annuity under such section, the annuity of the employee or Member shall be at least the smaller of –

  (1)...
    (A) ...
    (B) the amount of the survivor annuity payable to any former spouse of such
    employee or Member under subsection (h) of this section.
The annuity of the widow or widower commences on the day after the employee or Member dies. This annuity and the right thereto terminate on the last day of the month before the widow or widower –
  (i) dies; or
    (ii) except as provided in subsection (k), remarries before becoming 55 years
    of age."
"(h)
  (1) Subject to paragraphs (2) through (5) of this subsection, a former spouse of a deceased employee, Member, annuitant, or former Member who was separated from the service with title to a deferred annuity under section 8338 (b) of this title is entitled to a survivor annuity under this subsection, if and to the extent expressly provided for in an election under section 8339 (j)(3) of this title, or in the terms of any decree of divorce or annulment or any court order or court approved property settlement agreement incident to such decree.

  (4) For purposes of this subchapter, a modification in a decree, order, agreement, or election referred to in paragraph (1) of this subsection shall not

be effective –
    (A) If such modification is made after the retirement or death of the employee or Member concerned, and
    (B) To the extent that such modification involves an annuity under this subsection.

(5) For purposes of this subchapter, a decree, order, agreement, or election referred to in paragraph (1) of this subsection shall NOT be effective, in the case of a former spouse, to the extent that it is inconsistent with any joint designation or waiver previously executed with respect to such former spouse under section 8339(j)(1) of this title or a similar prior provision of law.

(6) Any payment under this subsection to a person bars recovery by any Other person."

(k)
    (1) – Subsections (b)(3)(B), (d)(ii), and (h)(3)(B)(i) (to the extent that they provide for termination of a survivor annuity because of a remarriage before age 55) shall NOT apply if the widow, widower, or former spouse was married for at least 30 years to the individual on whose service the survivor annuity is based."

**"5 U. S. Code   8339 – Computation of Annuity"**

"(j)
    (1) The annuity computed under subsections (a) – (i), (n), (q), (r), and (s) (or a portion of the annuity, if jointly designated for this purpose by the employee or Member and the spouse of the employee or Member under procedures prescribed by the Office of Personnel Management for an employee or Member who is married at the time of retiring under this subchapter is reduced as provided in paragraph (4) of this subsection in order to provide a survivor annuity for the spouse under section 8341 (b) of this title, unless the employee or Member and the spouse jointly waive the spouse's right to a survivor annuity in a written election filed with the Office at the time that the employee or Member retires. Each such election shall be made in accordance with such requirements as the Office shall, by regulation,

prescribe, and <u>shall be irrevocable</u>.  The Office shall provide, by regulation, that an employee or Member may waive the survivor annuity without the spouse's consent if the employee or Member establishes to the satisfaction of the Office —

(A) that the spouse's whereabouts cannot be determined, or
(B) that, due to exceptional circumstances, requiring the employee or Member to seek the spouse's consent would otherwise be inappropriate.

(2) If an employee or Member has a former spouse who is entitled to a survivor Annuity as provided in section 8341(h) of this title, the annuity of the Employee or Member computed under subsections (a) – (i), (n), (q), (r), and (s) (or any designated portion of the annuity;, in the event that the former spouse is entitled to less than 55 percent of the employee or Member's annuity) Is reduced as provided in paragraph (4) of this subsection.

(3) An employee or Member who has a former spouse may elect, under Procedures prescribed by the Office, to have the annuity computed under Subsections (a) – (i), (n), (q), (r), and (s) or a portion thereof reduced as Provided in paragraph (4) of this subsection in order to provide a survivor Annuity for such former spouse under section 8341 (h) of this title, unless all Rights to survivor benefits for such former spouse under this subchapter Based on marriage to such employee or Member were waived under paragraph (1) of this subsection. An election under this paragraph shall be made at the time of retirement or, is later, within 2 years after the date on which the marriage of the former spouse to the employee or Member is dissolved, subject to a deposit in the Fund by the retired employee or Member Member of an amount determined by the Office,... The reduction, which shall Be effective on the same date as the election under this paragraph, shall be Permanent and unaffected by any future termination of the entitlement of The former spouse. Such reduction shall be independent of and in addition to the reduction required under the first sentence of this paragraph. An election under this paragraph —

(A) shall **not** be effective to the extent that it —

(i) conflicts with —

(I)any court order or decree referred to in subsection (h)(1) of section 8341 of this title, which was issued before the date of such election; or
(II) any agreement referred to such subsection which was entered into Before such date; or...
(B) shall not be effective, in the case of an employee or Member who is then married, unless it is made with the spouse's written consent."...

(5)
(B) Any reduction in an annuity for the purpose of providing a survivor annuity For a former spouse of a retired employee or Member shall be terminated for each full month after the former spouse remarries before reaching age 55 or dies..."

**"Spouse Equity Act"**

"Law"

"The Civil Service Retirement Spouse Equity Act of 1984(Public Law 98 – 615) was enacted on November 8, 1984. Under this act, as amended, certain former spouses of Federal employees, former employees, and annuitants may qualify to enroll in a health benefits plan under the FEHB Program.

Eligibility
A former spouse is eligible to enroll under **Spouse Equity Provision** if:
. the enrollee and the former spouse were divorced during the enrollee's Employment or receipt of annuity,
. he/she was covered as a family member under an FEHB enrollment at Least one day during the 18 months before the marriage ended (note: this Requirement is also met when both enrollee and the former spouse have FEHB enrollments);
. he/she is entitled to a portion of the enrollee's annuity or to a former Spouse survivor annuity; and
. he/she has not remarried before age 55.

The enrollee's employing office will determine whether his/her former spouse is eligible to enroll.

Loss of Coverage as a Family Member

The former spouse loses coverage as a family member upon divorce, subject to a 31 – day extension of coverage. However, his/her enrollment under the Spouse Equity Provisions may not begin for several months after the divorce, depending on how long takes to establish eligibility. To avoid a gap in coverage for this period, the former spouse may:

. Continue FEHB coverage under the Temporary Continuation of Coverage (TCC) Provision of the FEHB law.

If the former spouse will seek coverage under Spouse Equity Provisions, it is advisable to stay with the same plan.

If the former spouse acts promptly, he/she may request retroactive enrollment once the application for enrollment under the Spouse Equity Provisions has been approved. For enrollment to be retroactive, the employing office must receive an appropriate request and satisfactory  proof of eligibility within 60 days after the date of divorce.

Enrollment

Enrolling under the Spouse Equity Provisions is a three – step process.

First, the former spouse must apply to enroll within the required time limit.

Second, he/she must establish eligibility to enroll.

Third, actual enrollment can take place only after the first two steps have been completed.

Application to Enroll

A former spouse's application to enroll can either be a completed Health Benefits Election Form (SF 2809) or a written notice of intent to apply for health benefits. His/her own name, date of birth, and Social Security number are entered on Part A of the SF 2809. The enrollee's name and date of birth must be entered in the Remarks section.

Time Limit

A former spouse must apply for health benefits coverage within:

. 60 days after the marriage ends;

. 60 days after the date of OPM's notice of his/her eligibility to enroll based On a qualifying court order awarding entitlement to a portion of the Enrollee's future annuity (see section 5A5. 1 – 2 of the CSRS/FERS

Handbook for Personnel and Payroll Offices), or to a former spouse Survivor annuity;"

**"5 C F R   838.103 – Definitions**."

. "Civil Service Retirement System or CSRS means the retirement system for Federal employees described in subchapter III of chapter 83 of title 5, United States Code.

. Composite retirement annuity means the annuity computed when a phased retiree attains full retirement status.

. Court order means any judgment or property settlement issued by or approved by any court of any state, the District of Columbia, the Common wealth of Puerto Rico, Guam, the Northern Mariana Islands, or the Virgin Islands, or any Indian Court in connection with, or the incident to, the divorce, annulment of marriage, or legal separation of a Federal employee or retiree.

. Court Order Acceptable for Processing means a court order as defined in this section that meets the requirements of subpart C of this part to affect an employee annuity, Subpart E of this part to affect a refund of employee contributions, or subpart H of this part to award a former spouse survivor annuity.

. Employee means an employee or Member covered by CSRS or FERS and a phased retiree as defined under this part.

. Employee annuity means the recurring payments under CSRS or FERS made to a retiree, the recurring phased retirement annuity payments under CSRS or FERS made to a phased retiree in phased retirement status, and recurring composite retirement annuity payments under CSRS or FERS made to a phased retiree when he or she attains full retirement status. Employee annuity does not include payments of accrued and unpaid annuity after the death of a retiree or phased retiree under 5 U. S. C. 8342(g) or 8424(h).

. ERISA means the Employees Retirement Income Security Act, 29 U.S.C. 1001 et seq.

. Federal Employees Retirement System or FERS means the retirement system for Federal employees described in chapter 84 of title 5, United States code.

. Former Spouse means (1) in connection with a court order affecting an employee annuity or a refund of employee contributions, a living person whose marriage to an employee has been subject to a divorce, annulment of marriage, or legal separation resulting in a court order, or (2) in connection with a court order awarding a former spouse survivor annuity, a living person who was married for at least 9 months to an employee or retiree who performed at least 18 months of civilian service covered by CSRS or who performed at least 18 months of civilian service creditable under FERS, and whose marriage to the employee of retiree was terminated prior to the death of the employee or retiree.

. Former Spouse Survivor annuity means a recurring benefit under CSRS or FERS, or the basic employee death benefit under FERS as described in part 843 of this chapter, that is payable to a former spouse after the employee's or retiree's death.

. Gross annuity means the amount of monthly annuity payable to a retiree or phased retiree after reducing the self-only annuity to provide survivor annuity benefits, if any, but before any other deduction. Unless the court order expressly provides otherwise, gross annuity also includes any lump-sum payments made to the retiree under 5 U. S. C. 8343a or 8420a.

. Member means a Member of congress covered by CSRS or FERS.

. Net annuity means the amount of monthly annuity payable to a retiree or phased retiree after deducting from the gross annuity any amounts that are –
(1) owed by the retiree to the United States;
(2) Deducted for health benefits premiums under 5 U. S. C. 8906 and 5 C F R 891.401 and 891.402;
(3) Deducted for life insurance premiums under 5 U.S.C.8714a(d);
(4) Deducted for Medicare Premiums;
(5) Properly withheld for Federal Income tax purposes, if the amounts withheld are not greater than they would be if the retiree claimed all dependents he or she was entitled to claim;

(6) properly withheld for state income tax purposes, if the amounts withheld are not greater than they would be if the retiree claimed all dependents he or she was entitled to claim; or

(7) Already payable to another person based on a court order acceptable for processing or a child abuse judgment enforcement order.

Unless the court order expressly provides otherwise, net annuity also includes any lump-sum payments made to the retiree under 5 U.S.C. 8343a or 8420a.

Reduction to provide survivor benefits means the reduction required by section 8339(j)(4) or section 8419(a) of title 5, United States Code.

. Phased retiree means retirement – eligible employee who - ,..

. Reduction to provide survivor benefits means the reduction required by section 8339(j)(4) or section 8419(a) of title 5, United States Code.

. Refund of employee contributions means a payment of the lump sum credit to a separated employee under section 8342(a) or section 8424(a) of title 5, United States Code. Refund of employee contributions does not include lump-sum payments made under section 8342(c) through (f) or section 8424 (d) through (g) of title 5, United States Code.

. Retiree means a former employee, including a <u>phased retiree who has entered full retirement status</u>, or a Member who is receiving recurring payments under CSRS or FERS based on his or her service as an employee or Member. Retiree does not include an employee receiving a phased retirement annuity or a person receiving an annuity only as a current spouse, former spouse, child, or person with an insurable interest.

. Retirement means a retirement other than a phased retirement.

. Self-only annuity means the recurring unreduced payments under CSRS or FERS to a retiree with no survivor annuity payable to anyone. Self-only annuity also includes the recurring unreduced phased retirement annuity payments under CSRS or FERS to a phased retiree before any other deduction. Unless the court

order expressly provides otherwise, self-only annuity also includes any lump-sum payments made to the retiree under 5 U.S.C. 8343a or 8420a.

. Separated employee means a former employee or Member who has separated from a position in the Federal Government covered by CSRS and FERS under subpart B of part 831 of this chapter or subpart A of part 842 of this chapter, respectively, and is not currently employed in such a position, and who is not a retiree."

**"8 U. S. Code   1324c – Penalties for document fraud"**

"(a) ACTIVITIES PROHIBITED
It is unlawful for any person or entity knowingly –

to forge, counterfeit, alter, or falsely make any document for the purpose of satisfying a requirement of this chapter or to obtain a benefit under this chapter,

to use, attempt to use, process, obtain, accept, or receive or to provide any forged, counterfeit, altered, or falsely made documents in order to satisfy any requirement of this chapter, or to obtain a benefit under this chapter,

to use or attempt to use or to provide or attempt to provide any document lawfully issued to or with respect to a person other than the possessor (including a deceased individual) for the purpose of satisfying a requirement of this chapter or obtaining a benefit under this chapter.

to accept or receive or to provide any document lawfully issued to or with respect to a person other than the possessor(including a deceased individual) for the purpose of complying with section 1324a(b) of this title or obtaining a benefit under this chapter, or
to prepare, file, or assist another in preparing or filing, any application for benefits under this chapter, or any document required under this chapter, or any document submitted in connection with such application or document, with knowledge or in reckless disregard of the fact that such

application or document was falsely made or, in whole or in part, does not relate to the person on whose behalf It was or is being submitted, or

(2) Hearing
  (A) In general
Before imposing an order described in paragraph (3) against a person or entity under this subsection for a violation of subsection (a), the Attorney General shall provide the person or entity with notice and, upon request made within a reasonable time (of not less than 30 days, as established by the Attorney General) of the date of the notice, a hearing respecting the violation.

  (B) Conduct of hearing
Any hearing so requested shall be conducted before an administrative law Judge. The hearing shall be conducted in accordance with the requirements of section 554 of title 5. The hearing shall be held at the nearest practicable place to the place where the person or entity resides or of the place where the alleged violation occurred. If no hearing is so requested, the Attorney General's Imposition of the order shall constitute a final and unappealable order.

  (C) Issuance of orders
If the administrative law judge determines, upon the preponderance of the evidence received, that a person or entity has violated subsection (a), the administrative law judge shall state his findings of fact and issue and cause to be served on such person or entity an order described in paragraph (3).

(3) CEASE AND DESIST ORDER WITH CIVIL MONEY PENALTY
With respect to a violation of subsection (a), the order under this subsection shall require the person or entity to cease and desist from such violations and to pay a civil penalty in an amount of –

  (A) not less than $250 and not more than $2,000 for each document that is the subject of a violation under subsection (a), or
  (B) in the case of a person or entity previously subject to an order under this paragraph, not less than $2,000 and not more than $5,000 for each document that is the subject of a violation under subsection (a)….

  (f) FALSELY MAKE

For purposes of this section, the term "falsely make" means to prepare or provide an application or document, with knowledge or in reckless disregard of the fact that the application or document contains a false, fictitious, or fraudulent statement or material representation, or has no basis in law or fact, or otherwise fails to state a fact which is material to the purpose for which it was submitted."

"Common examples of fake legal documents include: tax returns; sales receipts…"

**"18 U. S. Code   1030.  Fraud and related activity in connection with computers.**

(c) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss"

"The Computer Fraud and Abuse Act(CFAA), 18 U.S.C. 1030, outlaws conduct that victimizes computer system…. It protects federal computers, bank computers, and computers connected to the internet. It shields them from trespassing, threats, damage, espionage, and from being completely used as instruments of fraud."

"Violation
Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violation to obtain compensatory damages and injunctive relief or other equitable relief."

**"The Federal Computer Fraud and Abuse Act("CFAA"),**

**18 U.S.C.   1030, is the primary statutory mechanism for prosecuting cyber crime, and provides for both criminal and civil penalties.
The CFAA prohibits**: …
(3) unauthorized access to a non-public computer used by the United States government; (4) knowingly accessing a protected computer without authorization with the intent to defraud; … (6) trafficking in passwords; …
Subsection 1030 (g) creates a civil causes of action for victims of these crimes.
Subsections 1030 (i) and (j) authorize forfeiture of tainted property."
"The Computer Fraud and Abuse Act(CFAA), 18 U.S.C. 1030, outlaws conduct that victimizes computer systems. It is a cyber security law. It protects federal computers, bank computers, and computers connected to the internet. It shields

them from trespassing threats, damage, espionage, and from being corruptly used as instruments of fraud. It is not a comprehensive provision, but instead it fills cracks and gaps in the protection afforded by other federal criminal laws. This is a brief sketch of CFAA and some of its federal statutory companions, including the amendments found in the Identity Theft Enforcement and Restitution Act, P.L. 110 – 326, 122 Stat. 3560 (2008).

In their present form, the seven paragraphs of Subsection 1030 (a) outlaw Computer trespassing (e.g., hacking) in a government computer, 18 U.S.C. 1030(a)(3); computer trespassing (e.g., hacking) resulting in exposure to certain governmental, credit, financial, or computer – housed information,… " "Hacking(i.e. unauthorized access) Yes, hacking could violate, among other statutes, the CFAA, 18 U.S.C. 1030 (a)(1)….(3)(government computers, imprisonment up to one year), and (4) (accessing to defraud, imprisonment up to five years)."

"Identity theft or identity fraud (e. g. in connection with access devices) Yes, Identity theft could be charged under the federal identity theft statute, 18 U.S.C. 1028, as well as numerous state laws.  Identity Theft, 18 U.S.C.   1028, which criminalizes conduct involving fraudulent identity documents or the unlawful use of identity information. It was used in United States v. Sutcliffe, 505 F. 3d 944 (9th Cir. 2007), to prosecute an individual for posting stolen social security numbers to a website."

"**18 U.S. Code   1030. Fraud and related activity in connection with Computers**
   (a) Whoever –
      (2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains –
      (B) information from any department or agency of the United States; or
      (C) information from any protected computer;
      (3) intentionally, without authorization to access any nonpublic computer of a department or agency of the United States, accesses such a computer of that department or agency that is exclusively for the use of the Government of the United States or, in the case of a computer not exclusively for such use, it used by or for the Government of the United States and such conduct affects that use by or for the Government of the United States;

(4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such, use is not more than $5,000 in any 1 – year period;

(5)

(C) intentionally accesses a protected computer without authorization, and as a result of such, conduct, causes damage and loss.

(6) knowingly and with intent to defraud traffics (as defined in section 1029) in any password or similar information through which a computer may be accessed without authorization, if –

(B) such computer is used by or for the Government of the United States;

(b) Whoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section.

(c) The punishment for an offense under Subsection (a) or (b) of this section is –

(4)

(A) except as provided in subparagraphs (E) and (F), a fine under this title, imprisonment for not more than 5 years, or both, in the case of –

(i)

(II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;

(g)  Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in Subclauses  (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware."

**MARYLAND LAWS AND RULES THAT ARE APPLIED TO, IN THIS CASE:**

**"FINANCIAL CRIMES AGAINST THE ELDERLY 2018 LEGISLATION"**
**the Maryland State "Bill Number: H.B. 956", "Bill Summary":**

> "Authorizes a victim of a certain offense to bring a civil action for treble
> damages against a certain person; establishes that a certain criminal
> conviction is not a prerequisite for maintenance of an action under the Act;
> provides for the recovery of reasonable attorney's fees and court cost in an
> action brought under the Act; and applies the Act prospectively."

**MARYLAND LAWS THAT ARE APPLIED TO, IN THIS CASE:**

**2014 Maryland Code Criminal Law**
**Title 8 – Fraud and Related Crimes**
**Subtitle 8 – Financial Crimes Against Vulnerable Adults**

**8 – 801. Exploitation of Vulnerable Adults Prohibited**
Universal Citation: MD Criminal Law Code   8 – 801(2014)

(a) Definitions. –
(1) In this section the following words have the meanings indicated.
(2) "Deception" has the meaning stated in   7 – 101 of this article.
(3) "Deprive" has the meaning stated in   7 – 101 of this article.
(4) "obtain" has the meaning stated in   7 – 101 of this article.
(5) "property" has the meaning stated in   7 – 101 of this article.
(6) (i) "undue influence" means domination and influence amounting to force and
coercion exercised by another person to such an extent that **a vulnerable adult or
an individual at least 68 years old was prevented from exercising free judgment
and choice.**
(ii) "undue influence" does not include the normal influence that one member of
a family has over another member of the family.
(7) "value" has the meaning stated in   7 – 103 of this article.
(8) "Vulnerable adult" has the meaning stated in   3 – 604 of this article.

**(b) Prohibited.** –

(1) A person may not knowingly and willfully obtain by deception, intimidation, or undue influence the property of an individual that the person knows or reasonably should know is a vulnerable adult with intent to deprive the vulnerable adult of the vulnerable adult's property.

**(2) A person may not knowingly and willfully obtain by deception, intimidation, or undue influence the property of an individual that the person knows or reasonably should know is at least 68 years old, with intent to deprive the individual of the individual's property**.

**(c) Penalty**. –
(1)(i) A person convicted of a violation of this section when the value of the property is at least $1,000 but less than $10,000 is guilty of a felony and:
1. is subject to imprisonment not exceeding 10 years or a fine not exceeding $10,000 or both; and
**2. shall restore the property taken or its value to the owner, or, if the owner is deceased, restore the property or its value to the owner's estate**.

(ii) A person convicted of a violation of this section when the value of the property is at least $10,000 but less than $100,000 is guilty of a felony and:
1.is subject to imprisonment not exceeding 15 years or a fine not exceeding $15,000 or both; and
**2.Shall restore the property taken or its value to the owner, or, if the owner is deceased, restore the property or its value to the owner's estate**.

(iii) A person convicted of a violation of this section when the value of the property is $100,000 or more is guilty of a felony and:
1.is subject to imprisonment not exceeding 25 years or a fine not exceeding $25,000 or both; and
**2.Shall restore the property taken or its value to the owner, or, if the owner is deceased, restore the property or its value to the owner's estate**.

(2) A person convicted of a violation of this section when the value of the property is less than $1,000 is guilty of a misdemeanor and:
(i) is subject to imprisonment not exceeding 18 months or a fine not exceeding $500 or both; and

**(ii) Shall restore the property taken or its value to the owner, or, if the owner is deceased, restore the property or its value to the owner's estate**.

(d) Sentencing. – A sentence imposed under this section may be separate from and consecutive to or concurrent with a sentence for any crime based on the act or acts establishing the violation of this section.

(e) Disqualification. –
(1) If a defendant fails to restore fully the property taken or its value as ordered under subsection (c) of this section, the defendant is disqualified, to the extent of the defendant's failure to restore the property or its value, from inheriting, taking, enjoying, receiving, or otherwise benefiting from the estate, insurance proceeds, or property of the victim of the offense, whether by operation of law or pursuant to a legal document executed or entered into by the victim before the defendant shall have been convicted under this section.
(2) The defendant has the burden of proof with respect to establishing under Paragraph
**(1) of this subsection that the defendant has fully restored the property taken or its value**.

**(f) Construction of Section**. – This Section may not be construed to impose criminal liability on a person who, at the request of the victim of the offense, the victim's family, or the court appointed guardian of the victim, has made a good faith effort to assist the victim in the management of or transfer of the victim's property.

**"2017 Maryland Code Criminal Law, Title 7 – Theft and Related Crimes"**
**"Subtitle 1 – Crimes Involving Theft, Section 7 -104. General theft Provisions. Universal Citation: MD Criminal Law Section 7-104(2017)"**

"(a) Unauthorized control over property. – A person may not willfully or knowingly obtain or exert unauthorized control over property, if the person:

(1) Intends to deprive the owner of the property;
(2) Willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
(3) Uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

(b)  Unauthorized control over property -- By deception. --
A person may not obtain control over property by willfully or knowingly using deception, if the person:

(1) intends to deprive the owner of the property;
(2) Willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
(3) Uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

(g) Penalty. –
(1) A person convicted of theft of property or services with a value of:
(iii) $100,000 or more is guilty of a felony and:
1.  Is subject to imprisonment not exceeding 20 years or a fine not exceeding $25,000 or both; and
2.  Shall restore the property taken to the owner or pay the owner the value of the property or services", and furthermore;


**"2010 Maryland Code**
**Criminal Law**
**Title 7 – Theft and Related Crimes**
**Subtitle 1 – Crimes Involving Theft**
**Section 7 – 101 – Definitions."**

"7- 101. Definitions.
(a) In general. – In this part the following words have the meanings indicated.
(b) Deception. –

(1) "Deception" means knowingly to:

(i) create or confirm in another a false impression that the offender does not believe to be true;

(ii) fail to correct a false impression that the offender previously has created or confirmed;

(iii) prevent another from acquiring information pertinent to the disposition of the property involve;

(iv) sell or otherwise transfer or encumber property without disclosing a lien, adverse claim, or other legal impediment to the enjoyment of the property, regardless of whether the impediment is of value or a matter of official record;

(v) insert or deposit a slug in a vending machine;

(vi) remove or alter a label or price tag;

(vii) promise performance that the offender does not intend to perform or knows will not be performed; or

(viii) misrepresent the value of a motor vehicle offered for sale by tampering or interfering with its odometer, or by disconnecting, resetting, or altering its odometer with the intent to change the mileage indicated.

(2) "Deception" does not include putting or false statements of immaterial facts and exaggerated representations that are unlikely to deceive an ordinary individual.

**(c) Deprive**. – **"Deprive" means to withhold property of another:**

**(1) permanently;**

**(2) for a period that results in the appropriation of a part of the property's value**;

(3) with the purpose to restore it only on payment of a reward or other compensation; or

**(4) to dispose of the property or use or deal with the property in a manner that makes it unlikely that the owner will recover it.**

**(d) Exert Control. –**

**(1) "Exert Control" includes to take, carry away, appropriate to a person's own use or sell, convey, or transfer title to an interest in or possession of property**.

(2) "Exert Control" does not include:

(i) to trespass on the land of another; or

(ii) to occupy the land of another without authorization.

(e) interactive computer service. –

(1) "Interactive computer service" means an information service, system, or access software provider that provides or enables computer access by multiple users to a computer server.

(2) "Interactive computer service" includes a service or system that provides access to the internet.

(f) Motor Vehicle. – "Motor Vehicle" has the meaning stated in $11-135$ of the Transportation Article.

(g) obtain. – "obtain" means:

(1) in relation to the property, to bring about a transfer of interest in or possession of the property; and

(2) in relation to a service, to secure the performance of the service.

**(h) owner. – Except as otherwise expressly provided in this part, "owner" means a person, other than the offender**:

**(1) who has an interest in or possession of property regardless of whether the person's interest or possession is unlawful**; and

**(2) without whose consent the offender has no authority to exert control over the property.**

**(i)Property. –**

**(1) "property" means anything of value.**

**(2) "property" includes**:

**(i) real estate**;

**(ii) money**;

(iii) a commercial instrument;

(iv) an admission or transportation ticket;

**(v) a written instrument representing or embodying rights concerning anything of value, or services, or anything otherwise if value of the owner**;

(vi) a thing growing on or affixed to, or found on land, or part of or affixed to any building;

(vii) electricity, gas, and water;

(viii) a bird, animal, or fish that ordinarily is kept in a state of confinement;

(ix) food or drink;

(x) a sample, culture, microorganism, or specimen;

(xi) a record, recording, document, blueprint, drawing, map, or a whole or partial copy, description, photograph, prototype, or model of any of them;

(xii) an article, material, device, substance, or a whole or partial copy, description, photograph, prototype, or model of any of them that represents evidence of, reflects, or records a secret:

1. scientific, technical, merchandising, production, or management information; or

2. designed process, procedure, formula, invention, trade secret, or improvement;

(xiii) a financial instrument; and

(xiv) information, electronically produced data, and a computer software or program in a form readable by machine or individual."


**"2013 Maryland Code CRIMINAL LAW**
 **"  3 – 807 – Filing fraudulent Liens Prohibited.**
**Universal Citation: MD Crim. Law Code   3 – 807(2013)"**


"(a)Prohibited. – A person may not file a lien or an encumbrance in a public or private record against the real or personal property of another if the person knows that the lien or encumbrance is:

(1) false; or

(2) contains or is based on a materially false, fictitious, or fraudulent statement or representation.


(b) penalty. – A person who violates this section is guilty of a misdemeanor and on conviction is subject to:

(1) for a first violation, imprisonment not exceeding 1 year or a fine not exceeding $10,000 or both; and

(2) for each subsequent violation, imprisonment not exceeding 5 years or a fine not exceeding $10,000 or both."

**MARYLAND RULES, TITLE 10 GUARDIANS AND OTHER FIDUCIARIES, CHAPTER 700. FIDUCIARY ESTATES INCLUDING GUARDIAN OF THE PROPERTY, THAT ARE APPLIED TO, IN THIS CASE:**

"**MD Rules, Rule 10 – 705**
**RULE 10 – 705. RESTRICTED ACCOUNTS**"

<u>currentness</u>

"(a) petition for Restricted Accounts. When a fiduciary estate consists entirely of cash in an amount not exceeding $200,000. a fiduciary may petition the court for an order authorizing the deposit of cash in a financial institution that is federally insured or is regulated by the Commissioner of Financial Regulation in a single restricted account titled substantially in the following form, "A.B., (fiduciary), withdrawals subject to the order of the circuit court for

_____ County."

(a) Orders Authorizing Withdrawals. The Court may require a separate order Prior to each withdrawal. The Court may enter a continuing order authorizing withdrawals up to a specified amount. The continuing order may be for a definite period of time, not to exceed one year, and may on petition be renewed annually.
(b) Proof of Restricted Account. The fiduciary shall promptly provide proof of The opening of a restricted account to the trust clerk, who shall make note of it in the file.
(c) When Accounting not Required. If all of the assets of a fiduciary estate are deposited in a single restricted account in an amount not exceeding $10,000, no annual accounting is required unless the court orders otherwise.
(d) Cash Exceeding $200,000. If the amount of cash belonging to a minor or disabled person exceeds $200,000, any excess amount shall be deposited into additional restricted accounts.
(e) Aggregate Amount. The aggregate amount deposited in any financial Institution may not exceed $200,000."

**MARYLAND ESTATES AND TRUSTS CODE THAT ARE APPLIED TO, IN THIS CASE**:

"Maryland Code Estates and Trusts Section 13 -101 -  Definitions"

"(e) Disabled person.—"Disabled person" means a person other than a minor who:
(1)(i) Has been judged by a court to be unable to manage his property for reasons listed in Section $13 - 201(c)(1)$ of this title; and
(ii) As a result of this inability requires a guardian of his property; or

(2)(i) Has been judged by a court to be unable to provide for his daily needs sufficiently to protect his health or safety for reasons listed in Section $13 - 705(b)$ of this title; and
(ii) As a result of this inability requires a guardian of the person."

(h) Guardian.—"Guardian" means <u>a guardian of an estate</u> appointed by a court under Subtitle 2 of this title to manage the Property of a disabled person or minor OR a <u>guardian of a Person</u> appointed by a Court under Subtitle 7 of this title, according to the context in which it is used."

"MD Code, Estates and Trusts, Section $13 - 201(c)$. Grounds for Appointment of guardian" states

"(c) A guardian shall be appointed if the Court determines that:

(1) The person is unable to manage effectively the person's property and affairs because of physical or mental disability, disease, habitual drunkenness, addiction to drugs, imprisonment, compulsory hospitalization, detention by a foreign power, or disappearance; and
(2) The person has or may be entitled to property or benefits which require property management."

"Maryland Code and Court Rules Section $13 - 213$. Powers and Exercise of Powers by guardian", states that:

"All the provisions of Section 15 – 102"(Definition) "of this article with respect to the powers of a fiduciary and the manner of exercise of those powers and Title 15, Subtitle 6 of this article are applicable to a guardian.";

**"MD Code, Estates and Trusts, Section 13 – 206. Qualifications and role of Guardian"**

"In general
  (a) Subject to the provisions of Section 13 – 207 of this Subtitle, the Court may appoint as guardian of the estate of a minor or disabled person;
  (b) The appointed guardian shall qualify by filing any required bond.
Title to Property of Minor or Protected Person

  (c)(1)(i) The appointment and qualification of a guardian vests in the guardian title to all property of the minor or protected person that is held at the time of appointment or acquired later.

  (ii) The appointment is NOT a transfer or alienation within the meaning of any federal or State statute or regulation, insurance policy, pension plan, contract, will, or trust instrument that imposes restrictions on or penalties for transfer or alienation by the minor or disabled person or the minor or disabled person's rights or interest.
  (i)    A guardian shall utilize powers conferred by this subtitle to perform services, exercise discretion and discharge the guardian's duties for the best interest of the minor or disabled person or the minor or disabled person's dependents."

*Choo Washburn*                    April 29, 2021

CHOO WASHBURN

| | | |
|---|---|---|
| LARRY WASHBURN | * | IN THE |
| Plaintiff | * | CIRCUIT COURT |
| | * | FOR |
| v. | * | MONTGOMERY COUNTY, |
| CHOO WASHBURN | * | MARYLAND |
| Defendant | * | Case No.: 133326 FL |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COURT ORDER ACCEPTABLE FOR PROCESSING
### (CSRS)

This Court finds, this **3rd** day of _____ **May** _____, 2017 as follows:

1.    The parties hereto were husband and wife, married on October 30, 1981 and this Order is entered incident to a final Judgment of Absolute Divorce dated March 20, 2017 in that action pending in this Court at the above number.

2.    This is a Qualifying Court Order under Part 838, Title 5 of the Code of Federal Regulations ("CFR"). The terminology used in this Order is governed by the standard conventions established in said Part.

3.    The Employee hereinafter named is retired and receiving benefits from the Civil Service Retirement System (CSRS) on account of employment with the United States government.

4.    The parties are identified as follows:

**Please Note**: Due to privacy policy requirements, social security numbers and dates of birth are included in the letter transmitting this order to the OPM.

The Employee is identified as follows:

Name:        LARRY R. WASHBURN
Address:     2158 Astoria Circle
             Apartment 104
             Herndon, VA 20170

*Appendix (App.) # 1*

*Choo Washburn*

**ENTERED**

MAY 03 2017

Clerk of the Circuit Court
Montgomery County, Md.

279

The Former Spouse (the "Former Spouse") is identified as follows:

      Name:           CHOO K. WASHBURN
      Address:       3521 Cummings Lane
                     Chevy Chase, MD 20815

5.    The administrator of the CSRS is:

      United States Office of Personnel Management
      Retirement and Insurance Group
      Post Office Box 17
      Washington, D.C. 20044

(hereinafter referred to as "OPM").

6.    To accommodate the marital property distribution between the parties, IT IS ORDERED, ADJUDICATED AND DECREED AS FOLLOWS:

    A. <u>Determination of Marital Property</u>. That the Employee's interest acquired in the CSRS during the marriage is marital property under Maryland Code Family Law Article Section 8-201.

    B. <u>Former Spouse's Share of Employee Annuity</u>. The Former Spouse's Share shall be 36.28% of the monthly <u>gross</u>[1] annuity of the Employee, together with cost of living or post-retirement or termination benefit increases at the same time and the same rate as such increases are granted to the Employee.

    C. <u>Method and Timing of Payment of Former Spouse's Share</u>. The OPM is hereby directed to make payments of the Former Spouse's Share pursuant to this Order directly to said Former Spouse. Payments of the Former Spouse's Share shall be made if, as and when payments of Employee's monthly annuity are made to Employee.

---

[1]    "Gross annuity" is defined in Title 5 of the U.S. Code of Federal Regulations, Part 838.103 and includes any phased or composite retirement annuity.



App. #2



ENTERED

MAY 03 2017

Clerk of the Circuit Court
Montgomery County, Md.

D.   Death of Employee; Death of Former Spouse.

(1) The Former Spouse's Share of the monthly annuity payable to the Former Spouse shall terminate upon the first to occur of the Former Spouse's death or the Employee's death.

(2) If the Former Spouse predeceases the Employee, the Former Spouse's Share shall revert to the Employee.

(3) The parties' Judgment of Absolute Divorce dated March 20, 2017 and entered March 23, 2017, which is the first Order dividing marital property, awarded the Former Spouse the maximum Former Spouse Survivor Annuity under United States Code, Title 5, Section 8341(h)(1). This Order does not award, reduce, eliminate, modify, replace, clarify, explain, or interpret that first Order dividing marital property.

(4) If, for any reason, the OPM denies the award in the Judgment of Absolute Divorce of the Former Spouse Survivor Annuity, the Retiree's execution of this Order shall constitute his election within 2 years of the date of the Judgment of Absolute Divorce to provide the Former Spouse the Former Spouse Survivor Annuity, and the Retiree shall timely complete and file with the OPM all forms necessary or advisable to provide therefor.

E.   Obligations of Employee.

(1) The Employee shall timely make all elections necessary or advisable to carry out the terms of this Order. The Employee shall not diminish the benefits to be provided to the Former Spouse or in any way take any action which would adversely affect the Former Spouse's Share or survivor annuity benefits nor omit to take any action required for the Former Spouse to receive the Former Spouse's Share of the Employee's employee annuity benefits.

(2) If the OPM distributes any part of the Former Spouse's Share or the

-3-

APP. # 3

ENTERED

MAY 0 3 2017


Clerk of the Circuit Court
Montgomery County, Md.

Former Spouse's survivor annuity benefits directly to the Employee, the Employee's estate or any designated beneficiary of the Employee, the recipient shall pay said part to the Former Spouse immediately upon receipt of said part (adjusted, however, so that the tax consequences to such recipient are the same as if such payments had been made directly to the Former Spouse by the OPM) and such part shall be subject to a constructive trust for the benefit of the Former Spouse, and any such part shall be subject to all the terms of this Order as if it were being paid directly to the Former Spouse by the OPM.  The provisions of this Paragraph shall not be binding upon the OPM but shall be binding on the Employee, the Employee's estate or any designated beneficiary.

(3)  If the Employee pays any payments directly to the Former Spouse pursuant to the provisions of the parties' Judgment of Absolute Divorce, and if the OPM pays any payments to the Former Spouse under this Order retroactive to a date for which the Employee has already made payment to the Former Spouse, or, if for any reason the OPM distributes any payment of the Employee's remaining share directly to the Former Spouse or the Former Spouse's estate, then the recipient shall pay said payments to the Employee immediately upon receipt (adjusted, however, so that the tax consequences to such recipient are the same as if such payments had been made directly to the Employee by the OPM) and such payments shall be subject to a constructive trust for the benefit of the Employee, and any such payments shall be subject to all the terms of this Order as if it were being paid directly to the Employee by the OPM. The provisions of this Paragraph shall not be binding upon the OPM but shall be binding on the Former Spouse and the Former Spouse's estate.

7.    The Former Spouse shall notify the OPM of any change of Former Spouse's address. Notification shall be made to the address stated above or such other address as the OPM may specify

-4-

APP. #4



MAY 03 2017
Clerk of the Circuit Court
Montgomery County, Md.

by written notice to the Former Spouse.

8.     This Order is intended to meet the requirements of Section 414(p)(11) of the Internal Revenue Code of 1986 as amended, such that all payments made to the Former Spouse by OPM shall be includable in the taxable income of and taxable to the Former Spouse to the extent required by law.

9.     This Court retains jurisdiction to enter additional Orders and to amend this Order for the purpose of its acceptance by the OPM, to effectuate the terms of the parties' Judgment of Absolute Divorce and to settle any and all disputes between the parties relative to the benefits provided in this Order.

_Michael V Mason_
JUDGE

This is a Proper Order to be Entered:

_____
Magistrate

Consented As To Form:

_Larry R. Washburn_
LARRY WASHBURN

_____
CHOO WASHBURN

**ENTERED**

MAY 0 3 2017

Clerk of the Circuit Court
Montgomery County, Md.

-5-

APP. # 5



UBS Financial Services Inc.
7100 Wisconsin Avenue
Suite 300
Bethesda MD 20814-3528

ANP70000504649 1120  BA  0

# Resource Management Account

November 2020

**Account name:** ROBERT M MCCARTHY GRDN
CHOO WASHBURN

**Friendly account name:** Choo Washburn

**Account type:** PACE Multi - Advisory

**Account number:** BA  62698 CA

ROBERT M MCCARTHY GRDN
CHOO WASHBURN
4405 EAST  WEST HIGHWAY
STE 201
BETHESDA MD 20814-4560

**Your Financial Advisor:**
THE BOYLE ANDERSON GROUP
Phone: 301-718-5000/800-638-2909

**Questions about your statement?**
Call your Financial Advisor or the
RMA Resourceline at 800-RMA-1000,
account 023062698.

**Visit our website:**
www.ubs.com/financialservices

## Value of your account

|  | on October 30 ($) | on November 30 ($) |
|---|---|---|
| Your assets | 52,931.99 | 53,114.74 |
| Your liabilities | 0.00 | 0.00 |
| **Value of your account** | **$52,931.99** | **$53,114.74** |

## Tracking the value of your account

$ Thousands

52.9 ——————————————— 53.1

Oct 2020                                     Nov 2020

### Sources of your account growth
during 2020

| | |
|---|---|
| Value of your account at year end 2019 | $52,882.82 |
| Net deposits and withdrawals | $0.00 |
| Your investment return: | |
| Dividend and interest income | $414.31 |
| Change in market value | -$182.39 |
| **Value of your account on Nov 30, 2020** | **$53,114.74** |

*APP. #6*



# UBS

**Resource Management Account**
November 2020

**Account name:** ROBERT M MCCARTHY GRDN
**Friendly account name:** Choo Washburn
**Account type:** PACE Multi - Advisory
**Account number:** BA. 62698 CA

**Your Financial Advisor:**
THE BOYLE ANDERSON GROUP
301-718-5000/800-638-2909

# Your account balance sheet

## Summary of your assets

| | | Value on November 30 ($) | Percentage of your account |
|---|---|---|---|
| A | Cash and money balances | 235.34 | 0.44% |
| B | Cash alternatives | 5,215.26 | 9.82% |
| C | Equities | 0.00 | 0.00% |
| D | Fixed income | 47,664.14 | 89.74% |
| E | Non-traditional | 0.00 | 0.00% |
| F | Commodities | 0.00 | 0.00% |
| G | Other | 0.00 | 0.00% |
| | **Total assets** | **$53,114.74** | **100.00%** |

| **Value of your account** | **$53,114.74** |
|---|---|

## Your current asset allocation



▸ *Cash and money balances* may include available cash balances, UBS Bank USA deposit account, UBS FDIC Insured Deposit Program Bank accounts, UBS AG Stamford Branch deposit account balances and money market mutual fund sweep balances. See the *Important information about your statement* on the last two pages of this statement for details about those balances.

# Eye on the markets

| Index | Percentage change | |
|---|---|---|
| | November 2020 | Year to date |
| S&P 500 | 10.95% | 14.02% |
| Russell 3000 | 12.17% | 15.68% |
| MSCI - Europe, Australia & Far East | 15.51% | 3.45% |
| Barclays Capital U.S. Aggregate Bond Index | 0.98% | 7.36% |

**Interest rates on November 30, 2020**
3-month Treasury bills: 0.08%
One-month LIBOR: 0.15%

App. # 7



**UBS**

Resource Management Account
November 2020

| | |
|---|---|
| Account name: | ROBERT M MCCARTHY GRDN |
| Friendly account name: | Choo Washburn |
| Account type: | PACE Multi - Advisory |
| Account number: | BA 62698 CA |

**Your Financial Advisor:**
THE BOYLE ANDERSON GROUP
301-718-5000/800-638-2909

## Change in the value of your account

| | November 2020 ($) | Year to date ($) |
|---|---|---|
| **Opening account value** | $52,931.99 | $0.00 |
| Deposits, including investments transferred in | 0.00 | 53,258.09 |
| Withdrawals and fees, including investments transferred out | 0.00 | -375.27 |
| Dividend and interest income | 57.07 | 414.31 |
| Change in market value | 125.68 | -182.39 |
| **Closing account value** | **$53,114.74** | **$53,114.74** |

## Dividend and interest income earned

| | November 2020 ($) | Year to date ($) |
|---|---|---|
| Taxable dividends | 57.07 | 414.28 |
| Taxable interest | 0.00 | 0.03 |
| **Total current year** | **$57.07** | **$414.31** |
| **Total dividend & interest** | **$57.07** | **$414.31** |

For purposes of this statement, taxability of interest and dividend income has been determined from a US tax reporting perspective. Based upon the residence of the account holder, account type, or product type, some interest and/or dividend payments may not be subject to United States (US) and/or Puerto Rico (PR) income taxes. The client monthly statement is not intended to be used and cannot be relied upon for tax purposes. Clients should refer to the applicable tax reporting forms they receive from UBS annually, such as the Forms 1099 and the Forms 480, for tax reporting information. It is the practice of UBS to file the applicable tax reporting forms with the US Internal Revenue Service and PR Treasury Department, and in such forms accurately classify dividends and/or interest as tax exempt or taxable income. Please consult your individual tax preparer.

## Summary of gains and losses

Values reported below exclude products for which gains and losses are not classified.

| | Realized gains and losses | | Unrealized |
|---|---|---|---|
| | November 2020 ($) | Year to date ($) | gains and losses ($) |
| Short term | 0.00 | 0.42 | -182.81 |

## Cash activity summary

See Account activity this month for details. Balances in your Sweep Options are included in the opening and closing balances value. FDIC insurance applies to deposits at UBS Bank USA and all banks participating in the UBS FDIC Insured Deposit Program. It does not apply to deposits at UBS AG, Stamford Branch. SIPC protection applies to money market sweep fund holdings but not bank deposits. See Important Information about your statement on the last two pages of this document for details.

| | November 2020 ($) | Year to date ($) |
|---|---|---|
| **Opening balances** | **$235.34** | **$0.00** |
| **Additions** | | |
| Deposits and other funds credited | 0.00 | 53,258.09 |
| Dividend and interest income | 57.07 | 414.31 |
| Proceeds from investment transactions | 0.00 | 610.59 |
| **Total additions** | **$57.07** | **$54,282.99** |
| **Subtractions** | | |
| Professional management fees and related services | 0.00 | -375.27 |
| Funds withdrawn for investments bought | 0.00 | -53,672.38 |
| **Total subtractions** | **-$57.07** | **-$54,047.65** |
| **Net cash flow** | **$0.00** | **$235.34** |
| **Closing balances** | **$235.34** | **$235.34** |

ANP7000100005051 NP700000A307 00001 1120 000000000 BA62698CA0 000000

APP. # 8



Resource Management Account
November 2020

**Account name:** ROBERT M MCCARTHY GRDN
**Friendly account name:** Choo Washburn
**Account type:** PACE Multi - Advisory
**Account number:** BA 62698 CA

**Your Financial Advisor:**
THE BOYLE ANDERSON GROUP
301-718-5000/800-638-2909

# UBS Bank USA Deposit Account APY

*Interest period Oct 7 - Nov 5*

| | |
|---|---|
| Opening UBS Bank USA Deposit balance Oct 7 | $368.40 |
| Closing UBS Bank USA Deposit balance Nov 5 | $235.34 |
| Number of days in-interest period | 30 |
| Average daily balance | $306.31 |
| Interest earned | $0.00 |
| Annual percentage yield earned | 0.00% |

# Your investment objectives:

You have identified the following investment objectives for this account. Contact your Financial Advisor if you have any questions, if your financial situation, individual needs, risk tolerance or investment objectives for your advisory account(s) have changed, or if you would like to impose or change investment restrictions on your discretionary advisory accounts. You can find a full description of the alternative investment objectives in *Important Information about your statement* at the end of this document.

**Your return objective:**
Current income

**Your risk profile:**
Primary - Conservative

Investment: eligibility consideration - None selected

**Your PACE investment objectives:**
**Your PACE return objective:**
Current income

**Your PACE risk profile:**
Conservative

# Your account instructions

- Your account cost basis default closing method is FIFO, First In, First Out.

*APP. #9*



**CHOO K WASHBURN WARD**
**ROBERT M McCARTHY GDN**
4405 EAST WEST HIGHWAY STE 201
BETHESDA, MD 20814

☐ CASH
INCLUDING COINS
65-320/550 8351
4340

List
Checks
Singly

TOTAL
ITEMS

1 2 0 0.00

DEPOSIT TICKET
TO BE USED FOR DEPOSIT TRANSACTIONS

DATE   5 / 19 / 20

DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

SIGN HERE ONLY IF CASH RECEIVED FROM DEPOSIT

Wells Fargo Bank, N.A.
Maryland
wellsfargo.com

OR TOTAL FROM REVERSE

SUB TOTAL ▶

LESS CASH
RECEIVED ▶

$        1 2 0 0.00

⑆533600391⑈ 710284485 4⑈

CHECKS AND OTHER ITEMS ARE RECEIVED FOR DEPOSIT SUBJECT TO THE PROVISIONS OF THE UNIFORM COMMERCIAL CODE AND ANY APPLICABLE COLLECTION AGREEMENT.



**United States Treasury**   15-51   B 184,767,197
000

Check No.

05 15 20 20090800   KANSAS CITY, MO      4041 24334340
000569327157    4041 24334340 I    20201280810000

Pay to
the order of
CHOO WASHBURN
4405 EAST WEST HWY STE 201
BETHESDA MD 20814 4560

$****1200*00

VOID AFTER ONE YEAR
REGIONAL DISBURSING OFFICER     008

**ECONOMIC IMPACT PAYMENT**
**PRESIDENT DONALD J. TRUMP**

04557

⑈4044⑈ ⑆000000518⑈ 243343408⑈ 040520

APP. #10

#1297

File only if you are making a payment with Form 1040.  Return this voucher with check or money order payable to the "United States Treasury." Please write your social security number, daytime phone number, and " 2019 Form 1040" on your check or money order. Please do not send cash.  Enclose, but do not staple or attach, your payment with this voucher.

*pay from wf*

*of tn*

----------------------------------------------------------------

Make your check payable to the "United States Treasury" and mail Form 1040-V payments to:

Internal Revenue Service
P.O. Box 931000
Louisville, KY 40293-1000

---

Form **1040-V** (2019)

▼ **Detach Here and Mail With Your Payment and Return** ▼

Department of the Treasury
Internal Revenue Service   (99)   **2019**

# Form 1040-V Payment Voucher

► Use this voucher when making a payment with Form 1040.
► Do not staple this voucher or your payment to Form 1040.
► Make your check or money order payable to the 'United States Treasury.'
► Write your social security number (SSN) on your check or money order.

| Enter the amount of your payment........ ► | 1,717. |

FDIA8601L  09/03/19          1030

CHOO WASHBURN
4405 EAST WEST HIGHWAY SUITE
BETHESDA MD 20814

INTERNAL REVENUE SERVICE
P.O. BOX 931000
LOUISVILLE KY 40293-1000



177641256 SR WASH 30 0 201912 610

*APP. # 11*

#1298



**MARYLAND FORM**

## PV

**PERSONAL TAX PAYMENT VOUCHER FOR FORM 502/505, ESTIMATED TAX AND EXTENSIONS**



19PTPV011

**Print Using Blue or Black Ink Only. Use only one PV per payment type.**

177641256
Your Social Security Number

_____
If Joint Return, Spouse's Social Security Number

CHOO
Your First Name                    MI

WASHBURN
Your Last Name

_____
If Joint Return, Spouse's First Name      MI      Spouse's Last Name

4405 EAST WEST HIGHWAY
Current Mailing Address - Line 1 (Street No. and Street Name or PO Box)

SUITE 201
Current Mailing Address - Line 2 (Apt. No., Suite No., Floor No.)

BETHESDA                                    MD        20814
City or Town                                State     ZIP Code +4

*(handwritten: Pay from W⁺ ... O/C ... +VS)*

**PAYMENT TYPE**
Check **ONLY** one box (1,2,3 or 4) for type of payment. If Box 1 is checked, also check box 1a., if **first time** estimated filer or if **filing status** has changed.

1. [ ]  Estimated Payment/Quarterly (502D)        Tax Year: _____

   1a. [ ]  First time filer or change in filing status

2. [ ]  Extension Payment (502E)                  Tax Year: _____

3. [X]  Payment with resident return (502)        Tax Year: 2019

4. [ ]  Payment with nonresident return (505)     Tax Year: _____

**PAYMENT AMOUNT**
Amount you are paying by check or money order. Make your check or money order payable to **"Comptroller of Maryland"**

Dollars                    Cents

259    00

Mail to:
Comptroller of Maryland
Payment Processing
PO Box 8888
Annapolis, MD 21401-8888

**ATTACH CHECK OR MONEY ORDER HERE WITH ONE STAPLE.**

COM/ RAD-006

APP. # 12

MDIA0601    01/02/20

| Date | Description | Deposits/Credits | Withdrawals/Debits | Ending Daily Balance |
|---|---|---|---|---|
| 08/05/19 | CHECK # 1212 | | $300.00 | $94,620.20 |
| 08/02/19 | SSA TREAS 310 XXSOC SEC 080219 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | $94,920.20 |
| 08/01/19 | CHECK # 1209 | | $228.50 | $94,730.20 |
| 08/01/19 | CASHED CHECK # 1208 | | $300.00 | |
| 08/01/19 | OPM1 TREAS 310 XXCIV SERV 080119 ROBERT M MCCARTHY ESQ | $2,964.35 | | |
| 08/01/19 | OPM1 TREAS 310 XXCIV SERV 080119 LARRY WASHBURN | $100.00 | | |
| 07/30/19 | CHECK # 1210 | | $48.61 | $92,194.35 |
| 07/23/19 | CHECK # 1205 | | $300.00 | $92,242.96 |
| 07/23/19 | CHECK # 1206 | | $300.00 | |
| **Totals** | | **$60,432.99** | **$133,733.15** | |

Back to top

First
Previous
Next

# My Wells Fargo Deals (0)

More Deals

Select **More Deals** to see all your deals, including what you've activated and earned.

Terms and Conditions
## *Account Disclosures

Deposit products offered by Wells Fargo Bank, N.A. Member FDIC.

☎ Equal Housing Lender

APP. # 13

| Date | Description | Deposits/Credits | Withdrawals/Debits | Ending Daily Balance |
|---|---|---|---|---|
| 10/08/19 | WITHDRAWAL MADE IN A BRANCH/STORE | | $135.00 | |
| 10/08/19 | WITHDRAWAL MADE IN A BRANCH/STORE | | $235.00 | |
| 10/08/19 | WITHDRAWAL MADE IN A BRANCH/STORE | | $235.00 | |
| 10/04/19 | CHECK # 1223 | | $228.50 | $94,761.40 |
| 10/04/19 | CASHED CHECK # 1224 | | $300.00 | |
| 10/03/19 | SSA TREAS 310 XXSOC SEC 100319 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | $95,289.90 |
| 10/01/19 | OPM1 TREAS 310 XXCIV SERV 100119 ROBERT M MCCARTHY ESQ | $2,964.35 | | $95,099.90 |
| 10/01/19 | OPM1 TREAS 310 XXCIV SERV 100119 LARRY WASHBURN | $100.00 | | |
| 09/27/19 | CASHED CHECK # 1222 | | $300.00 | $92,035.55 |
| 09/20/19 | DEPOSITED OR CASHED CHECK # 1221 | | $210.00 | $92,335.55 |
| 09/16/19 | CASHED CHECK # 1220 | | $300.00 | $92,545.55 |
| 09/11/19 | CHECK # 1218 | | $228.50 | $92,845.55 |
| 09/10/19 | CHECK # 1219 | | $300.00 | $93,074.05 |
| 09/10/19 | CHECK # 1217 | | $300.00 | |
| 09/03/19 | OPM1 TREAS 310 XXCIV SERV 090319 ROBERT M MCCARTHY ESQ | $2,964.35 | | $93,674.05 |
| 09/03/19 | SSA TREAS 310 XXSOC SEC 090319 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | |
| 09/03/19 | OPM1 TREAS 310 XXCIV SERV 090319 LARRY WASHBURN | $100.00 | | |
| 08/30/19 | DEPOSITED OR CASHED CHECK # 1214 | | $1,500.00 | $90,419.70 |
| 08/28/19 | DEPOSITED OR CASHED CHECK # 1215 | | $187.50 | $91,919.70 |
| 08/27/19 | CHECK # 1216 | | $300.00 | $92,107.20 |
| 08/21/19 | CASHED CHECK # 1213 | | $300.00 | $92,407.20 |
| 08/19/19 | AARP MEMBERSHIP 190816 3248790 CHOO *WASHBURN | | $63.00 | $92,707.20 |
| 08/14/19 | CASHED CHECK # 1211 | | $300.00 | $92,770.20 |
| 08/06/19 | DEPOSITED OR CASHED CHECK # 1207 | | $1,550.00 | $93,070.20 |
| **Totals** | | **$60,432.99** | **$133,733.15** | |

APP. #14

Account Detail - Wells Fargo

| Date | Description | Deposits/Credits | Withdrawals/Debits | Ending Daily Balance |
|---|---|---|---|---|
| 12/31/19 | CASHED CHECK # 1246 | | $300.00 | $90,874.31 |
| 12/17/19 | CHECK # 1243 | | $1,686.67 | $91,174.31 |
| 12/16/19 | CASHED CHECK # 1242 | | $300.00 | $92,860.98 |
| 12/13/19 | CHECK # 1240 | | $224.04 | $93,160.98 |
| 12/09/19 | CASHED CHECK # 1241 | | $300.00 | $93,385.02 |
| 12/06/19 | CHECK # 1239 | | $300.00 | $93,685.02 |
| 12/03/19 | CHECK # 1238 | | $228.50 | $93,985.02 |
| 12/03/19 | SSA TREAS 310 XXSOC SEC 120319 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | |
| 12/02/19 | OPM1 TREAS 310 XXCIV SERV 120219 ROBERT M MCCARTHY ESQ | $2,964.35 | | $94,023.52 |
| 12/02/19 | OPM1 TREAS 310 XXCIV SERV 120219 LARRY WASHBURN | $100.00 | | |
| 11/25/19 | CHECK # 1237 | | $300.00 | $90,959.17 |
| 11/25/19 | CHECK # 1234 | | $224.04 | |
| 11/25/19 | CASHED CHECK # 1236 | | $300.00 | |
| 11/15/19 | CASHED CHECK # 1235 | | $300.00 | $91,783.21 |
| 11/13/19 | DEPOSITED OR CASHED CHECK # 1233 | | $1,620.00 | $92,083.21 |
| 11/12/19 | CHECK # 1232 | | $228.50 | $93,703.21 |
| 11/06/19 | CHECK | | $224.04 | $93,931.71 |
| 11/05/19 | CASHED CHECK # 1231 | | $300.00 | $94,155.75 |
| 11/01/19 | CASHED CHECK # 1229 | | $300.00 | $94,455.75 |
| 11/01/19 | OPM1 TREAS 310 XXCIV SERV 110119 ROBERT M MCCARTHY ESQ | $2,964.35 | | |
| 11/01/19 | SSA TREAS 310 XXSOC SEC 110119 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | |
| 11/01/19 | OPM1 TREAS 310 XXCIV SERV 110119 LARRY WASHBURN | $100.00 | | |
| 10/21/19 | CHECK # 1228 | | $300.00 | $91,501.40 |
| 10/18/19 | DEPOSITED OR CASHED CHECK # 1226 | | $1,620.00 | $91,801.40 |
| 10/15/19 | CASHED CHECK # 1227 | | $300.00 | $93,421.40 |
| 10/09/19 | CASHED CHECK # 1225 | | $300.00 | $93,721.40 |
| 10/08/19 | WITHDRAWAL MADE IN A BRANCH/STORE | | $135.00 | $94,021.40 |
| **Totals** | | **$60,432.99** | **$133,733.15** | |

APP. # 15

Account Detail - Wells Fargo

| Date | Description | Deposits/Credits | Withdrawals/Debits | Ending Daily Balance |
|---|---|---|---|---|
| 03/03/20 | SSA TREAS 310 XXSOC SEC 030320 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | |
| 03/02/20 | OPM1 TREAS 310 XXCIV SERV 030220 ROBERT M MCCARTHY ESQ | $3,011.73 | | $82,850.37 |
| 03/02/20 | OPM1 TREAS 310 XXCIV SERV 030220 LARRY WASHBURN | $100.00 | | |
| 02/24/20 | CASHED CHECK # 1260 | | $300.00 | $79,738.64 |
| 02/18/20 | CHECK # 1258 | | $224.04 | $80,038.64 |
| 02/18/20 | CASHED CHECK # 1259 | | $600.00 | |
| 02/12/20 | CHECK # 1257 | | $228.50 | $80,862.68 |
| 02/11/20 | CHECK # 1256 | | $3,190.00 | $81,091.18 |
| 02/11/20 | CHECK # 145 | | $9,314.01 | |
| 02/03/20 | CASHED CHECK # 1255 | | $300.00 | $93,595.19 |
| 02/03/20 | OPM1 TREAS 310 XXCIV SERV 020320 ROBERT M MCCARTHY ESQ | $3,011.73 | | |
| 02/03/20 | SSA TREAS 310 XXSOC SEC 020320 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | |
| 02/03/20 | OPM1 TREAS 310 XXCIV SERV 020320 LARRY WASHBURN | $100.00 | | |
| 01/27/20 | CHECK # 1254 | | $300.00 | $90,593.46 |
| 01/23/20 | CHECK | | $224.04 | $90,893.46 |
| 01/22/20 | CHECK # 144 | | $1,335.00 | $91,117.50 |
| 01/22/20 | CASHED CHECK # 1252 | | $300.00 | |
| 01/21/20 | CHECK # 1251 | | $224.04 | $92,752.50 |
| 01/21/20 | CHECK # 1249 | | $228.50 | |
| 01/21/20 | CASHED CHECK # 1250 | | $300.00 | |
| 01/14/20 | CHECK # 143 | | $40.00 | $93,505.04 |
| 01/09/20 | CASHED CHECK # 1248 | | $300.00 | $93,545.04 |
| 01/09/20 | CASHED CHECK # 1247 | | $300.00 | |
| 01/06/20 | STOP PAYMENT FEE | | $31.00 | $94,145.04 |
| 01/03/20 | SSA TREAS 310 XXSOC SEC 010320 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | $94,176.04 |
| 01/02/20 | OPM1 TREAS 310 XXCIV SERV 010220 ROBERT M MCCARTHY ESQ | $3,011.73 | | $93,986.04 |
| 01/02/20 | OPM1 TREAS 310 XXCIV SERV 010220 LARRY WASHBURN | $100.00 | | |
| Totals | APP. #16 | $60,432.99 | $133,733.15 | |

Account Detail - Wells Fargo

| Date | Description | Deposits/Credits | Withdrawals/Debits | Ending Daily Balance |
|---|---|---|---|---|
| 05/26/20 | CHECK # 1284 | | $300.00 | |
| 05/19/20 | DEPOSIT | $1,200.00 | | $27,949.25 |
| 05/06/20 | CHECK # 3280 | | $300.00 | $26,749.25 |
| 05/06/20 | CHECK # 1277 | | $300.00 | |
| 05/05/20 | CHECK # 1278 | | $3,201.67 | $27,349.25 |
| 05/01/20 | OPM1 TREAS 310 XXCIV SERV 050120 ROBERT M MCCARTHY ESQ | $3,011.73 | | $30,550.92 |
| 05/01/20 | SSA TREAS 310 XXSOC SEC 050120 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | |
| 05/01/20 | OPM1 TREAS 310 XXCIV SERV 050120 LARRY WASHBURN | $100.00 | | |
| 04/28/20 | CHECK # 1279 | | $228.50 | $27,249.19 |
| 04/22/20 | CHECK # 1276 | | $300.00 | $27,477.69 |
| 04/22/20 | CHECK # 1275 | | $300.00 | |
| 04/15/20 | CHECK # 1274 | | $224.04 | $28,077.69 |
| 04/13/20 | CHECK # 1273 | | $53,258.09 | $28,301.73 |
| 04/10/20 | CHECK # 1272 | | $300.00 | $81,559.82 |
| 04/07/20 | CHECK # 1270 | | $300.00 | $81,859.82 |
| 04/03/20 | SSA TREAS 310 XXSOC SEC 040320 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | $82,159.82 |
| 04/01/20 | CHECK # 1263 | | $146.24 | $81,969.82 |
| 04/01/20 | OPM1 TREAS 310 XXCIV SERV 040120 ROBERT M MCCARTHY ESQ | $3,011.73 | | |
| 04/01/20 | OPM1 TREAS 310 XXCIV SERV 040120 LARRY WASHBURN | $100.00 | | |
| 03/31/20 | CHECK # 1266 | | $1,780.00 | $79,004.33 |
| 03/31/20 | CHECK # 1271 | | $228.50 | |
| 03/24/20 | CASHED CHECK # 1269 | | $300.00 | $81,012.83 |
| 03/24/20 | CASHED CHECK # 1267 | | $300.00 | |
| 03/19/20 | CHECK # 1268 | | $375.00 | $81,612.83 |
| 03/19/20 | CHECK # 1264 | | $224.04 | |
| 03/09/20 | CASHED CHECK # 1261 | | $300.00 | $82,211.87 |
| 03/09/20 | CASHED CHECK # 1265 | | $300.00 | |
| 03/03/20 | CHECK # 1262 | | $228.50 | $82,811.87 |

App. # 17

| Totals | | $60,432.99 | $133,733.15 | |
|---|---|---|---|---|

| Date | Description | Deposits/Credits | Withdrawals/Debits | Ending Daily Balance |
|------|-------------|------------------|--------------------|--------------------|
| 08/03/20 | OPM1 TREAS 310 XXCIV SERV 080320 LARRY WASHBURN | $100.00 | | |
| 07/31/20 | CHECK # 1303 | | $300.00 | $25,772.42 |
| 07/31/20 | CHECK # 1298 | | $259.00 | |
| 07/29/20 | CHECK # 1300 | | $224.04 | $26,331.42 |
| 07/28/20 | CHECK # 1301 | | $228.50 | $26,555.46 |
| 07/27/20 | CHECK # 1297 | | $1,717.00 | $26,783.96 |
| 07/27/20 | CHECK # 1299 | | $300.00 | |
| 07/20/20 | CHECK # 1294 | | $300.00 | $28,800.96 |
| 07/20/20 | CHECK # 1290 | | $300.00 | |
| 07/20/20 | CHECK # 1295 | | $300.00 | |
| 07/20/20 | CHECK # 1296 | | $300.00 | |
| 07/02/20 | CHECK # 1292 | | $1,546.67 | $30,000.96 |
| 07/02/20 | SSA TREAS 310 XXSOC SEC 070220 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | |
| 07/01/20 | CHECK # 1293 | | $228.50 | $31,357.63 |
| 07/01/20 | OPM1 TREAS 310 XXCIV SERV 070120 ROBERT M MCCARTHY ESQ | $3,011.73 | | |
| 07/01/20 | OPM1 TREAS 310 XXCIV SERV 070120 LARRY WASHBURN | $100.00 | | |
| 06/26/20 | CHECK # 1291 | | $224.04 | $28,474.40 |
| 06/25/20 | CHECK # 3288 | | $300.00 | $28,698.44 |
| 06/25/20 | CHECK # 1287 | | $300.00 | |
| 06/25/20 | CHECK # 1289 | | $300.00 | |
| 06/03/20 | SSA TREAS 310 XXSOC SEC 060320 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | $29,598.44 |
| 06/02/20 | CHECK # 1286 | | $228.50 | $29,408.44 |
| 06/01/20 | CHECK # 1285 | | $300.00 | $29,636.94 |
| 06/01/20 | OPM1 TREAS 310 XXCIV SERV 060120 ROBERT M MCCARTHY ESQ | $3,011.73 | | |
| 06/01/20 | OPM1 TREAS 310 XXCIV SERV 060120 LARRY WASHBURN | $100.00 | | |
| 05/26/20 | CHECK # 1283 | | $224.04 | $26,825.21 |
| 05/26/20 | CHECK # 1282 | | $300.00 | |
| 05/26/20 | CHECK # 1281 | | $300.00 | |

APP. #18

| Totals | | $60,432.99 | $133,733.15 | |

| Date | Description | Deposits/Credits | Withdrawals/Debits | Ending Daily Balance |
|------|-------------|------------------|--------------------|--------------------|
| 10/13/20 | CASHED CHECK # 1321 | | $200.00 | |
| 10/13/20 | CASHED CHECK # 1317 | | $200.00 | |
| 10/05/20 | CHECK # 1319 | | $2,448.87 | $19,563.94 |
| 10/02/20 | SSA TREAS 310 XXSOC SEC 100220 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | $22,012.81 |
| 10/01/20 | CHECK # 1318 | | $244.04 | $21,822.81 |
| 10/01/20 | OPM1 TREAS 310 XXCIV SERV 100120 XXXXX ROBERT M MCCARTHY ESQ | $3,011.73 | | |
| 10/01/20 | OPM1 TREAS 310 XXCIV SERV 100120 XXXXX LARRY WASHBURN | $100.00 | | |
| 09/30/20 | CHECK # 1320 | | $228.50 | $18,955.12 |
| 09/18/20 | CHECK # 1315 | | $7,578.72 | $19,183.62 |
| 09/17/20 | CASHED CHECK # 1313 | | $200.00 | $26,762.34 |
| 09/17/20 | CASHED CHECK # 1316 | | $200.00 | |
| 09/17/20 | CASHED CHECK # 1314 | | $200.00 | |
| 09/03/20 | SSA TREAS 310 XXSOC SEC 090320 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | $27,362.34 |
| 09/02/20 | CHECK # 1312 | | $200.00 | $27,172.34 |
| 09/01/20 | OPM1 TREAS 310 XXCIV SERV 090120 ROBERT M MCCARTHY ESQ | $3,011.73 | | $27,372.34 |
| 09/01/20 | OPM1 TREAS 310 XXCIV SERV 090120 LARRY WASHBURN | $100.00 | | |
| 08/31/20 | CHECK # 1308 | | $224.04 | $24,260.61 |
| 08/28/20 | STOP PAYMENT FEE | | $31.00 | $24,484.65 |
| 08/26/20 | CHECK # 1310 | | $1,783.33 | $24,515.65 |
| 08/26/20 | CHECK # 1302 | | $1,546.67 | |
| 08/25/20 | CHECK # 1309 | | $228.50 | $27,845.65 |
| 08/24/20 | CHECK # 1306 | | $300.00 | $28,074.15 |
| 08/20/20 | CHECK # 1307 | | $100.00 | $28,374.15 |
| 08/17/20 | CASHED CHECK # 1305 | | $300.00 | $28,474.15 |
| 08/17/20 | CASHED CHECK # 1304 | | $300.00 | |
| 08/03/20 | OPM1 TREAS 310 XXCIV SERV 080320 ROBERT M MCCARTHY ESQ | $3,011.73 | | $29,074.15 |
| 08/03/20 | SSA TREAS 310 XXSOC SEC 080320 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | |
| **Totals** | APP. # 19 | **$60,432.99** | **$133,733.15** | |

Account Detail - Wells Fargo

| Date | Description | Deposits/Credits | Withdrawals/Debits | Ending Daily Balance |
|------|-------------|------------------|--------------------|----------------------|
| 12/31/20 | SSA TREAS 310 XXSOC SEC 123120 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | |
| 12/29/20 | CHECK # 1343 | | $228.50 | $16,652.32 |
| 12/28/20 | CHECK # 1340 | | $1,645.47 | $16,880.82 |
| 12/24/20 | CHECK | | $255.48 | $18,526.29 |
| 12/21/20 | CASHED CHECK # 1339 | | $150.00 | $18,781.77 |
| 12/21/20 | CASHED CHECK # 1338 | | $150.00 | |
| 12/04/20 | CHECK # 1331 | | $2,088.31 | $19,081.77 |
| 12/04/20 | CASHED CHECK # 1337 | | $150.00 | |
| 12/03/20 | SSA TREAS 310 XXSOC SEC 120320 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | $21,320.08 |
| 12/01/20 | OPM1 TREAS 310 XXCIV SERV 120120 XXXXX ROBERT M MCCARTHY ESQ | $3,011.73 | | $21,130.08 |
| 12/01/20 | OPM1 TREAS 310 XXCIV SERV 120120 XXXXX LARRY WASHBURN | $100.00 | | |
| 11/27/20 | CHECK # 1334 | | $244.40 | $18,018.35 |
| 11/27/20 | CASHED CHECK # 1336 | | $150.00 | |
| 11/24/20 | CHECK # 1335 | | $228.50 | $18,412.75 |
| 11/19/20 | CASHED CHECK # 1333 | | $150.00 | $18,641.25 |
| 11/10/20 | CASHED CHECK # 1330 | | $200.00 | $18,791.25 |
| 11/09/20 | CASHED CHECK # 1329 | | $200.00 | $18,991.25 |
| 11/04/20 | CASHED CHECK # 1328 | | $200.00 | $19,191.25 |
| 11/03/20 | SSA TREAS 310 XXSOC SEC 110320 XXXXX0667B SSA N1*GD*ROBERT MCCARTHY FOR \N1*BE*CHOO WA | $190.00 | | $19,391.25 |
| 11/02/20 | OPM1 TREAS 310 XXCIV SERV 110220 XXXXX ROBERT M MCCARTHY ESQ | $3,011.73 | | $19,201.25 |
| 11/02/20 | OPM1 TREAS 310 XXCIV SERV 110220 XXXXX LARRY WASHBURN | $100.00 | | |
| 10/30/20 | CHECK | | $244.04 | $16,089.52 |
| 10/28/20 | CHECK # 1327 | | $2,001.88 | $16,333.56 |
| 10/27/20 | CHECK # 1325 | | $228.50 | $18,335.44 |
| 10/26/20 | CASHED CHECK # 1324 | | $200.00 | $18,563.94 |
| 10/19/20 | CASHED CHECK # 1323 | | $200.00 | $18,763.94 |
| 10/13/20 | CASHED CHECK # 1322 | | $200.00 | $18,963.94 |
| **Totals** | | **$60,432.99** | **$133,733.15** | |

APP. # 20

*16,080.99* (handwritten)

Account Detail - Wells Fargo

# WELLS FARGO

## EVERYDAY CHECKING

Account
...4854
Routing Numbers

$19,542.80
Available balance

### Activity Summary

| | |
|---|---|
| **Current posted balance** | $19,542.80 |
| **Pending withdrawals/debits** | $0.00 |
| **Pending deposits/credits** | $0.00 |
| **Available balance** | **$19,542.80** |

Monthly Service Fee Summary

Routing numbers

## Activity

The Available Balance shown above reflects the most up-to-date information available on your account. The balances shown below next to the last transaction of each day do not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when the transaction posted. If you had insufficient available funds when the transaction posted to your account, fees may have been assessed.

First
Previous
Next

| Date | Description | Deposits/Credits | Withdrawals/Debits | Ending Daily Balance |
|---|---|---|---|---|
| **Pending Transactions** | | | | |
| No pending transactions meet your search criteria. Please try again. | | | | |
| **Posted Transactions** | | | | |
| 01/11/21 | CASHED CHECK # 1345 | | $150.00 | $19,542.80 |
| 01/05/21 | CASHED CHECK # 1344 | | $150.00 | $19,692.80 |
| 01/04/21 | OPM1 TREAS 310 XXCIV SERV 010221 XXXXX ROBERT M MCCARTHY ESQ | $3,050.48 | | $19,842.80 |
| 01/04/21 | OPM1 TREAS 310 XXCIV SERV 010221 XXXXX LARRY WASHBURN | $100.00 | | |
| 12/31/20 | CASHED CHECK # 1342 | | $150.00 | $16,692.32 |

APP. # 21

| **Totals** | | **$60,432.99** | **$133,733.15** | |

*Copy*

**Customer Service Specialist at Court Ordered Benefits Branch at OPM:**

**ATTENTION: Ms. Melea Fowler**

My name is CHOO WASHBURN, and my CSRS Claim Number is CSA 4 597 209 3 and I am the former Spouse of LARRY WASHBURN, who is a retiree from the Federal Government, on July 30, 2011, and
he has been receiving his Annuity from CSRS PLAN, and his CSRS Retirement Claim Number is A45972090, and

My SSN is 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, and my Date of Birth is February 7, 1950, and
My mailing address is 3521 Cummings Lane, Chevy Chase, MD 20815.

And
On April 20, 2017, I already sent my letter to the Customer Service Specialist at Court Ordered Benefits Branch, OPM, to request my "Temporary Continued Coverage(TCC) prior to being approved for the actual FEHB coverage", and

(**Attached**: a copy of the letter that I sent to the OPM on April 20, 2017, as a reference)

On March 19, 2018, I mailed the same letter that I faxed to OPM on March 16, 2018, for the OPM to send my share of Annuity check directly to me to my address, at 3521 Cummings Lane, Chevy Chase, MD 20815.

and
Please do NOT send or do NOT mail my share of Annuity to Mr. Robert McCarthy who was appointed as a Temporary guardian since the Hearing is set on May 21, 2018, and since I will remove the guardian.

On November 22, 2017, my former husband, LARRY WASHBURN FALSELY petitioned and LIED to the DHHS that I am a mentally disabled, since I did NOT get the money for my portion for the sale of the rental property, our 2nd house, at 11532 Soward Drive, Wheaton, MD 20902, and that was deposited in the Court Registry since I contested my portion of the money for the sale of our 2nd house, at Wheaton, MD, since the Trustee's Accounting has "A LIEN THAT DOES NOT EXIST", so

*APP. # 22*

1

*copy*

The DHHS, WITHOUT INTERVIEWING me, obtained a Temporary guardian for the money that was deposited in the Court Registry, and the Hearing is set on May 21, 2018 for the matter.

**Therefore**, I respectfully request to Ms. Melea Fowler, at the Customer Service Specialist at Court Ordered Benefits Branch at OPM, that please do NOT give/NOT send/NOT mail my share of Annuity check to Mr. Robert McCarthy, who is appointed as a Temporary Guardian, since

Annuity and Alimony are different, and furthermore;

Annuity is **NOT** Alimony.

~~Wherefore~~, Ms. Melea Fowler, please send/mail my share of ANNUITY directly to me, to my address, at 3521 Cummings Lane, Chevy Chase, MD 20815.

and Ms. Melea Fowler, I respectfully request to the OPM to send me my Health Insurance card.

Thank you very much for your effort and your time for me.

Respectfully,

*Choo Washburn*

CHOO WASHBURN
3521 Cummings Lane
Chevy Chase, MD 20815
Cell #: 301-549-6105
March 23, 2018

APP. # 23

2

April 20, 2017

Customer Service Specialist at Court Ordered Benefits Branch:

My name is CHOO WASHBURN, and I am the Former Spouse of LARRY WASHBURN, who is a retiree from the Federal Government, on July 30, 2011 and he has been receiving his Annuity from **CSRS PLAN**, and his **CSRS Retirement Claim Number is A45972090**, and

**LARRY WASHBURN'S SSN is 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**, and his **Date of Birth is July 5, 1949**, and

LARRY WASHBURN'S current address is at 2158 Astoria Circle, Apt. #104, Herndon, VA 20170, and

My SSN is 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, and my Date of Birth is February 7, 1950, and

My current address is at 3521 Cummings Lane, Chevy Chase, MD 20815.

LARRY WASHBURN and I married on October 30, 1981, and we are divorced on March 23, 2017, and I attached the **CERTIFIED COURT ORDER, "JUDGMENT OF ABSOLUTE DIVORCE"** that was entered on March 23, 2017.

(Attached: CERTIFIED COURT ORDER, "JUDGMENT OF ABSOLUTE DIVORCE" that was entered on March 23, 2017, hereto as **REF. #1**, and incorporated by the reference),

~~I enclosed my voided check that has my bank name: PNC and my bank account~~ *CKW.*
*This Bank account is closed. CKW.*
~~#:054000030 5305952435.~~

~~(Attached: CHOO WASHBURN'S voided check that has CHOO WASHBURN'S bank name(PNC)~~
~~and routing and account #(054000030 5305952435), hereto as REF. #2, and incorporated by the~~
~~reference), and~~ *This Bank account is closed. CKW*

I attached LARRY WASHBURN'S **CSRS "Application for Immediate Retirement"** when he applied to request for his retirement, on July 30, 2011, and in his **CSRS "Application for**

**Immediate Retirement"** has my information, in column "1a", "1b", "1c", and Column, "1d" shows the "Place of our marriage", and Column, "1e" shows "the Date of our Marriage", and

*APP. # 24 page 1*

(**Attached:** Larry Washburn's "Application for Immediate Retirement", hereto as **REF. #3**, and incorporated by the reference), and

(**Attached:** LARRY WASHBURN'S "2014 VERIFICATION OF ANNUITY" that has his "**CSRS Retirement Claim Number: A45972090**", hereto as **REF. #4**, and incorporated by the reference).

I am writing this letter to the OPM, Court Ordered Benefit Branch because the Court awarded me "a 36.28% interest Of Plaintiff's(LARRY WASHBURN'S) gross OPM Annuity", and I attached the Court's Calculation Method that was based on the Calculation method that LARRY WASHBURN provided to the Court, and

(**Attached;** the Calculation Method that the Plaintiff, LARRY WASHBURN provided to the Court, hereto, as **REF. #5**, and incorporated by the reference),

Please make a correction if the "Calculation method that the Plaintiff provided to the Court is wrong to calculate my portion of Court Awarded Annuity, and I think my portion of Annuity has to be calculated: the period of our marriage divided by the period of LARRY WASHBURN'S service for Federal Government.

The Court designated me as "the recipient of the Former Spouse Survivor Annuity", and

The Court awarded me "maximum Former Spouse Annuity", and

I attached the letter from Ms. Beth Hutchison who is the Customer Service Specialist, at the OPM, at Boyers, PA, and the letter has my monthly rate of Survivor Annuity, $4,899.00 per month, on February 12, 2015.

(**Attached:** a copy of Ms. Beth Hutchinson's letter that has the information for my monthly rate of Survivor Annuity, $4,899.00 per month, on February 12, 2015, hereto as **REF. #6**, and incorporated by the reference),

According to the OPM regulation, "Former Spouse must submit A WRITTEN REQUEST WITHIN 60 days of the Divorce, or date of the Award, to be considered for coverage". "The spouse

App.#25page 2

may be eligible to Temporary Continued Coverage(TCC) prior to being approved for the actual FEHB coverage"; therefore,

I, CHOO WASHBURN respectfully request to the OPM "Temporary Continued Coverage(TCC")" for me, "prior to being approved for the actual FEHB coverage", and

I, CHOO WASHBURN respectfully request to the OPM to continue Federal Employees Health Benefits(FEHB) coverage since I am "a Former Spouse who is awarded a portion of retiree's CSRS ANNUITY by a qualifying court order, regardless of whether that benefit is payable now or in the future", I "may be eligible to be enrolled for Health Benefits coverage under Federal Employees Health Benefits(FEHB) program under certain condition. These conditions and other rules that apply to FEHB coverage of former spouses are covered in 5 CFR 890.801 et seq. and in the Federal Employees Health Benefits Handbook for Personnel and Payroll Offices (Formerly FPM Supplement890-1)", and since I may meet "the requirements in sections 8901 and 8905 of title 5, United States Code concerning health benefits", and

Since I am "a former spouse who is awarded a survivor annuity under CSRS or FERS by a qualifying court order may be eligible to enroll for health benefits coverage under the FEHB program" if I "meet certain requirements. These conditions and other rules that apply to FEHB coverage of former spouses are covered in 5 CFR 890.801 et seq, and in the Federal Employees Health Benefits Handbook for Personnel and Payroll Offices(formerly FPM Supplement 890-1)."

(Attached: CSRS and FERS Handbook, Court Order, Chapter 5, in Page 15, Section 5A4.1-5 Miscellaneous, A. Health Benefits Coverage, and in Page 20, in Section 5A5.1-3 Miscellaneous, A. Health Benefits Coverage, hereto as REF. # 7, and incorporated by the reference),

Respectfully submitted,

*Choo Washburn*

CHOO WASHBURN

APP. # 26

page 3

CHOO WASHBURN
3521 Cummings Lane
Chevy Chase, MD 20815
301-742-0981
April 20, 2017

APP. # 27
page 4

**Customer Service Specialist at Court Ordered Benefits Branch at OPM:**

My name is CHOO WASHBURN, and I am the Former Spouse of LARRY WASHBURN, who is a retiree from the Federal Government, on July 30, 2011, and he has been receiving his Annuity from CSRS PLAN, and his CSRS Retirement Claim Number is A45972090, and

LARRY WASHBURN'S SSN is 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, and his Date of Birth is July 5, 1949, and LARRY WASHBURN'S current address is at 2158 Astoria Circle, Apt. #104, Herndon, VA 20170, and

My SSN is 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, and my Date of Birth is February 7, 1950, and My current address is at 3521 Cummings Lane, Chevy Chase, MD 20815. LARRY WASHBURN and I married on October 30, 1981, and we are divorced on March 23, 2017, and

On April 20, 2017, I sent my letter to the Customer Service Specialist at Court Ordered Benefits Branch, OPM, to request my "Temporary Continued Coverage(TCC) prior to being approved for the actual FEHB coverage", and

At that time, I attached a copy of my cancelled PNC bank account(054000030 5305952435) check, for the OPM to deposit my share of Annuity electronically in my bank account, every month; however, My PNC bank account is closed now; therefore,

Please send my Annuity check directly to me at my address, at 3521 Cummings Lane, Chevy Chase, MD 20815, since

On November 2017, my former husband, LARRY WASHBURN FALSELY petitioned and LIED to the DHHS that I am a mentally disabled, since I did NOT get the money for the sale of our 2nd house, at 11532 Soward Drive, Wheaton, MD 20902, as my portion, and that was deposited in the Court Registry since I contested my portion of the money for the sale of our 2nd house, at Wheaton, MD, since the Accounting has "A LIEN THAT DOES NOT EXIST", so

The DHHS, WITHOUT INTERVIEWING me, obtained a temporary guardian for the

*APP. # 28*

1

money that was deposited In the Court Registry, and The Hearing is set on May 21, 2018 for the matter.

**WHEREFORE**, I respectfully request to the Customer Service Specialist at Court Ordered Benefits Branch at OPM, that please do NOT give/NOT send/NOT mail my share of Annuity check to Mr. Robert McCarthy, who is appointed as a temporary Guardian, but

Please send/mail my share of Annuity check to me directly to my address, at 3521 Cummings Lane, Chevy Chase, MD 20815, and furthermore,

I respectfully request to the Customer Service Specialist at Court Ordered Benefits Branch at OPM, that please tell me my OPM account.

I attached the followings:

1.CERTIFIED COURT ORDER, "JUDGMENT OF ABSOLUTE DIVORCE" that was entered on March 23, 2017, and

2. the Court ORDER that was entered on September 22, 2017, and that ordered LARRY WASHBURN that "... requiring that beginning in September 2017, Plaintiff shall pay Defendant $2,925.98 per month until OPM starts paying Defendant her share of the annuity directly.", and

3. the Court ORDER that was entered on February 21, 2018, and that ordered LARRY WASHBURN that "alimony payments from Larry Richard Washburn due to Choo Kim Washburn are to be paid to Robert M. McCarthy, Esq., Guardian of the Property...", and the Court did **NOT** order LARRY WASHBURN give my share of annuity to Mr. McCarthy.

Annuity and Alimony are different, and
Annuity is **NOT** Alimony, so Please send/mail my share of ANNUITY directly to me, to my address, at 3521 Cummings Lane, Chevy Chase, MD 20815, and please send me my Health Insurance card.
Thank you very much.

*APP. # 29*

*Choo Washburn*

2

**CHOO WASHBURN**
3521 Cummings Lane
Chevy Chase, MD 20815
Cell #: 301-549-6105

APP. # 30

# STATE OF MARYLAND

# COUNTY OF MONTGOMERY, to wit:

I HEREBY CERTIFY that the foregoing is a full, true and correct copy of
JUDGMENT OF ABSOLUTE DIVORCE ENTERED MARCH 23, 2017 IN

No. 133326-FL, truly taken and copied from the record of proceedings
in the Circuit Court for Montgomery County, Maryland, in the foregoing case.

NOTE: A raised seal authenticates each document herein.



In Testimony Whereof, I have hereunto subscribed my name
and affixed the seal of the Circuit Court for Montgomery
County this  7th day of April, A.D. 2017.

Barbara H. Meiklejohn
*Clerk of the Circuit Court for Montgomery County*

APP. # 31

**IN THE RECORDS OF THE CIRCUIT COURT**
**FOR MONTGOMERY COUNTY, STATE OF MARYLAND,**
**AMONG OTHER PROCEEDINGS**
**IS THE FOLLOWING, TO WIT:**

APP. #32

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

LARRY WASHBURN                    )
                                  )
            *Plaintiff*           )
                                  )
        v.                        )        Case No. 133326-FL
                                  )
CHOO WASHBURN                     )
                                  )
            *Defendant*           )

## JUDGMENT OF ABSOLUTE DIVORCE

THIS MATTER came before the Court on Plaintiff's Complaint for Absolute Divorce

(Dkt. No. 1) and Defendant's Amended Counter-Complaint for Divorce (Dkt. No. 104) for a

merits trial on the issues of divorce, marital property, and alimony. Having taken the matter under

advisement, the Court now enters judgment as follows:

### DIVORCE

UPON CONSIDERATION of Plaintiff's Complaint for Absolute Divorce (Dkt. No. 1),

Defendant's Amended Counter-Complaint (Dkt. No. 104), the answers thereto, the evidence

presented, and for reasons as set forth on the record in open court, it is therefore this 20th day of

March, 2017, and the same is hereby

ORDERED that Plaintiff's Complaint for Absolute Divorce (Dkt. No. 1) be and hereby is

GRANTED; and it is further

ORDERED that Defendant's Amended Counter-Complaint for Divorce (Dkt. No. 104) be

and hereby is DENIED; and it is further

ORDERED that Plaintiff shall be granted an absolute divorce from Defendant on the

grounds of one-year separation.

APP. #33

**ENTERED**

**MAR 23 2017**

262
───
263

Clerk of the Circuit Court
Montgomery County, Md.

## MARITAL PROPERTY

UPON CONSIDERATION of the evidence presented and for reasons as set forth on the record in open court, the Court finds that the following items are marital property: Plaintiff's annuity from the Office of Personnel Management (hereafter "OPM Annuity"), which the Court finds is in pay status and currently pays $8,065.00 per month; Plaintiff's Vanguard 401K, which the Court finds has a value of $21,174.00; a 2004 Toyota vehicle, which the Court finds has a value of $1,160.00, is titled under both parties, and is currently in the possession of Plaintiff; a 2010 RAV-4 vehicle, which the Court finds has a value of $6,308.00, is titled under both parties, and is currently in the possession of Defendant; real property located at 11532 Soward Drive, Wheaton, MD 20902 (hereafter "the Wheaton Property"), which the Court finds has a value of $338,574.00 and has a lien of $236,579.00, amounting to net equity of $101,995.00; real property located at 3521 Cummings Lane, Chevy Chase, MD 20815 (hereafter "the Chevy Chase Property"), which the Court finds has a value of $856,648.00 and has two liens in the amounts of $299,690.00 and $40,000.00, amounting to net equity of $516,958.00; and computer equipment that is currently in the possession of Plaintiff, which the Court finds has a value of $3,500.00. The Court finds that no other marital property exists between the parties; it is further

ORDERED that Plaintiff shall be entitled to keep the 2004 Toyota vehicle and that Defendant shall transfer title from her name to Plaintiff's name and execute any documents necessary to effectuate the transfer of title; and it is further

ORDERED that Defendant shall be entitled to keep the 2010 RAV-4 vehicle and that Plaintiff shall transfer title from his name to Defendant's name and execute any documents necessary to effectuate the transfer of title; and it is further

2

App. #34

ENTERED

MAR 2 3 2017

Clerk of the Circuit Court
Montgomery County, Md.

ORDERED that Plaintiff shall retain the computer equipment that is currently in his possession; and it is further

ORDERED that Defendant is awarded a 36.28% interest of Plaintiff's gross OPM Annuity, and that Plaintiff shall execute any documents necessary to effectuate the transfer of interest; and it is further

ORDERED that Plaintiff shall designate Defendant as the recipient of the Former Spouse Survivor Annuity; and it is further

ORDERED that Defendant is awarded the maximum Former Spouse Survivor Annuity; and it is further

ORDERED that Defendant is awarded a 50% interest in Plaintiff's Vanguard 401K, and that Plaintiff shall execute any documents necessary to effectuate the transfer of interest; and it is further

ORDERED that the Chevy Chase Property and the Wheaton Property shall be sold, with the proceeds to be divided equally between the parties; and it is further

ORDERED that the Court shall appoint David Driscoll, Esq., whose telephone number is (301) 838-3205, as trustee to sell the Chevy Chase Property and the Wheaton Property; and it is further

ORDERED that the parties shall fully cooperate with David Driscoll, Esq. throughout his efforts to sell the Chevy Chase Property and the Wheaton Property. To the extent that any action taken by either party subsequent to the appointment of the trustee increases sale costs or decreases the value of either property, the Court reserves the right upon motion of either party to order that any such loss be levied against the other party's share of the sale proceeds; and it is further

3

APP. # 85

**ENTERED**

MAR 23 2017

Clerk of the Circuit Court
Montgomery County, Md.

ORDERED that the Court shall appoint Wendy Widmann, Esq., whose telephone number is (410) 649-4752, to prepare a Qualified Domestic Relations Order (hereafter "QDRO") to facilitate the transfer of Defendant's 36.28% interest in Plaintiff's OPM Annuity, as well as Defendant's 50% interest in Plaintiff's Vanguard 401K; and it is further

ORDERED that the parties shall fully cooperate with Wendy Widmann, Esq. in providing any documentation and/or signatures necessary to facilitate the entry of the QDRO; and it is further

ORDERED that the costs of Wendy Widmann, Esq. shall be borne by Plaintiff with funds from his share of the sale proceeds, except that Plaintiff may personally provide the funds before the sale of the properties should he wish to do so.

## ALIMONY

UPON CONSIDERATION of the evidence presented and for reasons as set forth on the record in open court, and whereas the Court finds that Defendant is entitled to indefinite alimony, the evidence showing that she lacks the ability to become self-supporting and that, given her age, language difficulties, and limited work experience, there is no reasonable expectation that she will be able to find meaningful employment; it is further

ORDRED that Plaintiff shall pay $1,500.00 per month directly to Defendant on the first of each month as indefinite alimony; and it is further

ORDERED that Plaintiff's alimony obligation shall not commence until at least one of the properties cited herein has been sold and closings have occurred; and it is further

ORDERED that, in the event that both properties are not sold at the same time, the following provisions shall apply: if the Chevy Chase Property is sold first, upon the closing of the

4

APP. # 36

ENTERED

MAR 23 2017

Clerk of the Circuit Court
Montgomery County, Md.

sale, Plaintiff's alimony obligation shall be $1,000.00 per month until such time as the Wheaton Property is sold. Upon the closing of the sale of the Wheaton Property, Plaintiff's full alimony obligation of $1,500.00 shall take effect. If the Wheaton Property is sold first, upon the closing of the sale, Plaintiff's alimony obligation shall be $500.00 per month until such time as the Chevy Chase Property is sold. Upon the closing of the sale of the Chevy Chase Property, Plaintiff's full alimony obligation of $1,500.00 shall take effect. If closings on either property occur after the first of the month in which the property is sold, Plaintiff's alimony obligation shall be prorated for that month; and it is further

ORDERED that Plaintiff shall continue to pay the principal, interest, tax, and insurance on each property until such time as each property sold, and that Plaintiff shall not be entitled to a credit for any such payments from the proceeds of the sale of the properties.

UPON CONSIDERATION of the division of marital property as set forth above, the Court determines that neither party shall be entitled to a monetary award; and it is further

ORDERED that this Court shall retain jurisdiction to enter and to amend any Order for the purpose of its acceptance by the applicable plan and to amend any Order to effectuate the terms of this Judgment of Divorce.

It is so ORDERED.


_____
MICHAEL D. MASON, Judge
Circuit Court for Montgomery County, MD

**ENTERED**

APP. #37

MAR 23 2017

5

Clerk of the Circuit Court
Montgomery County, Md.

**HP OfficeJet Pro 6978 All-in-One Series**                    **Fax Log for**

Mar 16 2018 3:12PM

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|-----------|----------|-------|--------|
| | | | | Digital Fax | | |
| Mar 16, | 3:07PM | Fax Sent | 12026067958 | 4:41 N/A | 13 | OK |

*face up*
*OPM -*

*APP. # 88*

```
==================================
            CHEVY CHASE
        5910 CONNECTICUT AVE
            CHEVY CHASE
                MD
             20815-9998
             2306760815
03/19/2018   (800)275-8777   2:10 PM
==================================
==================================
Product              Sale    Final
Description          Qty     Price

First-Class          1       $1.63
Mail
Large Envelope
    (Domestic)
    (WASHINGTON, DC  20044)           OPM.
    (Weight:0 Lb 3.60 Oz)
    (Estimated Delivery Date)
    (Wednesday 03/21/2018)
Certified            1       $3.45
    (@@USPS Certified Mail #)
    (70160600000080137829)
Return               1       $2.75
Receipt
PM 1-Day             1       $6.70
    (Domestic)
    (HERNDON, VA  20170)             Lurry
    (Weight:0 Lb 7.70 Oz)
    (Expected Delivery Date)         Reply
    (Tuesday 03/20/2018)
    (USPS Tracking #)                Brief.
    (9505 5114 1738 8078 1401 64)
Insurance            1       $0.00
    (Up to $50.00 included)

Total                       $14.53

Cash                        $20.00
Change                      ($5.47)

Includes up to $50 insurance

In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit USPS.com
USPS Tracking or call 1-800-222-1811.


Save this receipt as evidence of
insurance. For information on filing
an insurance claim go to
https://www.usps.com/help/claims.htm.


All sales final on stamps and postage
Refunds for guaranteed services only
       Thank you for your business

      HELP US SERVE YOU BETTER

     TELL US ABOUT YOUR RECENT
          POSTAL EXPERIENCE

             Go to:
  https://postalexperience.com/Pos

    840-5200-0183-003-00016-57796-02

      or scan this code with
      your mobile device:
```



Court order Benefit Section
P.O. Box 17
Washington DC 20044—0017



APP. # 39

April 24, 2018

APPEAL LETTER to the United States Office of Personnel Management, Customer Service Specialist at Court Ordered Benefits Branch

**ATTENTION:**

Customer Service Specialist at Court Ordered Benefits Branch at OPM:

My name is CHOO WASHBURN, and my CSRS Claim Number is CSA 4 597 209 3 and I am the former Spouse of LARRY WASHBURN, who is a retiree from the Federal Government, on July 30, 2011, and
he has been receiving his Annuity from CSRS PLAN, and his CSRS Retirement Claim Number is A45972090, and

My SSN is 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, and my Date of Birth is February 7, 1950, and
My mailing address is at 3521 Cummings Lane, Chevy Chase, MD 20815, and

I, CHOO WASHBURN respectfully file the Appeal to the Customer Service Specialist at Court Ordered Benefits Branch, at the OPM, since
the ORDER**(Attached: REF. #8)** for Appointment of Temporary Guardian of Property is UNJUST, UNFAIR, and MISTAKE.

I respectfully file the Appeal to the Customer Service Specialist at the Court Ordered Benefit Branch, to respectfully request that please do NOT send/do NOT mail my Annuity to Mr. Robert McCarthy who was appointed as a Temporary guardian, and I respectfully request to the Customer Service Specialist at the Court Ordered Benefit Branch that please do NOT deposit my Annuity in any/in any form of Mr. McCarthy's account since he created the account WITHOUT MY PERMISSION AND WITHOUT MY AGREEMENT.

On November 22, 2017, my former husband, LARRY WASHBURN FALSELY petitioned and LIED to the DHHS(Department Human Health Service) that I am a mentally disabled, according to him since I was refusing my portion of the monies for the sale of the rental property; however,

APP. # 40

1

The truth is that I did NOT refuse the monies, but I contested my portion of monies, in the amount of, $18,794.85 for the Sale of our 2nd house since the Trustee's Accounting has "A LIEN THAT DOES NOT EXIST"(**Attached: REF. #1**), and

I was waiting my MOTIONS to be heard, including my "EMERGENCY MOTION FOR EMERGENCY HEARING FOR PETITION TO THE COURT TO FIX THE TRUSTEE'S ACCOUNTING SINCE THE NUMBERS IN THE ACCOUNTING DON'T ADD UP"(**Attached: REF. #2**), to be heard for the Court to fix the Trustee's Accounting since the Trustee's Accounting has "A LIEN THAT DOES NOT EXIST".

I contested my portion of monies of the sale of our 2nd house, since according to the Second page of the Ditech Mortgage company's letter(**Attached: REF. #3**) that was dated on July 22, 2017, the mortgage at our Wheaton house(2nd house, at Wheaton, MD) was Paid Off in Full, on September 2, 2016, since

Without informing me, my former husband, **LARRY WASHBURN PAID OFF, "PAID IN FULL-GOOD FUNDS, 09/02/2016 LTR-1498 ES998-021  CPI"** for our 2nd house(used to be our rental property) **Mortgage Account #: 0034933309**, and made me to pay monthly mortgage payment continuously, in order for him to cheat monies against me and to cheat taxes against IRS and to conceal the Court for his finance.

My former husband, LARRY WASHBURN contacted the DHHS, and LIED to the DHHS that I was refusing to get monies that was deposited in the Court registry for my portion for the sale of the 2nd house because I do not have competency to handle monies; however,

In the MERITS HEARING (DIVORCE HEARING), on February 2, 2017, in the Transcript(**Attached: REF. #4**), in the Page 74, from Line 3 to Line 17, and from the Page 75, Line 22 to the Page 76, Line 10, , and in the "MODIFY ALIMONY HEARING", on September 7, 2017, in the Transcript(**Attached: REF. #5**), in the Page 71, from Line 12 to Line 19, my former husband, LARRY WASHBURN highly praised for my competency and my capability, UNDER OATH to the Court.

On November 22, 2017, the DHHS people, who NEVER INTERVIEWED me for the monies that were deposited in the Court Registry Office, obtained an Order for a Temporary guardian for the money that was deposited in the Court Registry and

APP. #41

2

for the Land Record Documents that were opened to every public and the documents that were kept in the Land Records Office in the Circuit Court for the Montgomery County in Maryland, in order for LARRY WASHBURN to prohibit me from obtaining Land Record documents for our two properties, and

On February 21, 2018, the Court Order**(Attached: REF. #6)** ordered that "the funds placed into the court registry… in the amount of $32,233.98" ($18,794.85 as my portion of the sale of the 2nd house PLUS around $12,272.24 that LARRY WASHBURN owes me for the Judgment money for other Civil Case, in 2016 for him VIOLATING our Postnuptial Agreements for his VIOLATIONS of his income sharing agreements), "are to be released to Robert McCarthy", who was appointed as a Temporary Guardian, and

The Order ordered, that "alimony" "payments from Larry Richard Washburn due to Choo Kim Washburn are to be paid to Robert M. McCarthy…"

Currently my former husband, LARRY WASHBURN'S Alimony payment responsibility to me is $100 for each month because of the mistake in the Docket Entry and since there was NO actual Modify Alimony Hearing was held, on September 7, 2017, since LARRY WASHBURN did NOT provide me the full and complete Answers of Interrogatories that I requested from him, and he did NOT produce the full and complete Production of Documents for me that I requested from him, that are essential for the Modify Alimony Hearing.

I had been a stay-home wife and a stay-home mom for most of our over 35 years of marriage life, and I need my share of Annuity, for me to live; therefore,

I, CHOO WASHBURN respectfully files Appeal to the Customer Service Specialist at Court Ordered Benefits Branch at OPM, to respectfully request that please do NOT give/NOT send/NOT mail my Annuity check to Mr. Robert McCarthy, who is appointed as a Temporary Guardian, and I respectfully files Appeal to the Customer Service Specialist at Court Ordered Benefits Branch at OPM, to respectfully request that please do NOT deposit my Annuity in any of Mr. McCarthy's account and please do NOT deposit my Annuity in any form of Mr. McCarthy's account since he created WITHOUT MY PERMISSION AND WITHOUT MY AGREEMENT, and furthermore;

APP. #42

Even if I am 68 years old, I am very healthy mentally and physically, and I am very competent to take care of my own affairs and my financial affairs and my property for myself and by myself, effectively and properly.

I enclosed my doctor's letter**(Attached: REF. #7)** for the proof of my physical and mental health and competency and effectiveness, and furthermore;

Annuity and Alimony are different, and furthermore;
Annuity is **NOT** Alimony, and furthermore;
The Divorce Decree is **NOT** amended.

**WHEREFORE**, I, CHOO WASHBURN respectfully files the Appeal to the Customer Service Specialist at Court Ordered Benefits Branch, at the OPM, to respectfully request to the OPM continuously to use "Section A – Payment by Direct Deposit" that I provided to the OPM, on April 10, 2018, and the OPM deposited my Annuity for me for April, 2018 payment, and I got my Annuity for April 2018 safely, and

I respectfully remind the Customer Service Specialist at Court Ordered Benefits Branch, at the OPM that my address is, at 3521 Cummings Lane, Chevy Chase, MD 20815, and

I strongly believe that my former husband, LARRY WASHBURN had hacked my OPM account since he already hacked my computer, and

I strongly believe that my former husband, LARRY WASHBURN changed my address into WRONG ADDRESS and disabled my OPM account in order for him to prohibit me from viewing my OPM account; therefore,
I am notifying to the OPM that please investigate for my OPM account and for all other people's OPM accounts, and

I, CHOO WASHBURN respectfully request to Ms./Mr. Customer Service Specialist at Court Ordered Benefits Branch, at the OPM that please send me my Health Insurance card.  Thank you very much for your effort and your time for me.

**AFFIDAVIT**

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true and correct.

*Choo Washburn*          App. # 43

4

_Choo Washburn_

**CHOO WASHBURN**
**3521 Cummings Lane**
**Chevy Chase, MD 20815**
**Cell #: 301-549-6105**

Signed this 24th day of April 2018.

APP. # 44

**Circuit Court for** Montgomery County     **Case No.** 133326-FL
City or County

| Larry R. Washburn | Amended #1 | vs. | Choo K. Washburn |
|---|---|---|---|
| Name | | | Name |
| 2158 Astoria Cir Apt 104 | | | 3521 Cummings Lane |
| Address | | | Address |
| Herndon, Virginia  20170 | | | Chevy Chase, Maryland 20815 |
| City, State, Zip | | | City, State, Zip |
| 301-357-7818 | | | 301-538-8596 or 301-656-5385 |
| Telephone | | | Telephone |
| *Plaintiff* | | | *Defendant* |

## JOINT STATEMENT OF PARTIES CONCERNING MARITAL
## AND NON-MARITAL PROPERTY
### Md. Rule 9-207(b)
(CC-DR-033)

1.   The parties agree that the following property is **"marital property"** as defined by Maryland Annotated Code, Family Law Article, § 8-201:

| Description of Property | How Titled | | Fair Market Value | | Liens, Encumbrances, or Debt Directly Attributable | |
|---|---|---|---|---|---|---|
| | Spouse 1 Assertion | Spouse 2 Assertion | Spouse 1 Assertion | Spouse 2 Assertion | Spouse 1 Assertion | Spouse 2 Assertion |
| 2004 Toyota Corolla | Joint | Joint | $1,442.00 | | None | None |
| 2010 Toyota Rav4 | Joint | Joint | $6,705.00 | | None | None |
| Plaintiff's Vanguard 401K | Joint | Joint | 20,890.70 | | Taxes | |

APP. #45

2. The parties agree that the following property is **not marital property** because the property (a) was acquired by one party before marriage, (b) was acquired by one party by inheritance or gift from a third person, (c) has been excluded by valid agreement, or (d) is directly traceable to any of these sources:

| Description of Property | How Titled | | Fair Market Value | | Liens, Encumbrances, or Debt Directly Attributable | |
|---|---|---|---|---|---|---|
| | Spouse 1 Assertion | Spouse 2 Assertion | Spouse 1 Assertion | Spouse 2 Assertion | Spouse 1 Assertion | Spouse 2 Assertion |
| Inherited Furniture | N/A | | $200 | | None | |
| Elec hardware, personal ef | N/A | | $500 | | None | |
| Tools | N/A | | $250 | | None | |
| used Computers | N/A | | $500 | | None | |

3. The parties are **not in agreement** as to whether the following property is marital or non-marital:

| Description of Property | How Titled | | Fair Market Value | | Liens, Encumbrances, or Debt Directly Attributable | |
|---|---|---|---|---|---|---|
| | Spouse 1 Assertion | Spouse 2 Assertion | Spouse 1 Assertion | Spouse 2 Assertion | Spouse 1 Assertion | Spouse 2 Assertion |
| 11532 Soward Drive Wheaton Md 20902 | Joint | | 338,574.00 | | 236,579.82 | |
| 3521 Cummings lane Chevy Chase, MD 20815 | Joint | | 856,648.00 | | 299,690.70 | |

_Larry R Washburn_
Plaintiff or Attorney

_____
Defendant or Attorney

July 27, 2016
Date

_____
Date

APP. # 46

**INSTRUCTIONS:**
1. If the parties do not agree about the title or value of any property, the parties shall set forth in the appropriate column a statement that the title or value is in dispute and each party's assertion as to how the property is titled or the fair market value.
2. In listing property that the parties agree is non-marital because the property is directly traceable to any of the listed sources of non-marital property, the parties shall specify the source to which the property is traceable.



UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Court Ordered Benefits
Post Office Box 17
Washington, D.C. 20044-0017

March 19, 2018

CSA 4 597 209 3

Choo Washburn
Re: Larry Washburn
3521 Cummins Lane
Chevy Chase, MD 20815

Dear Choo Washburn:

We have received and approved your application for a portion of your former spouse's Federal retirement benefit.

This office administers Federal retirement and survivor annuity benefits. We award court ordered retirement and survivor benefits for former spouses as provided for under Section 8345 and 8467 of Title 5 of the United States Code and Part 838 of Title 5 of the Code of Federal Regulations.

By direction of the court we are to pay you 36.28% of your former spouse's gross annuity benefit of $8,226.00 or $2,984.39 per month. Your first payment is to be dated 04/01/2018. Please note that each regular payment you and your former spouse receive pays the benefits due for the previous month.

**NOTICE funds are not available until we receive your financial information.** We are enclosing a purple envelope along with a direct deposit form that needs to be filled out and sent back to us. To expedite this process you can fax the form to us at (202) 606-7958, ATTENTION: Melea Fowler or scan the document and email it to Melea.Fowler@opm.gov. Our direct deposit account program is an efficient and secure method of receiving your funds. You can establish a direct deposit account with us through your financial institution.

We are enclosing references to the applicable regulations we must follow in awarding former spouse's benefits as well as the eligibility requirements for your enrollment in the Federal Employees Health Benefits Plan.

Let us know if you need further assistance about this matter.

Sincerely,

Melea Fowler, Paralegal Specialist
Court Ordered Benefits
Melea.Fowler@opm.gov

Enclosures                    APP. # 47

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

LARRY WASHBURN         )
                                 )

*Plaintiff*          )

                                 )

**v.**                     )       **Case No. 133326-FL**

                                 )

CHOO WASHBURN        )

                                 )

*Defendant*         )

ENTERED

SEP 22 2017

Clerk of the Circuit Court
Montgomery County, Md.

## ORDER

UPON CONSIDERATION of Defendant's "Emergency Motion for Emergency Hearing for the Petition to the Honorable Court to Amend (D.E. #345) the Defendant's Share of Annuity from 36.28% to 43.26%, and Since the Two Parties were Already Divorced, on March 23, 2017, the Defendant Respectfully Petitions to the Court to Order the Plaintiff to Pay the Defendant her Amended Share (43,26%) of Annuity that has Been Depositing into the Plaintiff's Bank Account Electronically for Every Month, from OPM, and Since the Court Provided the Relief the Plaintiff for him not to Pay Monthly Mortgage and Equity Loan Payments for the Marital House, Unfairly and Unjustly, and Since the Court Ordered the Defendant to Pay Monthly Mortgages and Equity Loan Payments for the Marital House, and Since the Marital House Utilities: Washington Gas and WSCC (Water) has Been Turned Off, and Since she Needs her Amended Share (43.26) of Annuity to Pay Mortgage and Equity Loan Payments, her Bills and to Buy Medicine and Grocery" (Dkt. No. 356), and after consideration of the testimony, evidence, and arguments of the parties in open court on September 7, 2017, it is this 21st day of September, 2017, and the same is hereby

**ORDERED** that Defendant's "Emergency Motion for Emergency Hearing for the Petition to the Honorable Court to Amend (D.E. #345) the Defendant's Share of Annuity from

APP. #48                          386

36.28% to 43.26%, and Since the Two Parties were Already Divorced, on March 23, 2017, the Defendant Respectfully Petitions to the Court to Order the Plaintiff to Pay the Defendant her Amended Share (43,26%) of Annuity that has Been Depositing into the Plaintiff's Bank Account Electronically for Every Month, from OPM, and Since the Court Provided the Relief the Plaintiff for him not to Pay Monthly Mortgage and Equity Loan Payments for the Marital House, Unfairly and Unjustly, and Since the Court Ordered the Defendant to Pay Monthly Mortgages and Equity Loan Payments for the Marital House, and Since the Marital House Utilities: Washington Gas and WSCC (Water) has Been Turned Off, and Since she Needs her Amended Share (43.26) of Annuity to Pay Mortgage and Equity Loan Payments, her Bills and to Buy Medicine and Grocery" (Dkt. No. 356) be and hereby is **GRANTED IN PART**, requiring that beginning in September 2017, Plaintiff shall pay Defendant $2,925.98 per month until OPM starts paying Defendant her share of the annuity directly.

MICHAEL D. MASON, Judge
Circuit Court for Montgomery County, MD

ENTERED

SEP 22 2017

Clerk of the Circuit Court
Montgomery County, Md.

APP. # 49

| LARRY WASHBURN | * | IN THE |
| | * | |
| Plaintiff | * | CIRCUIT COURT |
| | * | FOR |
| v. | * | MONTGOMERY COUNTY, |
| CHOO WASHBURN | * | MARYLAND |
| Defendant | * | Case No.: 133326 FL |

\* \* \* \* \* \* \* \* \* \* \* \*

## QUALIFIED DOMESTIC RELATIONS ORDER
### (AMERICAN COLLEGE OF RADIOLOGY EMPLOYEES' PENSION PLAN & TRUST)

Upon consideration of the Judgment of Absolute Divorce entered in the above-captioned matter, it is this **3rd** day of _____ **May** _____, _____ **2017** _____, found and ordered as follows:

1.      The parties hereto were husband and wife, married October 30, 1981, this Order is entered incident to a Final Judgment of Absolute Divorce dated March 20, 2017 in the above-captioned matter.

2.      This Order is a Qualified Domestic Relations Order under the Internal Revenue Code of 1986, Section 414(p), and the Employee Retirement Income Security Act of 1974 (ERISA) Section 206(d). This Order provides for the disposition of the interest of LARRY R. WASHBURN (the "Participant") in certain benefits provided or to be provided by the AMERICAN COLLEGE OF RADIOLOGY EMPLOYEES' PENSION PLAN & TRUST, Vanguard Plan No: 091819 (the "Plan").

3.      The parties are identified as follows:

> Please Note: Pursuant to Md. Rule of Procedure Rule 1-322.1, social security numbers and dates of birth are included in the letter transmitting this order to the Plan.

*280*

App. # 50

**ENTERED**

MAY 03 2017

Clerk of the Circuit Court
Montgomery County, Md.

Participant:

      Name:            LARRY R. WASHBURN
      Address:         2158 Astoria Circle
                       Apartment 104
                       Herndon, VA 20170

Former Spouse (the "Alternate Payee"):

      Name:             CHOO K. WASHBURN
      Address:         3521 Cummings Lane
                       Chevy Chase, MD 20815

4.     The address of the Plan is:

          American College of Radiology
          1891 Preston White Drive
          Reston, VA 20191
          Attn: Employees Pension Plan

          Vanguard
          P.O. Box 1101
          Valley Forge, PA 19482-1101

5.     To accommodate the marital property distribution between the parties IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

     A.    <u>Marital Property</u>.  The portion of the Participant's interest in the Plan accrued during the parties' marriage is marital property pursuant to Section 8-205 of the Maryland Family Law Article.

     B.    <u>Alternate Payee's Share</u>.  The Alternate Payee's Share shall be an amount equal to Fifty Percent (50%) of the Participant's vested account balance under the Plan determined as of March 20, 2017 (the "Determination Date"). The Alternate Payee's Share shall be adjusted for investment experience from the Determination Date to the date of distribution to the Alternate

-2-

APP. # 51

ENTERED

MAY 03 2017

Clerk of the Circuit Court
Montgomery County, Md.

Payee. The Alternate Payee's Share shall be made up of a pro rata share of each of the Participant's Investment Accounts under the Plan as of the date of segregation for the benefit of the Alternate Payee.

        **C.**    <u>Segregation of Alternate Payee's Share</u>. The Alternate Payee's Share shall be segregated from the Participant's Account Balance under the Plan as soon as administratively practicable after the Plan Administrator determines that this is a "qualified" order and shall thereafter be the Alternate Payee's sole and separate property. The Alternate Payee's Share shall initially be invested in the same investments as the Participant's account is invested and will be adjusted in accordance with the terms of the Plan to reflect earnings, gains and losses from the date of segregation of the Alternate Payee's Share until the date of distribution to the Alternate Payee. The Alternate Payee shall have, with respect to the Alternate Payee's Share, all of the rights, options and features a beneficiary has under the Plan.

        **D.**    <u>Method and Timing of Payment</u>. The Alternate Payee's Share shall be paid to the Alternate Payee directly from the Plan as soon as administratively feasible on or after acceptance of this Order by the Plan as a Qualified Domestic Relations Order and after the Alternate Payee's completion of any required forms. The Plan Administrator shall make payment of the Alternate Payee's Share as a single sum payment directly to the Alternate Payee or shall transfer the Alternate Payee's Share directly to an eligible retirement plan for the Alternate Payee's benefit, whichever the Alternate Payee shall direct.

        **E.**    <u>Death of Alternate Payee; Death of Participant</u>. If the Alternate Payee dies before receiving full payment of the Alternate Payee's Share from the Plan, the remainder of such Share shall be paid to the Alternate Payee's designated beneficiary or, if none, to the

-3-

APP. # 52

**ENTERED**



MAY 03 2017

Clerk of the Circuit Court
Montgomery County, Md.

Alternate Payee's beneficiary as determined under the terms of the Plan. If the Participant dies prior to distribution of the Alternate Payee's Share, the Alternate Payee's Share shall not be affected, and the Alternate Payee shall be treated as the surviving spouse of the Participant to the extent necessary to provide payment of the Alternate Payee's Share.

  F. <u>Obligations of Participant</u>.

   (1) The Participant shall timely make all elections necessary or advisable to carry out the terms of this Order. The Participant shall not diminish the benefits to be provided to the Alternate Payee or in any way take any action which would adversely affect the Alternate Payee's Share nor omit to take any action required for the Alternate Payee to receive the Alternate Payee's Share.

   (2) If the Plan distributes any part of the Alternate Payee's Share directly to the Participant, the Participant's estate or any designated beneficiary of the Participant, the recipient shall pay said part to the Alternate Payee immediately upon receipt of said part (adjusted, however, so that the tax consequences to such recipient are the same as if such payments had been made directly to the Alternate Payee by the Plan) and such part shall be subject to a constructive trust for the benefit of the Alternate Payee, and any such part shall be subject to all the terms of this Order as if it were being paid directly to the Alternate Payee by the Plan. The provisions of this Paragraph shall not be binding upon the Plan but shall be binding on the Participant, the Participant's estate or any designated beneficiary.

  G. <u>Successor Plans; Amendments</u>. Until the Alternate Payee receives full payment of the Alternate Payee's Share, this Order shall apply to any successor or substitute plans to the Plan, to any amendments to the Plan, and to any plan or account that receives any

App. # 53   -4-

ENTERED

MAY 03 2017



Clerk of the Circuit Court
Montgomery County, Md.

rollover, transfer or payment of the Participant's benefits under the Plan, and the Alternate Payee's Share with respect to any such plan or account shall be the amount stated in Paragraph B. applied to the Participant's interest in such plan or account, and the Alternate Payee's death benefit under that plan or account shall be such amount as is necessary to provide for payment of the Alternate Payee's Share. Any change in the Plan Administrator, Plan Sponsor, or Plan Name shall not affect the rights of the Alternate Payee under this Order.

6.    The Alternate Payee shall notify the Plan Administrator of any change of Alternate Payee's address. Notification shall be made to the address stated above or such other address as the Plan Administrator may specify by written notice to the Alternate Payee.

7.    The Alternate Payee shall be responsible for the tax consequences of any distribution received by the Alternate Payee. The Participant shall be responsible for the tax consequences of any distribution received by the Participant.

8.    It is intended that this Order shall be a qualified domestic relations order under the Internal Revenue Code Section 414(p) and ERISA Section 206(d), and the provisions herein shall be administered and interpreted in conformity with those laws. This Order has been issued pursuant to the domestic relations laws of the State of Maryland; does not require the Plan to provide any type or form of benefit or any option not otherwise provided under the Plan; does not require the Plan to provide increased benefits (the Alternate Payee's Share shall reduce the benefits payable under the Plan to the Participant, so that the total of the benefits payable to the Alternate Payee and the Participant in the aggregate do not exceed the Participant's total vested benefit under the Plan); and does not require the payment of benefits to the Alternate Payee which are required to be paid to another Alternate Payee under another Order previously

APP. #54⁼⁵⁻

ENTERED

MAY 03 2017
Clerk of the Circuit Court
Montgomery County, Md.

accepted by the Plan.

9.      Any determination fee assessed by the Plan for review of this Order shall be allocated one-half to the Alternate Payee's account and one-half to the Participant's remaining account.

10.      This Court retains jurisdiction to enter additional Orders and to amend this Order for the purpose of its acceptance by the Plan Administrator, to effectuate the terms of the parties' Judgment of Absolute Divorce and to settle any and all disputes between the parties relative to the benefits provided in this Order.  Any such Order may be entered <u>nunc</u> <u>pro</u> <u>tunc</u>, if appropriate.

_Michael Mason_
JUDGE

This is a Proper Order to be Entered:

_____
Magistrate

CONSENTED TO AS TO FORM:

_Larry R. Washburn_
LARRY WASHBURN

_____
CHOO WASHBURN

-6-
APP. # 55

**ENTERED**

MAY 03 2017

Clerk of the Circuit Court
Montgomery County, Md.

## Certificate of Service

The undersigned hereby certifies that a copy of the foregoing Certificate of Service was mailed on June 15, 2017 by first class mail, postage prepaid to

CHOO K. WASHBURN
3521 Cummings Lane
Chevy Chase, MD 20815

Wendy Widmann, Esquire

APP. # 56

| | | |
|---|---|---|
| LARRY WASHBURN | * | IN THE |
| Plaintiff | * | CIRCUIT COURT |
| | * | FOR |
| v. | * | MONTGOMERY COUNTY, |
| CHOO WASHBURN | * | MARYLAND |
| Defendant | * | Case No.: 133326 FL |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### Certificate of  Service

The undersigned hereby certifies that a copy of the <u>QUALIFIED DOMESTIC RELATIONS ORDER</u> (AMERICAN COLLEGE OF RADIOLOGY EMPLOYEES' PENSION PLAN & TRUST) was sent on May 12, 2017 by certified mail, postage prepaid to the Plan:

> American College of Radiology
> 1891 Preston White Drive
> Reston, VA 20191
> Attn: Employees Pension Plan
>
> Vanguard
> P.O. Box 1101
> Valley Forge, PA 19482-1101

Copies of the return receipts from the Post Office are attached as Exhibit A.

The undersigned further certifies that the above pleading or paper complies with Rule 1-322.1 and/or the Maryland Electronic Filing Rules including Rule 20-201(f)(1)(B) and personal identifier information has been excluded except if here is a legal obligation to include such information.

_____

Wendy Widmann, Esquire
Daneker, McIntire, et al.
One North Charles Street
Suite 2450
Baltimore, MD 21201-3740
410-649-4752
Non-Party/Other

6/15/2017
CC to Choo Washburn

APP. # 57

| | | |
|---|---|---|
| LARRY WASHBURN | * | IN THE |
| Plaintiff | * | CIRCUIT COURT |
| | * | FOR |
| v. | * | MONTGOMERY COUNTY, |
| CHOO WASHBURN | * | MARYLAND |
| Defendant | * | Case No.: 133326 FL |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## Certificate of Service

The undersigned hereby certifies that a copy of the <u>QUALIFIED DOMESTIC RELATIONS ORDER</u> (AMERICAN COLLEGE OF RADIOLOGY EMPLOYEES' PENSION PLAN & TRUST) was sent on May 12, 2017 by certified mail, postage prepaid to the Plan:

> American College of Radiology
> 1891 Preston White Drive
> Reston, VA 20191
> Attn: Employees Pension Plan
>
> Vanguard
> P.O. Box 1101
> Valley Forge, PA 19482-1101

Copies of the return receipts from the Post Office are attached as Exhibit A.

The undersigned further certifies that the above pleading or paper complies with Rule 1-322.1 and/or the Maryland Electronic Filing Rules including Rule 20-201(f)(1)(B) and personal identifier information has been excluded except if here is a legal obligation to include such information.

Wendy Widmann, Esquire
Daneker, McIntire, et al.
One North Charles Street
Suite 2450
Baltimore, MD 21201-3740
410-649-4752
Non-Party/Other

6/15/2017
CC to Choo Washburn

APP. # 58

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

American College of Radiology
1891 Preston White Drive,
Reston, VA 20191
Attn: Employees Pension Plan

9590 9402 2282 6225 8321 85

Article Number (Transfer from service label)

7016 2140 0000 0776 1271

S Form 3811, July 2015 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X  Brinkt                    ☐ Agent
                              ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                  8/24/00

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery ($500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

Vanguard
P.O. Box 1101
Valley Forge, PA 19482-1101

9590 9402 2282 6225 8321 92

Article Number (Transfer from service label)

7016 2140 0000 0776 1288

S Form 3811, July 2015 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X  Vanguard                  ☐ Agent
                              ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

MAY 24 2017
USPS

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery ($500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

APP. # 59

Exhibit A

LARRY WASHBURN      \*     IN THE

     Plaintiff      \*     CIRCUIT COURT

     \*     FOR

v.      \*     MONTGOMERY COUNTY,

CHOO WASHBURN      \*     MARYLAND

     Defendant      \*     Case No.: 133326 FL

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### Certificate of Service

The undersigned hereby certifies that a copy of the <u>COURT ORDER ACCEPTABLE FOR PROCESSING</u> (CSRS) was sent on May 22, 2017 by FedEx Express to the Plan:

     Court Ordered Benefits Section
     Allotments Branch
     Retirement and Insurance Group
     Office of Personnel Management
     1900 E Street NW, B431
     Washington, D.C. 20415

     A copy of the FedEx Express proof-of-delivery is attached as Exhibit A.

     The undersigned further certifies that the above pleading or paper complies with Rule 1-322.1 and/or the Maryland Electronic Filing Rules including Rule 20-201(f)(1)(B) and personal identifier information has been excluded except if here is a legal obligation to include such information.



     Wendy Widmann, Esquire
     Daneker, McIntire, et al.
     One North Charles Street
     Suite 2450
     Baltimore, MD 21201-3740
     410-649-4752
     Non-Party/Other

APP. # 60



May 26,2017

Dear Customer:

The following is the proof-of-delivery for tracking number **811312563363**.

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivery location: | 1900 E ST NW 2309 DC 20415 |
| Signed for by: | Signature release on file | Delivery date: | May 24, 2017 09:29 |
| Service type: | FedEx Express Saver | | |
| Special Handling: | Deliver Weekday | | |
| | Direct Signature Required | | |

NO SIGNATURE IMAGE IS AVAILABLE VIA THIS TRACKING APPLICATION.
The proof of delivery details appear below; however, no signature image is available at this time.

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 811312563363 | Ship date: | May 22, 2017 |

Recipient:
DPM
COURT ORDERED BENEFITS SECTION
1900 E STREET NW B431
DC 20415 US
Reference

Shipper:
WENDY WIDMANN
DANEKER MCINTIRE SCHUMM ET
1 N CHARLES ST STE 2450
BALTIMORE, MD 212013736 US
WASHBURN LARRY ADRO

Thank you for choosing FedEx.

APP. # 61

Exhibit A

LARRY WASHBURN
2158 ASTORIA CIRCLE
APT 104
HERNDON VA 20170



United States
Office of
Personnel
Management

Retirement and
Insurance
Services

Your Federal
Retirement
Benefits

App. # 62

# YOUR FEDERAL RETIREMENT BENEFITS

Dear LARRY WASHBURN

This *personalized* booklet, sent at your request, describes your monthly benefits as of April 01, 2015, and provides other essential information. Review it carefully and keep it with your important papers and documents.

Federal employees play a valuable role in our country's workforce. We care for national parks, conduct research on treating and curing disease, and perform the important work of the American government. Our country needs and depends on us. Your years in government have been significant in helping our the Federal Government grow and prosper. During your service in the Federal nation and prosper. During your service in the Federal workforce, you have earned and accrued certain retirement benefits. Now that you have stepped away from active Federal employment, it is time to receive and enjoy these benefits.

We are here to answer your questions and explain your retirement benefits in detail. Contact us at www.servicesonline.opm.gov, or call us toll-free at 1-888-767-6738. To see how you can help with OPM's Green Initiative, see "How To Contact OPM".

OPM looks forward to serving you in the years ahead.

Retirement Operations
Office of Personnel Management

APP. #63

# PERSONAL STATISTICS

We prepared this Explanation of Benefits
as of April 01, 2015

Name:                                                    LARRY WASHBURN

Civil Service Annuity (CSA) Number: CSA        4 597209 0

Retirement System:                                      CSRS

Beginning Date of Benefits:                             08/01/2011

Current Correspondence Address:        LARRY WASHBURN
                                       2158 ASTORIA CIRCLE
                                       APT 104
                                       HERNDON VA 20170

Password:
(write in for easy availability)

Direct Deposit, Type of Account:        Checking
Account Number:                         910622052.

The amounts shown in this booklet are based upon records on file
with us as of April 01, 2015. If you believe any of this information
is incorrect, please contact us immediately. See the chapter "How
to Contact Us" in this booklet for instructions. Please keep this
with your personal records for future reference.

# TABLE OF CONTENTS

|                                               | Page |
|-----------------------------------------------|------|
| PERSONAL STATISTICS                           | 2    |
| YOUR MONTHLY BENEFIT                           | 4    |
| SURVIVOR BENEFITS                             | 5    |
| HEALTH INSURANCE BENEFITS                      | 6    |
| LIFE INSURANCE BENEFITS                        | 9    |
| CONTRIBUTIONS AND TAX INFORMATION             | 15   |
| HOW TO CONTACT OPM                            | 19   |
| COST OF LIVING, ADJUSTMENTS AND NOTICES        | 23   |
| OTHER INFORMATION                            | 25   |
| PAMPHLETS AVAILABLE                           | 26   |
| KEEPING YOUR ADDRESS UPDATED                   | 28   |

APP. #64

# YOUR MONTHLY BENEFIT

## Current Monthly Benefit

The net amount of your April 01, 2015 payment: $7,278.02

If the net amount of your annuity benefit ever changes for any reason, we will send you a Notice of Annuity Adjustment explaining the change.

| | |
|---|---|
| Current Gross Monthly Benefit | $8,041.00 |
| Less:/Plus: | |
| Health Insurance Premium | -462.17 |
| Federal Income Tax | -120.91 |
| State Income Tax | -75.00 |
| Medicare | 104.90 |
| Net Monthly Benefit | $7,278.02 |

Although your retirement benefit provides for survivor benefits, (see Survivor Benefits chapter), there is no separate monthly deductions for that coverage. We made the reduction to provide survivor benefits when we compute your basic annual annuity at retirement.

# SURVIVOR BENEFITS

In the event of your death, your survivors should call our Retirement Information Office at: (1-888) 767-6738.

You elected to provide survivor benefits as shown below.

We reduced your basic annual annuity at retirement to provide survivor benefits. There are no separate monthly deductions for providing survivor benefits.

## Surviving Spouse

Name: CHOO K

Current Gross Monthly Survivor Annuity: $4,899.00

If your marriage ends in divorce, reductions to provide a survivor annuity will end unless a court order requires you to (or within 2 years you elect to) provide for a former spouse annuity.

## Surviving Children

Any dependent, unmarried children under age 18 (or disabled children over 18 if disabled before age 18, or full-time students under age 22) may be eligible for a survivor annuity.

Cost-of-living increases to your annuity will increase the value of your survivor benefits.

APP. #65

# HEALTH INSURANCE BENEFITS

Your Federal Employees Health Benefits coverage:

Your Plan name: BLUE CROSS BLUE SHIELD Self-And-Family

Enrollment code: 105

Your cost each month: 462.17

Government share: 971.90

Total cost: $1,434.07

Effective date of current coverage: August 01, 2011

## Other Information

Self and Family

You are enrolled under a Self and Family plan. You may change to Self Only at any time. However, if you switch to Self Only, you can only change back to Self and Family under special circumstances such as: the birth or adoption of a child, a change in marital status, or during the annual open season held in the fall. Family members who lose coverage under your plan (i.e., a non-disabled child who reaches age 22 or a former spouse) may qualify for Temporary Continuation of Coverage (TCC) for up to 36 months. Under TCC, the covered individual must pay the full cost of coverage (individual and government share), plus an administrative fee of 2%. Contact us (see 'How To Contact OPM) for more information.

# HEALTH INSURANCE BENEFITS

Family members eligible for coverage under your self and family enrollment are your spouse (including a valid common law marriage) and children under age 26, including legally adopted children, recognized natural (born out of wedlock) children and stepchildren. Foster children are included if they live with you in a regular parent-child relationship. A child age 26 or over who is incapable of self-support because of a mental or physical disability that existed before age 26 is also eligible. A grandchild is not an eligible family member, unless the child qualifies as your foster child.

APP. # 66

# HEALTH INSURANCE BENEFITS

## Medicare

You are not required to sign up for Medicare. If you do, your FEHB premiums are not affected, but you may get better benefits.

For retirees, Medicare is the primary health benefits provider for almost all eligible individuals age 65 and over. If you are not currently enrolled in Medicare as your primary provider, you may wish to either contact your local Social Security office or call the toll-free number under "Other Useful Numbers" in the chapter on "How To Contact OPM" to obtain Medicare information. If you did not enroll in Medicare when you first became eligible, you may have to pay a penalty if you enroll later.

## Health Benefits Open Season

Once a year, typically in November/December, OPM sponsors a Health Benefits Open Season. During Open Season, you can change from one plan to another, from one option to another within the same plan, or from Self Only to Self and Family. We will send you Open Season information before the Open Season begins, at your correspondence address in our records as of September.

## Suspending Coverage

In most cases, if you cancel your health benefit coverage as an annuitant you can never reenroll. However, if you suspend your coverage because you are covered by a spouse's plan or a Medicare sponsored plan or Medicaid or a similar state medical assistance plan, you may reenroll if your coverage under your spouse's plan ends or you decide to switch back from a Medicare sponsored plan or Medicaid coverage.

---

# LIFE INSURANCE BENEFITS

Your life insurance coverage under the Federal Employees' Group Life Insurance Program, is based on your coverage at the time of separation, your final salary, elections at retirement and any subsequent changes you may have made.

Effective date of current coverage:      August 01, 2011

This table summarizes your current coverage, which is explained more fully below. Any Optional coverage or multiples of Option B or C you already canceled do not appear.

| Type | Summary Of FEGLI Coverage | | | |
|---|---|---|---|---|
| | Original Amount | Current Amount | Reduction Election | Final Amount |
| Basic | $32,000 | $26,240 | 75% | $8,000 |
| Option A (Standard Optional) | $10,000 | $8,200 | 75% | $2,500 |
| Option B (Additional Optional) | $0 | $0 | | $0 |
| Option C (Family Optional) | $0/ $0 | $0/ $0 | | $0/ $0 |

Basic Life Insurance (Basic) - Your Basic amount at retirement was $32,000. The Basic amount is generally the final salary at separation, rounded to the next thousand (if it was not an even thousand), plus $2,000. The minimum Basic amount is $10,000.

APP. #67

## YOUR BENEFIT COMPUTATION

Many factors go into the computation of your monthly benefit. The following information summarizes the major components of your benefit computation.

### Type Of Computation

You received the regular retirement computation.

### Average Salary

The "high-3" average salary in your case is: **$125,163.00**

Your benefit is based, in part, on the highest average salary during any three year period while you were employed. This three year period does not always occur in the last three years of employment. We have ensured that the average salary we computed is the highest average applicable to your salary history.

### Length Of Service

Your benefit is also based, in part, on the amount of Federal service you performed as an employee. Your retirement records showed the following:

Military service included in total:    08 Years, 07 Months
Sick leave included:    2212 Hours
Total Federal Service:    42 Years, 01 Months

We convert the sick leave hours to years, months, and days. Then we add that amount to your other Federal service. Only years and full months are used in the computation; partial months are not counted.

## YOUR BENEFIT COMPUTATION

### Other Significant Factors

We credited your payment of $13,722.55 to cover your military service performed after December 31, 1956. Your payment amount is included in the retirement contributions shown in the Contributions and Tax Information chapter. That payment will permit you to continue to receive credit for all of your military service after you become eligible for Social Security benefits.

APP. #68

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

IN THE MATTER OF CHOO KIM WASHBURN  *
FOR THE APPOINTMENT OF A GUARDIAN  *    FL No. 149491FL
OF THE PROPERTY  *

### ORDER FOR APPOINTMENT OF TEMPORARY GUARDIAN OF PROPERTY

Upon consideration of the foregoing Petition for Capacity Evaluation and Appointment of

Temporary and Permanent Guardian of the Property of Choo Kim Washburn filed herein, the

Court finds that, for the purposes of this Order, the Respondent is unable to manage her property

and affairs effectively due to mental disability which interferes with the effective and proper

administration of her property and financial affairs; that she has income and property which

should be preserved and applied for her sole benefit and protection; and that she is entitled to

funds on deposit in the Court Registry but that she has refused to accept such funds; and that a

temporary guardian of property is necessary to assist her in securing and maintaining a suitable

residence, as she must vacate the premises in which she currently resides.   It is, therefore, by the

Circuit Court for Montgomery County, Maryland, this 22nd day of _____ Nov ____, 2017, by

the Circuit Court for Montgomery County, Maryland,

ORDERED that   Robert McCarthy   4405 East West High

Suite 201, Bethesda, MD   phone (301) 654-3730

be and hereby is appointed temporary guardian of the property of Respondent, with all the rights,

duties and powers set forth in §13-203 of the Estates and Trusts Article, Maryland Code

Annotated, including the specific authority to: preserve and apply Respondent's income and

APP. #69

assets for her sole benefit and protection; to close any accounts in any financial institutions and/or re-title such accounts in his/her name as guardian; and it is further

ORDERED, that the issue of bond be deferred until the final hearing; and it is further

ORDERED, that the temporary guardian is hereby authorized and directed to record this Order for Appointment of Temporary Guardian of Property among the Land Records of Montgomery County, Maryland, in order to preserve and safeguard Respondent's interest in real property if the temporary guardian determines that such action is necessary; and it is further

ORDERED, that the temporary guardian be provided with five certified copies of this Order; and it is further

ORDERED, that this Order shall remain in effect until a ruling on the Petition for Appointment of a Guardian.

The Honorable Michael D. Mason
JUDGE, Circuit Court for
Montgomery County, Maryland

APP. # 70

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | | |
|---|---|---|
| IN THE MATTER OF CHOO WASHBURN | * | |
| FOR THE APPOINTMENT OF A GUARDIAN | * | FL No. 149491 |
| OF THE PROPERTY | * | |

### ORDER FOR APPOINTMENT OF GUARDIAN OF PROPERTY

Upon consideration of the foregoing Amended Petition for Appointment of Guardian of the Property of Respondent, Choo Washburn, filed herein, and upon full hearing in this matter on July 2, 2018, before the undersigned Judge of this Court, this Court finds, by a preponderance of the evidence, that the Respondent is unable to manage her property and affairs effectively due to mental disability, and has income and property which should be preserved and applied for her sole benefit and protection. It is, therefore, this _12th_ day of July, 2018, by the Circuit Court for Montgomery County, Maryland,

ORDERED that Robert McCarthy, Esquire, 4405 East West Highway, Suite 201, Bethesda, MD 20814, 301-654-3730, be and hereby is appointed guardian of the property of Respondent, with all the rights, duties and powers set forth in §§13-213 and 15-102 of the Estates and Trusts Article, Maryland Code Annotated; and it is further

ORDERED, that the requirement to post bond be and is hereby waived; and it is further

ORDERED, that the guardian be provided with three certified copies of this Order.

_____
The Honorable Michael D. Mason
JUDGE, Circuit Court for
Montgomery County, Maryland

**ENTERED**

JUL 17 2018

Clerk of the Circuit Court
Montgomery County, Md.

APP. # 71

**Choo K Washburn**
**November 22, 2019 - November 21, 2020**

Disbursements

Wells Fargo Account # 7102844854

| Date | Payee | Purpose | Amount |
|------|-------|---------|--------|
| 11/22/19 | Choo K Washburn | Funds for ward | 300.00 |
| 11/26/19 | American Self Storage | Unit payment | 228.50 |
| 11/26/19 | Choo K Washburn | Funds for ward | 300.00 |
| 12/5/19 | United Healthcare Insurance Company | Insurance | 224.04 |
| 12/5/19 | Choo K Washburn | Funds for ward | 300.00 |
| 12/12/19 | Choo K Washburn | Funds for ward | 300.00 |
| 12/12/19 | Seabury Care Management | Medical | 1,686.67 |
| 12/19/19 | Choo K Washburn | Voided - Funds for ward | 0.00 |
| 12/26/19 | Choo K Washburn | Voided - Funds for ward | 0.00 |
| 12/26/19 | Choo K Washburn | Funds for ward | 300.00 |
| 12/27/19 | Clerk of the Circuit Court | Filing fee | 40.00 |
| 12/27/19 | Dana Evans, CPA, LLC | Accounting fee | 1,335.00 |
| 12/27/19 | Robert M. McCarthy | Commissions | 9,314.01 |
| 1/3/20 | Choo K Washburn | Funds for ward | 300.00 |
| 1/3/20 | Choo K Washburn | Funds for ward | 300.00 |
| 1/6/20 | Wells Fargo | Stop payment fee | 31.00 |
| 1/9/20 | American Self Storage | Unit payment | 228.50 |
| 1/9/20 | Choo K Washburn | Funds for ward | 300.00 |
| 1/9/20 | United Healthcare Insurance | Insurance | 224.04 |
| 1/14/20 | Choo K Washburn | Funds for ward | 300.00 |
| 1/14/20 | United Healthcare Insurance | Insurance | 224.04 |
| 1/23/20 | Choo K Washburn | Funds for ward | 300.00 |
| 1/30/20 | Choo K Washburn | Funds for ward | 300.00 |
| 2/6/20 | Seabury Care Management | Medical | 3,190.00 |
| 2/6/20 | American Self Storage | Unit payment | 228.50 |
| 2/6/20 | United Healthcare Insurance | Insurance | 224.04 |
| 2/10/20 | Choo K Washburn | Funds for ward | 600.00 |
| 2/20/20 | Choo K Washburn | Funds for ward | 300.00 |
| 2/27/20 | Choo K Washburn | Funds for ward | 300.00 |
| 2/27/20 | American Self Storage | Unit payment | 228.50 |
| 3/5/20 | BlueCross BlueShield | Insurance | 146.24 |
| 3/5/20 | United Healthcare Insurance Company | Insurance | 224.04 |
| 3/5/20 | Choo K Washburn | Funds for ward | 300.00 |
| 3/12/20 | Seabury Care Management | Medical | 1,780.00 |
| 3/12/20 | Choo K Washburn | Funds for ward | 300.00 |
| 3/16/20 | Dana Evans, CPA, LLC | Tax preparation | 375.00 |
| 3/20/20 | Choo K Washburn | Funds for ward | 300.00 |
| 3/23/20 | Choo K Washburn | Funds for ward | 300.00 |
| 3/23/20 | American Self Storage | Unit payment | 228.50 |
| 4/3/20 | Choo K Washburn | Funds for ward | 300.00 |
| 4/7/20 | United Healthcare Insurance | Insurance | 224.04 |
| 4/7/20 | Choo K Washburn | Funds for ward | 300.00 |
| 4/15/20 | Choo K Washburn | Funds for ward | 300.00 |
| 4/22/20 | Choo K Washburn | Funds for ward | 300.00 |
| 4/24/20 | Seabury Care Management | Medical | 3,201.67 |
| 4/24/20 | American Self Storage | Unit payment | 228.50 |
| 4/29/20 | Choo K Washburn | Funds for ward | 300.00 |
| 5/6/20 | Choo K Washburn | Funds for ward | 300.00 |
| 5/13/20 | Choo K Washburn | Funds for ward | 300.00 |

APP. # 72

| | Date | Payee | Description | Amount |
|---|---|---|---|---|
| X | 5/20/20 | United Healthcare Insurance Company | Insurance | 224.04 |
| | 5/20/20 | Choo K Washburn | Funds for ward | 300.00 |
| | 5/26/20 | Choo K Washburn | Funds for ward | 300.00 |
| | 5/26/20 | American Self Storage | Unit payment | 228.50 |
| | 6/2/20 | Choo K Washburn | Funds for ward | 300.00 |
| | 6/9/20 | Choo K Washburn | Funds for ward | 300.00 |
| | 6/16/20 | Choo K Washburn | Funds for ward | 300.00 |
| | 6/23/20 | Choo K Washburn | Funds for ward | 300.00 |
| X | 6/23/20 | United Healthcare Insurance Company | Insurance | 224.04 |
| | 6/23/20 | Seabury Care Management | Medical | 1,546.67 |
| | 6/25/20 | American Self Storage | Unit payment | 228.50 |
| | 6/30/20 | Choo K Washburn | Funds for ward | 300.00 |
| | 7/7/20 | Choo K Washburn | Funds for ward | 300.00 |
| | 7/14/20 | Choo K Washburn | Funds for ward | 300.00 |
| → | 7/14/20 | United States Treasury | 2019 Federal Tax Due | 1,717.00 |
| → | 7/14/20 | Comptroller of MD | 2019 MD State Tax Due | 259.00 |
| | 7/21/20 | Choo K Washburn | Funds for ward | 300.00 |
| X | 7/23/20 | United Healthcare Insurance Company | Insurance | 224.04 |
| | 7/23/20 | American Self Storage | Unit payment | 228.50 |
| X | 7/23/20 | Seabury Care Management | Medical | 1,546.67 |
| | 7/28/20 | Choo K Washburn | Funds for ward | 300.00 |
| | 8/3/20 | Choo K Washburn | Funds for ward | 300.00 |
| | 8/10/20 | Choo K Washburn | Funds for ward | 300.00 |
| | 8/17/20 | Choo K Washburn | Funds for ward | 300.00 |
| | 8/19/20 | Choo K Washburn | Funds for ward | 100.00 |
| X | 8/21/20 | United Healthcare Insurance Company | Insurance | 224.04 |
| | 8/21/20 | American Self Storage | Unit payment | 228.50 |
| X | 8/21/20 | Seabury Care Management | Medical | 1,783.33 |
| | 8/24/20 | Choo K Washburn | Voided – funds for ward | 0.00 |
| | 8/28/20 | Wells Fargo | Stop payment fee | 31.00 |
| | 8/28/20 | Choo K Washburn | Funds for ward | 200.00 |
| | 8/31/20 | Choo K Washburn | Funds for ward | 200.00 |
| | 9/10/20 | Choo K Washburn | Funds for ward | 200.00 |
| → | 9/10/20 | Oppenheimer, Fleischer & Quiggle, P.C. | Legal fee | 7,578.72 → |
| | 9/14/20 | Choo K Washburn | Funds for ward | 200.00 |
| | 9/21/20 | Choo K Washburn | Funds for ward | 200.00 |
| X | 9/23/20 | United Healthcare Insurance Company | Insurance | 244.04 |
| X | 9/23/20 | Seabury Care Management | Medical | 2,448.87 |
| | 9/23/20 | American Self Storage | Unit payment | 228.50 |
| | 9/28/20 | Choo K Washburn | Funds for ward | 200.00 |
| | 10/5/20 | Choo K Washburn | Funds for ward | 200.00 |
| | 10/12/20 | Choo K Washburn | Funds for ward | 200.00 |
| | 10/19/20 | Choo K Washburn | Funds for ward | 200.00 |
| | 10/22/20 | American Self Storage | Unit payment | 228.50 |
| X | 10/22/20 | United Healthcare Insurance Company | Insurance | 244.04 |
| X | 10/22/20 | Seabury Care Management | Medical | 2,001.88 |
| | 10/26/20 | Choo K Washburn | Funds for ward | 200.00 |
| | 11/2/20 | Choo K Washburn | Funds for ward | 200.00 |
| | 11/9/20 | Choo K Washburn | Funds for ward | 200.00 |
| X | 11/13/20 | Seabury Care Management | Medical | 2,088.31 |
| | 11/16/20 | Choo K Washburn | Voided – Funds for ward | 0.00 |
| | 11/16/20 | Choo K Washburn | Funds for ward | 150.00 |
| X | 11/18/20 | United Healthcare Insurance Company | Insurance | 244.40 |
| | 11/18/20 | American Self Storage | Unit payment | 228.50 |
| | | | | 62,694.42 |

APP. #73

#1752

## Law Office of Robert McCarthy

| | |
|---|---|
| **From:** | Laura Fenves <lfenves@seaburyresources.org> |
| **Sent:** | Friday, October 16, 2020 10:17 AM |
| **To:** | Law Office of Robert McCarthy; Keyla Santoyo |
| **Cc:** | Monica Micklos |
| **Subject:** | Seabury Care Management - C. Washburn Aug invoice |
| **Attachments:** | Washburn, C. Aug invoice .pdf |

Good morning,

Attached is the August invoice for Ms. Washburn. Thank you for your patience.

Please let us know if you have any questions.

Laura

--
**Laura Fenves**
Life Enrichment Specialist/Office Manager, Care Management Program
**Seabury Resources for Aging**
4201 Butterworth Place, NW, Lower Level
Washington, DC 20016
P: 202-364-7388 F: 202-364-3044
lfenves@seaburyresources.org
www.seaburycaremanagement.org

*Confidentiality notice: the information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution, or copying of this email is strictly prohibited. If you have received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachments for any purpose, not disclose all or any part of the contents to any other person.*

Through housing, nutrition, transportation and social services, Seabury Resources for Aging promotes healthy and active aging daily. Active aging takes many forms:staying connected to family and community; participating in classes at a local nutrition site; maintaining independence through transportation services.

## Help with Seabury's front-line efforts during the ongoing COVID-19 crisis! Click here to donate today!



APP. # 74

1

Pd #1243

**Law Office of Robert McCarthy**

| | |
|---|---|
| **From:** | Laura Fenves <lfenves@seaburyresources.org> |
| **Sent:** | Tuesday, December 10, 2019 1:25 PM |
| **To:** | Law Office of Robert McCarthy |
| **Cc:** | Monica Micklos |
| **Subject:** | Seabury Care Management invoice- C. Washburn Oct invoice |
| **Attachments:** | Washburn, C. Oct invoice.pdf |

Hello,

Attached is the October invoice for Ms. Washburn's care management services. Please let me know if you have any questions.

Thank you,
Laura


--
**Laura Fenves**
**Life Enrichment Specialist/Office Manager, Care Management Program**
**Seabury Resources for Aging**
**4201 Butterworth Place, NW, Lower Level**
**Washington, DC 20016**
**P: 202-364-7388 F: 202-364-3044**
lfenves@seaburyresources.org
www.seaburycaremanagement.org


*Confidentiality notice: the information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution, or copying of this email is strictly prohibited. If you have received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachments for any purpose, not disclose all or any part of the contents to any other person.*

Through housing, nutrition, transportation and social services, Seabury Resources for Aging promotes healthy and active aging daily. Active aging take may forms:staying connected to family and community; participating in classes at a local nutrition site; maintaining independence through transportation services.


Through a generous grant made by The Morris and Gwendolyn Cafritz Foundation your contribution will be matched - double your impact and make your gift today.



APP. # 75



Seabury  Care Management

**Make Payment to:**
Seabury Resources for Aging
6031 Kansas Ave, NW
Washington, DC 20011
(202) 364-7388

1

**Billed from 10/1/2019 to 10/31/2019**

⟹ **Client Invoice Summary** ⟸

**Client:** Kim Choo Washburn

**Invoice #: Inv21238**

**Bill To:** Robert M. McCarthy
P.O. Box 151756
Chevy Chase, MD 20825

**Copy Bill To:**

|  |  |
|---|---|
| **Total Time** | 1:20:00 |
| **Full Fee Billing @ $140.00 Total** | $186.67 |
| **Full Fee Client Payment @ $140.00 Total** | $186.67 |
| **Subsidy** | |
| **Past Due** | |
| **Late Fee** | |
| **Misc. Billing** | $1500.00 |
| **Credit Used** | |
| **Credit Remaining** | |
| **Total Amount Due** | $1686.67 |

**Total Balance Due 30 Days Upon Receipt**

APP. #76

Seabury ⚘ Care Management

**Make Payment to:**
**Seabury Resources for Aging**
**6031 Kansas Ave, NW**
**Washington, DC 20011**
**(202) 364-7388**

Billed from 10/1/2019 to 10/31/2019

→    **Client Invoice Summary**    ←

2

---

**Client:** Kim Choo Washburn

**Invoice #: Inv21238**

---

**Care Manager** Monica Micklos

**Date**   10/1/2019

**Time**   1:20

**Comments**   Visit to hotel to secure hotel room for client for October. Met with hotel manager. No changes with client. She continues to have no reported concerns. Client comes to the desk for her mail, and is dressed appropriately. She at times gets a little agitated about how long it is taking for a cab to pick her up. While hotel was sold, there is still no date for closing. They have committed to provide at least 90 day notice. Provided payment for month of October. Requested manager bring mail to client and try to check on condition of her room.

**Services for 10/1/2019 to 10/31/2019.**

APP. # 77

#1254
1

**Seabury**  **Care Management**

**Make Payment to:**
**Seabury Resources for Aging**
6031 Kansas Ave, NW
Washington, DC 20011
(202) 364-7388

**Billed from 12/1/2019 to 12/31/2019**

→ **Client Invoice Summary** ←

**Client:** Kim Choo Washbum

**Invoice #: Inv21479**

**Bill To:** Robert M. McCarthy
P.O. Box 151756
Chevy Chase, MD 20825

**Copy Bill To:**

| | |
|---|---|
| **Total Time** | 0:30:00 |
| **Full Fee Billing @ $140.00 Total** | $70.00 |
| **Full Fee Client Payment @ $140.00 Total** | $70.00 |
| **Subsidy** | |
| **Past Due** | $1570.00 |
| **Late Fee** | |
| **Misc. Billing** | $1550.00 |
| **Credit Used** | |
| **Credit Remaining** | |
| **Total Amount Due** | $3190.00 |

**Total Balance Due 30 Days Upon Receipt**

APP. # 78

Seabury 🌸 Care Management

**2**

Make Payment to:
Seabury Resources for Aging
6031 Kansas Ave, NW
Washington, DC 20011
(202) 364-7388

Billed from 12/1/2019 to 12/31/2019

→ **Client Invoice Summary** ←

**Client:** Kim Choo Washburn

**Invoice #:** Inv21479

| Care Manager | Monica Micklos | Date | 12/2/2019 |
|---|---|---|---|
| | | Time | 0:30 |

**Comments** Contact with manager of hotel to obtain update on client and arrange payment for the month of December. Completed authorization and submitted to hotel.

Services for 12/1/2019 to 12/31/2019.

APP. # 79

Seabury ✳ Care Management

**Make Payment to:**
Seabury Resources for Aging
6031 Kansas Ave, NW
Washington, DC 20011
(202) 364-7388

**Billed from 1/1/2020 to 1/31/2020**

→ **Client Invoice Summary** ←

Pa #1244

**Client:** Kim Choo Washburn

**Invoice #: Inv21669**

**Bill To:**  Robert M. McCarthy
P.O. Box 151756
Chevy Chase, MD 20825

**Copy Bill To:**

| | |
|---|---|
| **Total Time** | 2:00:00 |
| **Full Fee Billing @ $140.00 Total** | $280.00 |
| **Full Fee Client Payment @ $140.00 Total** | $280.00 |
| **Subsidy** | |
| **Past Due** | |
| **Late Fee** | |
| **Misc. Billing** | $1500.00 |
| **Credit Used** | |
| **Credit Remaining** | |
| **Total Amount Due** | $1780.00 |

**Total Balance Due 30 Days Upon Receipt**

APP. # 80

Seabury ❄ Care Management

**Make Payment to:**
Seabury Resources for Aging
6031 Kansas Ave, NW
Washington, DC 20011
(202) 364-7388

**Billed from 1/1/2020 to 1/31/2020**

→ **Client Invoice Summary** ←

2

---

**Client:** Kim Choo Washburn                                    **Invoice #: Inv21669**

---

**Care Manager** Monica Micklos              **Date** 1/2/2020
                                             **Time** 0:30

**Comments** Contact with manager of hotel to obtain update on client and confirm payment processed for the month of January. Discussed status of the hotel and time frame for closing.  Hotel is now scheduled to remain open through 2020.  No reported changes with client .

**Care Manager** Monica Micklos              **Date** 1/31/2020
                                             **Time** 1:30

**Comments** Home Visit / Meeting with hotel manager:
Went to hotel where client is staying to obtain an update on client and  provide payment for the month of February.  Hotel manager has contact with client when she calls or comes to the desk to collect her mail, or to request a taxi.   She does not want hotel staff in her room, but does put out garbage to be collected.   She has been offered to move into other rooms of the hotel, but client prefers to remain were she is.  Reviewed cost and provided payment for February stay.  Hotel will no likely remain open for most of 2020.

**Services for 1/1/2020 to 1/31/2020.**

App. # 81

**Seabury** ✶ **Care Management**

1

**Make Payment to:**
**Seabury Resources for Aging**
**6031 Kansas Ave, NW**
**Washington, DC 20011**
**(202) 364-7388**

**Billed from 2/1/2020 to 2/29/2020**

→ **Client Invoice Summary** ←

**Client:** Kim Choo Washburn

**Invoice #: Inv21768**

**Bill To:** Robert M. McCarthy
P.O. Box 151756
Chevy Chase, MD 20825

**Copy Bill To:**

| | |
|---|---|
| **Total Time** | 0:35:00 |
| **Full Fee Billing @ $140.00 Total** | $81.67 |
| **Full Fee Client Payment @ $140.00 Total** | $81.67 |
| **Subsidy** | |
| **Past Due** | |
| **Late Fee** | |
| *See other.* – **Misc. Billing** | $1550.00 |
| **Credit Used** | |
| **Credit Remaining** | |
| **Total Amount Due** | $1631.67 |

**Total Balance Due 30 Days Upon Receipt**

*APP. #82*

Seabury  Care Management

**Billed from 2/1/2020 to 2/29/2020**

2

**Make Payment to:**
**Seabury Resources for Aging**
**6031 Kansas Ave, NW**
**Washington, DC 20011**
**(202) 364-7388**

⟶ **Client Invoice Summary** ⟵

**Client:  Kim Choo Washbum**

**Invoice #: Inv21768**

| Care Manager | Monica Micklos | Date | 2/5/2020 |
|---|---|---|---|
| | | Time | 0:05 |

**Comments**   Contacted General Manager Brian at Wolftrap hotel to follow-up regarding questions on the client and car she has been driving.  Client came in to see him on Monday, continues to drive small blue Nissan Sentra (same as last week).  She was in good spirits, collected her mail and supplies from him.  He does not know what state the plates are from and will seek to obtain that information.  Contacted Liz and Mr. McCarthy's office to alert them to this information.

| Care Manager | Monica Micklos | Date | 2/28/2020 |
|---|---|---|---|
| | | Time | 0:30 |

**Comments**   Contacted general manager regarding client and facilitated payment for hotel for the month of March. Completed forms and scanned.  Obtained update.

**Services for 2/1/2020 to 2/29/2020.**

APP. # 83

Seabury  Care Management

1

**Make Payment to:**
Seabury Resources for Aging
6031 Kansas Ave, NW
Washington, DC 20011
(202) 364-7388

**Billed from 3/1/2020 to 3/31/2020**

**Client Invoice Summary**

**Client:** Kim Choo Washburn

**Invoice #: Inv21956**

**Bill To:**   Robert M. McCarthy
P.O. Box 151756
Chevy Chase, MD 20825

**Copy Bill To:**

|  |  |  |
|---|---|---|
| **Total Time** | 0:30:00 | |
| **Full Fee Billing @ $140.00 Total** | $70.00 | |
| **Full Fee Client Payment @ $140.00 Total** | $70.00 — *March* |
| **Subsidy** | | |
| *Feb. →* **Past Due** | $1631.67 | |
| **Late Fee** | | |
| *see attach* — **Misc. Billing** | $1500.00 | |
| **Credit Used** | | |
| **Credit Remaining** | | |
| **Total Amount Due** | $3201.67 — *total Due.* |

**Total Balance Due 30 Days Upon Receipt**

*APP. # 84*

Seabury Care Management

**Make Payment to:**
**Seabury Resources for Aging**
**6031 Kansas Ave, NW**
**Washington, DC 20011**
**(202) 364-7388**

**Billed from 3/1/2020 to 3/31/2020**

→ **Client Invoice Summary** ←

2

**Client:  Kim Choo Washburn**

**Invoice #: Inv21956**

**Care Manager** Monica Micklos

**Date**   3/31/2020
**Time**   0:30

**Comments**   Communication with hotel manager regarding client. Manager continued to see client regularly as she comes to the front desk for her mail.  She has presented as stable with no new concerns.  Requested hotel manager inform CM of any change in behavior or if client appears to not feel well.  Obtained, completed and submitted forms and authorization for payment for client's hotel room for the month of April.

**Services for 3/1/2020 to 3/31/2020.**

APP. # 85

#1292
1

Seabury ✿ Care Management

**Make Payment to:**
**Seabury Resources for Aging**
**6031 Kansas Ave, NW**
**Washington, DC 20011**
**(202) 364-7388**

**Billed from 4/1/2020 to 4/30/2020**

→ **Client Invoice Summary** ←

**Client:** Kim Choo Washburn

**Invoice #: Inv22021**

**Bill To:**  Robert M. McCarthy          **Copy Bill To:**
P.O. Box 151756
Chevy Chase, MD 20825

| | |
|---|---|
| **Total Time** | 0:20:00 |
| **Full Fee Billing @ $140.00 Total** | $46.67 |
| **Full Fee Client Payment @ $140.00 Total** | $46.67 |
| **Subsidy** | |
| **Past Due** | |
| **Late Fee** | |
| **Misc. Billing** | $1500.00 |
| **Credit Used** | |
| **Credit Remaining** | |
| **Total Amount Due** | $1546.67 |

**Total Balance Due 30 Days Upon Receipt**

App. # 86

#1292

Seabury ✱ Care Management

2

**Make Payment to:**
**Seabury Resources for Aging**
**6031 Kansas Ave, NW**
**Washington, DC 20011**
**(202) 364-7388**

**Billed from 4/1/2020 to 4/30/2020**

→ **Client Invoice Summary** ←

**Client:** Kim Choo Washburn

**Invoice #:** Inv22021

| | | | |
|---|---|---|---|
| Care Manager | Monica Micklos | Date | 4/30/2020 |
| | | Time | 0:20 |

**Comments**  Contacted hotel general manager regarding client and reviewed payment for hotel for the month of May.  Obtained update - no new issues identified.

Services for 4/1/2020 to 4/30/2020.

APP. # 87

#1302

**Seabury** ✻ **Care Management**

1

**Make Payment to:**
**Seabury Resources for Aging**
**6031 Kansas Ave, NW**
**Washington, DC 20011**
**(202) 364-7388**

**Billed from 5/1/2020 to 5/31/2020**

→ **Client Invoice Summary** ←

**Client:** Kim Choo Washburn

**Invoice #: Inv22223**

**Bill To:** Robert M. McCarthy
P.O. Box 151756
Chevy Chase, MD 20825

**Copy Bill To:**

| | |
|---|---|
| **Total Time** | 0:20:00 |
| **Full Fee Billing @ $140.00 Total** | $46.67 |
| **Full Fee Client Payment @ $140.00 Total** | $46.67 |
| **Subsidy** | |
| **Past Due** | |
| **Late Fee** | |
| **Misc. Billing** | $1500.00 |
| **Credit Used** | |
| **Credit Remaining** | |
| **Total Amount Due** | $1546.67 |

**Total Balance Due 30 Days Upon Receipt**

APP. #88

#1302

**Seabury** Care Management

2

**Billed from 5/1/2020 to 5/31/2020**

**Make Payment to:**
**Seabury Resources for Aging**
**6031 Kansas Ave, NW**
**Washington, DC 20011**
**(202) 364-7388**

→ **Client Invoice Summary** ←

**Client:** Kim Choo Washburn                                    **Invoice #:** Inv22223

**Care Manager** Monica Micklos          **Date** 5/29/2020
                                        **Time** 0:20

**Comments** Communication with hotel GM. Obtained update regarding client. She was no longer driving the car. Client appears healthy per GM. Continues to get her own food and put trash bags out. No indication of issues. Unknown if client is wearing mask or taking COVID precautions but lifestyle of isolating herself provides social distancing.   Reviewed information for billing to cover hotel for month of June which hotel will process after the weekend.

**Services for 5/1/2020 to 5/31/2020.**

APP. #89

**Seabury** ✳ **Care Management**

1 #1310

**Make Payment to:**
**Seabury Resources for Aging**
6031 Kansas Ave, NW
Washington, DC 20011
(202) 364-7388

**Billed from 6/1/2020 to 6/30/2020**

→ **Client Invoice Summary** ←

**Client:** Kim Choo Washburn

**Invoice #: Inv22353**

**Bill To:**   Robert M. McCarthy
P.O. Box 151756
Chevy Chase, MD 20825

**Copy Bill To:**

| | |
|---|---|
| **Total Time** | 1:40:00 |
| **Full Fee Billing @ $140.00 Total** | $233.33 |
| **Full Fee Client Payment @ $140.00 Total** | $233.33 |
| **Subsidy** | |
| ~~**Past Due**~~ | $1546.67 |
| **Late Fee** | |
| **Misc. Billing** | $1550.00 |
| **Credit Used** | |
| **Credit Remaining** | |
| **Total Amount Due** | $3330.00 |

*New invoice*

**Total Balance Due 30 Days Upon Receipt**

*Total for June*

$6,783.33

APP. # 90

Seabury ✳ Care Management

**Billed from 6/1/2020 to 6/30/2020**

2   #131C

**Make Payment to:**
**Seabury Resources for Aging**
**6031 Kansas Ave, NW**
**Washington, DC 20011**
**(202) 364-7388**

→ **Client Invoice Summary** ←

**Client:** Kim Choo Washburn

**Invoice #: Inv22353**

| | |
|---|---|
| **Care Manager** Monica Micklos | **Date** 6/23/2020 |
| | **Time** 0:10 |

**Comments** Contacted by general manager at Wolf Trapp Hotel reporting the hotel would be closing at the end of August. Received and reviewed letter with this information.

| | |
|---|---|
| **Care Manager** Monica Micklos | **Date** 6/30/2020 |
| | **Time** 1:30 |

**Comments** Multiple communications regarding client:
 1. Contacted Conservator to let him know the hotel client staying in would be closing at the end of August. Provided copy of the letter.
 2. Contacted the General Manager at the hotel. Reviewed and provided information needed to cover cost of hotel for client for month of July. Discussed hotel closing. GM will inform client. Obtained suggestions from GM regarding similar hotels client may consider.
 3. Researched low cost hotels in the area including Extended Stay.

**Services for 6/1/2020 to 6/30/2020.**

APP. # 91

1   #1319

**Seabury** Care Management

Make Payment to:
Seabury Resources for Aging
6031 Kansas Ave, NW
Washington, DC 20011
(202) 364-7388

Billed from 7/1/2020 to 7/31/2020

→ **Client Invoice Summary** ←

Client: Kim Choo Washburn

Invoice #: Inv22410

Bill To:   Robert M. McCarthy
P.O. Box 151756
Chevy Chase, MD 20825

Copy Bill To:

| | |
|---|---|
| Total Time | 3:00:00 |
| Full Fee Billing @ $140.00 Total | $420.00 |
| Full Fee Client Payment @ $140.00 Total | $420.00 |
| Subsidy | |
| Past Due | |
| Late Fee | |
| Misc. Billing | $2028.87 |
| Credit Used | |
| Credit Remaining | |
| Total Amount Due | $2448.87 |

**Total Balance Due 30 Days Upon Receipt**

App. # 92

Seabury  Care Management

**Make Payment to:**
**Seabury Resources for Aging**
6031 Kansas Ave, NW
Washington, DC 20011
(202) 364-7388

Billed from 7/1/2020 to 7/31/2020

→ **Client Invoice Summary** ←

2

---

**Client:** Kim Choo Washburn

**Invoice #: Inv22410**

| Care Manager | Monica Micklos | Date | 7/16/2020 |
|---|---|---|---|
| | | Time | 0:30 |

**Comments** CM made calls researching available motels for client in Va.

| Care Manager | Monica Micklos | Date | 7/17/2020 |
|---|---|---|---|
| | | Time | 2:00 |

**Comments** CM made calls and drove to area where group of hotels that might provide weekly rates. CM visited each to view prospect and talk to managers.

| Care Manager | Monica Micklos | Date | 7/20/2020 |
|---|---|---|---|
| | | Time | 0:20 |

**Comments** CM composed list of motels in document.

| Care Manager | Monica Micklos | Date | 7/31/2020 |
|---|---|---|---|
| | | Time | 0:10 |

**Comments** Communication with hotel manager regarding client. Agreed to cover cost of motel weekly during month of August until client leaves as hotel is closing at end of the month. Provided manager a typed list of motels suggestions for him to give client.

**Services for 7/1/2020 to 7/31/2020.**

APP. #93

**Seabury** ✿ **Care Management**

**1**

**Make Payment to:**
Seabury Resources for Aging
6031 Kansas Ave, NW
Washington, DC 20011
(202) 364-7388

**Billed from 8/1/2020 to 8/31/2020**

→ **Client Invoice Summary** ←

**Client:** Kim Choo Washburn

**Invoice #: Inv22612**

**Bill To:**  Robert M. McCarthy
P.O. Box 151756
Chevy Chase, MD 20825

**Copy Bill To:**

| | |
|---|---|
| **Total Time** | 2:30:00 |
| **Full Fee Billing @ $140.00 Total** | $350.00 |
| **Full Fee Client Payment @ $140.00 Total** | $350.00 |
| **Subsidy** | |
| **Past Due** | |
| **Late Fee** | |
| **Misc. Billing** | $1651.88 |
| **Credit Used** | |
| **Credit Remaining** | |
| **Total Amount Due** | $2001.88 |

**Total Balance Due 30 Days Upon Receipt**

APP. # 94

Seabury ✿ Care Management

**Make Payment to:**
Seabury Resources for Aging
6031 Kansas Ave, NW
Washington, DC 20011
(202) 364-7388

**Billed from 8/1/2020 to 8/31/2020**

→ **Client Invoice Summary** ←

3

**Client:** Kim Choo Washburn

**Invoice #:** Inv22612

discount.

3. Spoke with guardian to provide update. No rental car was possible given client's history of not returning cars. Can offer help with Uber. Client funds are limited. Reducing costs will help to stretch funds.

4. Spoke with client later in the day. She already picked up her personal items from the old hotel. Informed client her spending money has been mailed to old hotel. Discussed again the importance of saving money and provided option of Extended Stay Hotel in Gaithersburg which was even less money per day. Client does not want to consider any other location even if that means she would use more of her spending money.

**Care Manager** Monica Micklos

**Date** 8/21/2020

**Time** 0:05

**Comments** Spoke with manager of Wolf Trapp Hotel who confirmed client checked out of the hotel and moved her belongings. He will continue to collect her mail and understood she was expecting a check. Requested manager inform CM when check arrives.

**Care Manager** Monica Micklos

**Date** 8/26/2020

**Time** 0:15

**Comments** Multiple communications regarding client:

Spoke with manager of the Wolf Trap hotel who reported that client was there today and received the check sent by guardian of property. Communication with new hotel, Extended Stay of America, to request copy of receipt from last week's payment and discussed rate with manager. Reviewed information however manager not available and was to call this care manager tomorrow prior to the next week payment being provided. Confirmed mailing address and hotel room number for client to receive mail at the hotel. Communication with guardian office regarding clients new mailing address and confirmation client received check mailed to previous hotel.

**Care Manager** Monica Micklos

**Date** 8/31/2020

**Time** 0:10

**Comments** Communications with manager of Extended Stay Hotel. Received and reviewed copy of the receipts from the last two weeks.

Services for 8/1/2020 to 8/31/2020.

APP. # 95

#155

**Seabury** ✱ **Care Management**

Make Payment to:
Seabury Resources for Aging
4201 Butterworth Place, NW
Lower Level
Washington, DC 20016
(202) 364-7388

Billed from 9/1/2020 to 9/30/2020

→ **Client Invoice Summary** ←

1

| Client: Kim Choo Washbum | Invoice #: Inv22720 |
|---|---|

**Bill To:** Robert M. McCarthy
P.O. Box 151756
Chevy Chase, MD 20825

**Copy Bill To:**

| | |
|---|---:|
| Total Time | 0:40:00 |
| Full Fee Billing @ $140.00 Total | $93.33 |
| Full Fee Client Payment @ $140.00 Total | $93.33 |
| Subsidy | |
| Past Due | |
| Late Fee | |
| Misc. Billing | $1994.98 |
| Credit Used | |
| Credit Remaining | |
| Total Amount Due | $2088.31 |

**Total Balance Due 30 Days Upon Receipt**

NOTE NEW PAYMENT ADDRESS
EFFECTIVE IMMEDIATELY

PLEASE SEND CARE MANAGEMENT PAYMENTS TO:

Seabury Care Management
4201 Butterworth Place, NW
Lower Level
Washington, DC 20016

THANK YOU!   *APP. # 96*

Seabury ✦ Care Management

**Billed from 9/1/2020 to 9/30/2020**

2

**Make Payment to:**
Seabury Resources for Aging
4201 Butterworth Place, NW
Lower Level
Washington, DC 20016
(202) 364-7388

→ **Client Invoice Summary** ←

---

**Client:** Kim Choo Washburn                                **Invoice #: Inv22720**

**Care Manager** Monica Micklos          **Date** 9/3/2020
                                         **Time** 0:10

**Comments** Communication with hotel manager regarding client. There have been no changes.  Provided
payment for next 7 nights.

**Care Manager** Monica Micklos          **Date** 9/11/2020
                                         **Time** 0:15

**Comments** Received a call from hotel manager who expressed concern regarding client expressing thoughts that
someone wants to harm her.  Also that client was not using the AC correctly and therefore thinks it's
broken.  Provided advice and suggestions on how to respond.  Authorized another week payment for
hotel.  Confirmed client was getting her mail.

**Care Manager** Monica Micklos          **Date** 9/21/2020
                                         **Time** 0:15

**Comments** Multiple communications regarding client:
Contact with hotel manager. Manager provided update that due to client mis-use of the thermostat,
her air conditioning unit was no longer working. They called in the repair company but the client would
not allow them into her hotel room.  The hotel offered to move client to another hotel room with a
working air conditioning which she refused. Informed manager understanding of the situation and that
the client was making her own decision regarding her desire to stay in that particular room even
without the AC. Provided payment - discussed the client receiving small credit due once she has
stayed 30 days.  Contact with guardian office to provide update of the situation and confirm payment
has been provided for the hotel room.

**Services for 9/1/2020 to 9/30/2020.**

App. # 97

# Vienna Wolf Trap Hotel

**430 Maple Avenue West**
**Vienna, VA 22180**
**703-281-2330   Fax 703-281-2838**
**www.lrodriguez@viennawolftraphotel.com**

Page 1 of 1

**Choo Washburn**
**3521 CUMMING LN**
**Chevy Chase, MD 20815**
**USA**

| 121 | 201998 | 11/03/2018 | 12/31/2020 | -1,500.00 |
| --- | --- | --- | --- | --- |
| Master Folio | | | | |

| Visa/Mastercard | 1,500.00 | -1,500.00 |
| --- | --- | --- |

**Vienna Wolf Trap Hotel**
**430 Maple Avenue West**
**Vienna, VA 22180**
**703-281-2330   Fax 703-281-2838**
**www.lrodriguez@viennawolftraphotel.com**

Date/Time/Clerk:
**01/31/2020 03:11 PM   FS**

Transaction Type:
**Purchase/Prepayment**

Reference Number:
**1000201998**

Type:
**VISA**

Account Number:
**XXXXXXXXXXXXX7246**

Expiration:
**XX/XX**

Amount:
**1,500.00**

CUSTOMER COPY

APP. # 98

F8
01/31/2020   0

g with us!

# Vienna Wolf Trap Hotel

**430 Maple Avenue West**
**Vienna, VA 22180**
**703-281-2330   Fax 703-281-2838**
**www.lrodriguez@viennawolftraphotel.com**

Page 1 of 1

**Choo Washburn**
**3521 CUMMING LN**
**Chevy Chase, MD 20815**
**USA**

| Room | Folio | | | |
|------|--------|-----------|------------|-----------|
| 121 | 201998 | 11/03/2018 | 12/31/2020 | -1,600.00 |
| Master Folio | | | | |

| Description/Vendor | | Charge | Credits | Balance |
|--------------------|--|--------|---------|---------|
| Balance Forward | | | | -50.00 |
| Visa/Mastercard | | | 1,550.00 | -1,600.00 |

**Vienna Wolf Trap Hotel**
**430 Maple Avenue West**
**Vienna, VA 22180**
**703-281-2330   Fax 703-281-2838**
**www.lrodriguez@viennawolftraphotel.com**

Date/Time/Clerk:
**02/29/2020  12:29 PM   AFL**

Transaction Type:
**Purchase/Prepayment**

Reference Number:
**1000201998**

Type:
**VISA**

Account Number:
**XXXXXXXXXXXX0171**

Expiration:
**XX/XX**

Amount:
**1,550.00**

CUSTOMER COPY

*APP.# 99*

AFL
02/29/2020   12:30 PM

*Thank you for staying with us!*



Seabury **Resources for Aging®**

### Care Management Miscellaneous Reimbursement

Client: _____ Choo Washburn _____

Care Manager: _____ Seabury _____

Date: _____ Feb. 2020 _____

| Date | Item Description | Amount |
|------|------------------|--------|
| 2-29-20 | Vienna Woodtrap Hotel | $1,550.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | Total payment due upon receipt: | $1,550.00 |

**Please make checks payable and mail to:**
Seabury Resources for Aging
4201 Butterworth Place, NW
Washington, DC 20016

APP. # 100



**Seabury** Resources for Aging®

### Care Management Miscellaneous Reimbursement

Client: _Choo Washburn_

Care Manager: _Seabury_

Date: _March 2020_

| Date | Item Description | Amount |
|------|-----------------|--------|
| 3-31-20 | Verene Holding Hotel | 1,500.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | Total payment due upon receipt: | 1,500.00 |

· **Please make checks payable and mail to:**
**Seabury Resources for Aging**
**4201 Butterworth Place, NW**
**Washington, DC 20016**

APP. # 101

# Vienna Wolf Trap Hotel

Page 1 of 1

**430 Maple Avenue West**
**Vienna, VA 22180**
**703-281-2330   Fax 703-281-2838**
**www.lrodriguez@viennawolftraphotel.com**

**Choo Washburn**
**3521 CUMMING LN**
**Chevy Chase, MD 20815**
**USA**

| Room | Folio | Checkin | Checkout | |
|------|-------|---------|----------|---|
| 121 | 201998 | 11/09/2018 | 12/31/2020 | -1,450.00 |
| Master Folio | | | | |

| Date | Room | Description/Voucher | Charges | Credits | Balance |
|------|------|---------------------|---------|---------|---------|
| 04/01/2020 | 121 | Room Pull Exempt | 50.00 | | 50.00 |
| 04/02/2020 | 121 | Visa/Mastercard - ...7246  AP: 002130 | | 1,500.00 | -1,450.00 |

APP. #102

F8
04/02/2020   10:44 AM

*Thank you for staying with us!*

#1302

# Vienna Wolf Trap Hotel

Page 1 of 1

430 Maple Avenue West
Vienna, VA 22180
703-281-2330   Fax 703-281-2838
www.lrodriguez@viennawolftraphotel.com

Choo Washburn
3521 CUMMING LN
Chevy Chase, MD 20815
USA

| Room | Folio | Check In | Check Out | Balance |
|------|-------|----------|-----------|---------|
| 121 | 201998 | 11/03/2018 | 12/31/2020 | -1,400.00 |
| Master Folio | | | | |

| Date | Room | Description / Voucher | Charges | Credits | Balance |
|------|------|----------------------|---------|---------|---------|
| | | Balance Forward | | | 100.00 |
| 06/02/2020 | 121 | Visa/Mastercard - ....7246 AP: 002217 | | 1,500.00 | -1,400.00 |

June Paymt
2020

APP. # 103

FS
06/02/2020   09:46 AM

*Thank you for staying with us!*

#1316

# Vienna Wolf Trap Hotel

**430 Maple Avenue West**
**Vienna, VA 22180**
703-281-2330   Fax: 703-281-2838
www.hrodriguez@viennawolftraphotel.com

Page 1 of 1

Choo Washburn
3521 CUMMING LN
Chevy Chase, MD 20815
USA

| | Folio | | | Balance |
|---|---|---|---|---|
| 121 | 201998 | 11/09/2018 | 12/31/2020 | -1,480.00 |
| | Master Folio | | | |

| | | | Charges | Credits | Balance |
|---|---|---|---|---|---|
| | | Balance Forward | | | 200.00 |
| 06/02/2020 | 121 | Visa/Mastercard - ...7246  AP: 002217 | | 1,500.00 | -1,400.00 |

JUNE PAYMENT
J 2020

DATE: 7 22 00
AMOUNT: 1,500
APPROVED BY: MW
CHECK #: 7999
ACCOUNT #: 9999

APP. # 104

FS
05/02/2020  08:45 AM

*Thank you for staying with us!*

ESA Washington, D.C. - Tysons Corner
8201 Old Courthouse Road
Vienna, VA 22182

Property ID: 9725
Phone: 703-356-6300
Fax: 703-356-6353

## Corporate Folio Receipt

Folio/Resv # 180206 /   180206
WASHBURN, CHOO
3821 CUMMINGS LN
CHEVY CHASE, MD 20815
Company: Leisure




Room: 327
Arrival: 8/20/2020
Departure: 9/20/2020
Sales Lead:
Travel Agent:

| Trans # | Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| 1680020 | 8/30/2020 | ROOM RENT | $59.00 | $0.00 | ($192.36) |
| 1680021 | 8/30/2020 | County Room Tax | $4.60 | $0.00 | ($187.86) |
| 1680022 | 8/30/2020 | State Room Tax | $4.50 | $0.00 | ($183.36) |
| 1680023 | 8/30/2020 | State Room Tax | ($4.50) | $0.00 | ($187.86) |
| 1680024 | 8/30/2020 | County Room Tax | ($4.50) | $0.00 | ($192.36) |
| 1680025 | 8/30/2020 | State Room Tax | ($0.12) | $0.00 | ($192.48) |
| 1680026 | 8/30/2020 | County Room Tax | ($0.12) | $0.00 | ($192.60) |
| 1680027 | 8/30/2020 | State Room Tax | $3.54 | $0.00 | ($189.06) |
| 1680028 | 8/30/2020 | County Room Tax | $3.54 | $0.00 | ($185.52) |

Method of Pay:          Credit Card

| Room Charges: | | $824.89 |
|---|---|---|
| Other Charges/Credits: | | ($187.89) |
| Phone Charges: | | $6.00 |

| Tax: | Account Desc | Account Number | Total Taxes |
|---|---|---|---|
| | Sales Tax | 25501 | $0.00 |
| | County Room Tax | 25503 | $37.42 |
| | State Room Tax | 25502 | $37.42 |

*Sea by total payments*

| Less Payments: | ($903.76) |
|---|---|
| Total Amount Due: | ($185.52) |

Daily Rate after taxes + credits =
= $ 63.84
   × 11 nights (8/20 - 8/30)
   + $6.00 → phone charges
credit applied toward next 3 nights stay.

APP. # 105

Date/Time Printed At: 8/31/2020 2:45:25 PM



Seabury **Resources for Aging**

## Miscellaneous Expense Reimbursement
### Care Management Program

**Client:** Choo Washburn

**Care Manager:** Seabury

**Date:** 7-31-20 . Hotel charges for Aug, 2020..

| Date | Description | Amount |
|------|-------------|--------|
| 7-31-20 | Viena Wolf trap Hotel  7 night | 350 ⁰⁰ |
| 8-7-20 | Viena Wolf trap Hotel  7 night | 350.⁰⁰ |
| 8-14-20 | Viena Wolf Trap Hotel  7 night | 350 ⁰⁰ |
| 8-19-20 | Hotel - 1 night - Extended stay | $85.11 |
| 8-20-20 | Extended Stay Hotel 7 nights | $462.56 |
| 8-27-20 | Extended Stay Hotel 7 nights (with credit) | $431.20 |
| **TOTAL** | | $2,028.87 |

Total.

APP. # 106



Seabury Resources for Aging®

## Care Management Miscellaneous Reimbursement

Client: _____ Choo WASHBURN

Care Manager: _____ Seabury (Visa)

Date: _____ 9-30-20

| Date | Item Description | Amount |
|------|-----------------|--------|
| 9-3-20 | Extended Stay Hotel | 454.88 |
| 9-11-20 | Extended Stay Hotel | 446.88 |
| 9-21-20 | Extended stay Hotel | 327.18 |
| 9-26-20 | Extended Stay Hotel | 422.94 |
| | | |
| | | |
| | | |
| | | |
| | **Total payment due upon receipt:** | $ 1,651.88 |

APP. # 107

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
-----------------------------X
                             :
LARRY RICHARD WASHBURN,       :
                             :
        Plaintiff,            :
                             :
        v.                    :        Family Law No. 133326
                             :
CHOO KIM WASHBURN,            :
                             :
        Defendant.            :
                             :
-----------------------------X
```

MERITS TRIAL

Rockville, Maryland                          February 2, 2017

APP. # 108

DEPOSITION SERVICES, INC.
12321 Middlebrook Road, Suite 210
Germantown, Maryland 20874
(301) 881-3344



IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
------------------------------X
                              :
LARRY RICHARD WASHBURN,       :
                              :
        Plaintiff,            :
                              :
            v.                :        Family Law No. 133326
                              :
CHOO KIM WASHBURN,            :
                              :
        Defendant.            :
                              :
------------------------------X
```

Rockville, Maryland

February 2, 2017

WHEREUPON, the proceedings in the above-entitled matter commenced

BEFORE:    THE HONORABLE MICHAEL H. MASON, JUDGE

APPEARANCES:

FOR THE PLAINTIFF:

LARRY RICHARD WASHBURN, Pro se
Apartment 104
2158 Astoria Circle
Herndon, Virginia  20170

FOR THE DEFENDANT:

CHOO KIM WASHBURN, Pro se
3521 Cummings Lane
Chevy Chase, Maryland  20815

APP. # 109

1    MR. WASHBURN:  That was when I was working for

2 Cenderin (phonetic sp.).  I'm currently working for Versatech.

3 And, I do have copies of the last two or three invoices and one

4 of the checks here that I will provide for a statement.

5    THE COURT:  Give them to the clerk.

6    MR. WASHBURN:  It's approximately about $2,000 a

7 month.  Of course, that's in 1099 status.

8    THE COURT:  That's Versatech?

9    MR. WASHBURN:  Yes, that's gross.  Yes.  This is

10 actually three of them here.  On December 15th down through the

11 January 31st.

12    THE COURT:  Okay.  All right.  So you tell me what

13 you want.  How should I value the property?  How should I

14 divide the property?  And, what should I do about her claim for

15 alimony?

16    MR. WASHBURN:  Can we start with alimony first?

17    THE COURT:  Start anywhere you want.

18    CLOSING ARGUMENT OF LARRY WASHBURN, PRO SE

19    THE PLAINTIFF

20    My wife has two Master's degrees.  I paid for the

21 second Master's degree because she hadn't earned any money

22 while we were married at that point.  Monies went to the

23 University of Maryland and American University.  Not exactly

24 cheap.  I supported her taking care of the kids.  I helped

25 researched from a non-monetary point-of-view.  I attended all

APP. # 110

1   PTA meetings, did field trips with the kids.  She, I don't
2   think she attended maybe one PTA meeting for the whole time.
3          When she was doing her Master's degree in ESOL, every
4   time she needed research, I would go to the basement and spend
5   two to three hours producing all types of information.  Of
6   course, I'm a computer specialist, but research is at hand.  I
7   would come upstairs and bring up this much documents and
8   papers.  And, she would go through oh, no, yes, no, yes, no.
9   So I gave a lot of non-monetary effort towards her Master's
10  degree.
11         She did work very short time at Montgomery College.
12  I did see a few positive aspects.  Our kids liked her and
13  everything.  She's proved that she can earn the money.  She's
14  very diligent.  As you can see, she's produced out of all these
15  docket entries, she's very capable person.  The issues between
16  her and me is what's caused the problems that we, we must get
17  divorced.
18         The two cars, I'm driving a car that has 185,000
19  miles on it.  She's driving a RAV4 that she has basically
20  destroyed cosmetically.  I have pictures here.  I don't know if
21  you want to see them.  The value of the car by Kelly Blue Book
22  says 6,000.  It's probably much less in reality.
23         I offered to give, I said if you will sign over my
24  car to me so that I can register my plates in Virginia, I said
25  I'll give you the Toyota RAV.  She, and I gave her a two-week

APP. # 111

1  period.  I said you must comply by this date, and she said no.

2  She insisted she wanted the court to handle that.  I was

3  willing to give up a $6,000 vehicle for a $1,000 vehicle.  So

4  as far as like trying to cooperate during this divorce, it has

5  been nothing but full of rancor.

6          THE COURT:  So how should the property be divided?

7          MR. WASHBURN:  The two properties, I understand where

8  she's coming from.  But, I'd like to see them sold.  I think

9  that the cash, because there's just so much history as far as

10  who brought what to the table, I have promissory notes that

11  I've already submitted.  HUD-one statements, gift letters.

12  After this long marriage, I just want to get rid of it and get

13  it out of my memory and move on to while I'm still alive.  So

14  I'd like to see both properties sold.

15          THE COURT:  Okay.  And, you agree that she gets her

16  marital share of your OPM?

17          MR. WASHBURN:  Yes, I did submit the bank from it.  I

18  think I heard you say 40 percent.  I calculated 36, something

19  like that.  I, I tried to be very detailed about that.  I even

20  gave her an extra percentage for the sick lave.

21          THE COURT:  Okay.

22          MR. WASHBURN:  The alimony, I think she is highly

23  capable of teaching, whether it's here in this country.  The

24  American University professors had told her that if she

25  returned to Korea, she would be a queen because she, in the

APP. # 112

1 English linguistics department, which is her first Master's

2 degree, is that she had two Master's degrees, raising three

3 kids going to the finest universities in the United States,

4 Duke, Harvard, and Penn.  She tends to be an Asian tiger mom,

5 and that's why we're, we're still --

6        THE COURT:  You say the kids went to Duke, Harvard,

7 and Penn?

8        MR. WASHBURN:  Oh, yes.  Duke, Harvard, and Penn.

9 Frank, the second one, was a Presidential scholar from the

10 State of Maryland.

11        THE COURT:  Okay.  All right.  So what, if anything,

12 now do you want to say about how the property should be divided

13 and/or about alimony?

14        CLOSING ARGUMENT OF KIM CHOO WASHBURN, PRO SE

15        THE DEFENDANT

16        I, Your Honor, I should, I should get the Cummings

17 Lane house because he did not desire that house because he did

18 not live there.

19        THE COURT:  Yes.

20        MS. WASHBURN:  And, also because of him I don't want

21 to sell that house and capital gains tax, and there's a

22 commission, all kinds of this money wasting.  And, it's, it's

23 not right.  And, also about the job, he never even think about

24 my son.  Is he disabled, maybe disabled, and disfigured and

25 never feel sorry and talk about that I have disability all

√ Digitally signed by Patricia A. Ross

DIGITALLY SIGNED CERTIFICATE

**DEPOSITION SERVICES, INC.** hereby certifies that the

attached pages represent an accurate transcript of the

electronic sound recording of the proceedings in the Circuit

Court for Montgomery County in the matter of:

Family Law No. 133326

LARRY RICHARD WASHBURN

v.

CHOO KIM WASHBURN

By:

*Patricia A. Ross*

———————————————————————

Patricia A. Ross
Transcriber

APP. # 114

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
--------------------------------X
                                 :
LARRY RICHARD WASHBURN,          :
                                 :
          Plaintiff,             :
                                 :
              v.                 :          Family Law No. 133326
                                 :
CHOO KIM WASHBURN,               :
                                 :
          Defendant.             :
                                 :
--------------------------------X
```

MOTION'S HEARING

Rockville, Maryland                      September 7, 2017

APP. # 115

DEPOSITION SERVICES, INC.
12321 Middlebrook Road, Suite 210
Germantown, Maryland 20874

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

```
-------------------------------X
                               :
LARRY RICHARD WASHBURN,        :
                               :
          Plaintiff,           :
                               :
          v.                   :        Family Law No. 133326
                               :
CHOO KIM WASHBURN,             :
                               :
          Defendant.           :
                               :
-------------------------------X
```

Rockville, Maryland

September 7, 2017

WHEREUPON, the proceedings in the above-entitled

matter commenced

BEFORE:    THE HONORABLE MICHAEL D. MASON, JUDGE

APPEARANCES:

FOR THE PLAINTIFF:

LARRY RICHARD WASHBURN, Pro se
2158 Astoria Circle
Apartment 104
Herndon, Virginia 20170

FOR THE DEFENDANT:

CHOO KIM WASHBURN, Pro se
3521 Cummings Lane
Chevy Chase, Maryland 20815

TRUSTEE:

DAVID C. DRISCOLL, JR., Esq.        APP. #116
Stein, Sperling, Bennett, De Jong,
Driscoll & Greenfeig, P.C.
25 West Middle Lane
Rockville, Maryland 20850

1  through 2015, mostly due because she would not file jointly.

2  So, therefore, I am forced to file single and this caused all

3  kinds of problems.  I have 43,000 in back Maryland taxes.  That

4  is under negotiations with Maryland for 2012.  That's a

5  separate motion.  I will be completing that next week.  It's in

6  actuality 13,000 plus penalties.  Maryland thinks that I will

7  still living there.  I have $62,000 in credit cards.  I'm

8  trying to negotiate the back taxes, but credit cards don't go

9  away.

10          Due to the actions by the defendant, I am no longer a

11  viable worker in my field.  Physically, I'm susceptible to

12  injury, falls, poor hearing, unreliable transportation.  The

13  defendant has two Master's Degrees, has proven she can be

14  gainfully employed teaching.  With this case being at over 350

15  docket entries, she has proved that she can type, file motions,

16  and be productive.  It's time she can provide some income, at

17  least part time.  When she did work, her self-esteem improved

18  greatly.  As soon as this case is closed, I will be relocating

19  to get out of dodge.  I pray that you have due consideration

20  from my perspective.

21          THE COURT:  Okay.

22          MR. WASHBURN:  She got the 6k car, I got the 1k car,

23  and the Court has been very understanding and generous, but now

24  I pray for relief --

25          THE COURT:  Okay.          APP. # 117

√ Digitally signed by Yvonne M. Russman

## DIGITALLY SIGNED CERTIFICATE

DEPOSITION SERVICES, INC. hereby certifies that the attached pages represent an accurate transcript of the electronic sound recording of the proceedings in the Circuit Court for Montgomery County in the matter of:

Family Law No. 133326

LARRY RICHARD WASHBURN

v.

CHOO KIM WASHBURN

By:

_____

Yvonne M. Russman
Transcriber

APP. # 118

# ABSTRACT OF TITLE

**PREPARED BY:** _Janet Kelemen_

**FOR CLIENT:** _Harvest_   Case # 174803

Legal description:

Lot/unit: 18   Block: N/   Subdivision known as:
CONNECTICUT GARDENS
Plat reference: 31/2186   Restr. on Plat: MBRL per OD ✓ shown:
Esmts/Rw's: _none_

Tax ID: 0124 9291

✓ DAVID C. DRISCOLL   Vested of record: LARRY R. WASHBURN + CHOO K. WASHBURN
APPT. TRUSTEE to
SELL in
FL-133326   By Deed dated: 1/31/92  Recorded: 2/6/92  Liber: 10166  folio 42

Subject to:

1) (D/T) Mtg dated 12/9/85 recorded 12/17/85 Liber: 6454 folio: 678 rerec'd: 6959/344 unrelease
   Borrower: PAUL JOHN O'BOYLE + MARY F. O'BOYLE                                    15,947
   Securing: NS+T BANK                      $ N,000
   Assn/Appt:

2) (D/T) Mtg dated 5/18/06 recorded 5/25/06 Liber: 32391 folio: 461
   Borrower: LARRY K WASHBURN + CHOO K WASHBURN
   Securing: COUNTRYWIDE Home LOANS          $ 291,000
   Assn/Appt: 31143/272

3) D/T/Mtg dated_____ recorded:_____ Liber:_____ folio:_____
   Borrower:_____
   Securing:_____
   Assn/Appt:_____

Covenants: 1262/504

Easements/Rights of ways: _none_ ✓

#102                                           #223 Washburn
$12, 217.3?                                    Ag. choo  $5,947.3?
Ag. Larry   Judgements/liens: V-403867 ; V-387604 ; FL/133326
Washburn.   Other liens: JUANA CLARK
                                                    Divorce

                                               ( NOTE: THESE FILES
                                                 HAVE BEEN SENT
                                                 TO APPEALS )
                                               AS TO SOME OF
Abstracted on: 6/28/17 By: _Janet_             THEIR JACKETS

Report thru: 6/15/17

                                               Fee 175.00
          APP. #119                            Copies 60.00
                                                    (235.00)

HARVEST TITLE AND ESCROW, LLC
MAHT ACCOUNT

Date: 07/20/17      Amount: 18,794.85          File Number: 174803          Check #:

Pay To: Choo K. Washburn

Buyer: Juana Quico Clark
Seller: David C. Driscoll, Trustee
Property: 11532 Soward Drive, Silver Spring, MD 20902

18,794.85   Cash from Closing



*Handwritten notes: Jeanne 218 / 20 cthove / 301 545 1100*

---

**HARVEST TITLE AND ESCROW, LLC**
**MAHT ACCOUNT**
20 COURTHOUSE SQUARE, SUITE 218
ROCKVILLE, MD 20850

CONGRESSIONAL BANK
65-7325/2550

NUMBER

07/20/17          **$18,794.
DATE                    AMOUN

The Sum EIGHTEEN THOUSAND SEVEN HUNDRED NINETY FOUR DOLLARS and 85/100

PAY TO THE ORDER OF

Choo K. Washburn

3521 Cummings Lane

Chevy Chase, MD 20815

CHECK CANNOT BE CASHED AT BRANCH
WITHOUT CUSTOMER APPROVAL

AUTHORIZED SIGNATURE

File #: 174803

⑈013988⑈ ⑆255073251⑆ 6000366523⑈

---

| | 7/20/2017 | | |
|---|---|---|---|
| $  168.74 | County Taxes from 7/1/2017 to 7/20/2017 | | |
| | | | |
| | **Loan Charges to Caliber Home Loans, Inc** | | · |
| | Processing Fee to Caliber Home Loans, Inc. | $    410.00 | |
| | UW Fee to Caliber Home Loans, Inc. | $    585.00 | |
| | LenderCredits to Caliber Home Loans, Inc. | $   (500.00) | |
| | | | |
| | **Other Loan Charges** | | · |
| | Appraisal Fee to Suburban Appraisal: $450.00 POC-Borrower | | |
| | Credit Report Fee to CoreLogic Credco | $     17.50 | |
| | Flood Certification to CoreLogic Flood | $      8.56 | |
| | Tax Service Fee to CoreLogic | $     92.00 | |
| | Abstract/Title Search to Janet Kelemen | $    235.00 | |
| | Survey to Landtech Associates, Inc. | $    225.00 | · |

Copyright 2015 American Land Title Association.
All rights reserved.   APP. #120   Page 1 of 3      Printed On: 07/20/2017 02:19 PM Eastern Standard Time

174803

 **ditech.**

# FAX

| | |
|---|---|
| **Date:** | July 25, 2017 |
| **To:** | +1 (301) 215-6342 |
| **Fax Number:** | +1 (301) 215-6342 |
| **Subject:** | 34933309     WASHBURN CHOO |
| **# of Pages:** | 3 |

Ditech Financial LLC
Correspondence
PO Box 6172
Rapid City, SD 57709-6172

Customer Service: 1-800-643-0202
Fax: 1-866-870-9919
ditech.com

**Note:**     Enclosed please find a copy of the documents requested.

If you have any questions or concerns regarding the documents, please do not hesitate to contact us at 1-800-643-0202, Monday - Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT.

Thank you,
Customer Service
Ditech Financial LLC

The information contained in this facsimile transmission is privileged and confidential, and for the sole use of the intended recipient. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of the accompanying communication is prohibited. If you have received this communication in error, immediately notify us by telephone at the contact number above.

APP. # 121

Ditech Financial LLC
PO Box 6172
Rapid City, SD 57709-6172



a Walter company
Phone: 1-800-643-0202
Fax: 1-866-870-9919
ditech.com

LARRY R WASHBURN
CHOO K WASHBURN
3521 CUMMINGS LN
CHEVY CHASE, MD 20815-3235

July 22, 2017

RE: Ditech Financial LLC ("Ditech")
    Account Number: 0034933309

Dear Larry R Washburn and Choo K Washburn :

Our records indicate the above-referenced account with Ditech Financial
LLC ("Ditech") is now paid in full.*

If you are entitled to a refund due to an overpayment or a positive escrow
balance, it will be mailed to you within 20 business days of the payoff
date.

If your account was secured by collateral, such as a mortgage, deed of
trust, a Uniform Commercial Code Form (UCC) or a lien on a title, a lien
release will be prepared and mailed in accordance with the applicable state
guidelines. Documents will be mailed directly to the county, state, Division
of Motor Vehicles or you as required by the state.

If Ditech is listed as the loss payee on your physical damage or flood
insurance policy, please contact your agent and request the removal of
Ditech's name from your policy. This will ensure Ditech's name is not
listed on any future checks you may receive for covered losses.

APP. # 122

Page 2

This is not a recommendation from Ditech regarding your insurance coverage.
Consult your agent or mortgage lender regarding your personal insurance
needs.

If you have questions, please contact our Customer Service Department at
1-800-643-0202, Monday through Friday 7 a.m. - 8 p.m. and Saturday 7 a.m. -
1 p.m. CST.

Sincerely,


Ditech
1-800-643-0202
Monday - Friday 7 a.m. - 8 p.m. and Saturday 7 a.m. - 1 p.m. CST


*Ditech reserves the right to demand additional funds to correct any
error or omission in the payoff figure that was calculated in good faith,
whether the error or omission is mathematical, clerical, typographical, or
if the check is returned for any reason.

Paid in Full-Good Funds, 09/02/2016 LTR-1496
FS998-021 CPI
  0034933090 7-22-17/Larry R Washburn


APP. # 123

APP. # 124

## DOCKET INFORMATION

CASE ID: 133326FL   Reference Case:
WASHBURN, LARRY RICHARD          VS. WASHBURN, CHOO KIM

------------------------------------------------------------

10/27/2017 #427   ORDER, FINAL RATIFICATION OF SALE          718 ES
   F  TYPE: DOCKET
      ORDER OF COURT (MASON, J.) THAT THE PROCEEDS OWED TO DEFENDANT FROM
      THE SALE OF THE PROPERTY LOCATED AT 11532 SOWARD DRIVE, SILVER SPRING,
      MD 20902, IN THE AMOUNT OF $32,233.98, BE DEPOSITED INTO THE COURT
      REGISTRY BY HARVEST TITLE AND ESCROW, LLC, ENTERED. (COPIES MAILED
            Judge: M MASON

10/27/2017 #428   MONEY DEPOSITED IN THE REGISTRY          293 ES
   F  TYPE: DOCKET
      MONEY IN THE AMOUNT OF $32,233.98 RECEIVED FROM DAVID ASAKI AND
      DEPOSITED IN THE REGISTRY OF THE COURT, FILED.

*** Docket Information Completed ***

Enter a new menu selection or press [ENTER] to continue [ ]

APP. # 124

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

IN THE MATTER OF CHOO KIM WASHBURN   *
FOR THE APPOINTMENT OF A GUARDIAN   *   FL No.    14949 /
OF THE PROPERTY   *

**PETITION FOR CAPACITY EVALUATION**
**AND TEMPORARY and PERMANENT GUARDIAN OF PROPERTY**

RECEIVED NOV 20 2017 Clerk of the Circuit Court Montgomery County, Md.

Uma Ahluwalia, Director, Montgomery County Department of Health and Human

Services, by her undersigned attorneys, petitions this Honorable Court for a comprehensive

mental status examination of Choo Kim Washburn and the appointment of a temporary guardian

of property, and ultimately a permanent guardian of property, pursuant to Maryland Annotated

Code, Family Law Article, §14-307, and Estates and Trusts Article, §§13-101 *et seq.*, and

Maryland Rules 10-201 *et seq.*, and for reasons states:

    1:      Respondent, Choo Kim Washburn, is an adult female, who resides in a home

owned jointly with her husband from (whom she is separated), and located at 3521 Cummings

Lane, Chevy Chase, MD 20815.

    2.      Petitioner is the Director of the Montgomery County Department of Health and

Human Services and authorized to file this Petition under Maryland Annotated Code, Family

Law Article, §14-307.

    3.      Petitioner has received a referral for adult protective services (APS) for

Respondent alleging incapacity to handle her finances. The Department has initiated an adult

protective services' investigation.

    4.      Petitioner asserts that Respondent is unable to manage her property and financial

affairs effectively due to a mental disability, and has property which requires proper

management, pursuant to Estates and Trusts Article, Section 13-201.

APP. # 125


EXHIBIT
A

5.     Consequently, Petitioner seeks an order compelling Ms. Washburn to participate in two capacity evaluations, as well as the appointment of a temporary guardian of her property pursuant to Estates and Trusts Article, Section 13-203.

6.     The Department asserts that Ms. Washburn has a mental disability which interferes with the appropriate administration of her property.    As per the court record in FL No. 133326 in this Court, and information obtained during the course of Petitioner's investigation, Respondent was entitled to receive over $30,000 as her portion of the proceeds of sale from a jointly owned property.  However, Respondent denied that the home was the subject of a valid sale, and refused to accept the proceeds from the settlement official.  Consequently, and as reflected at docket entry #427 in FL No. 133326, the sum of $32,233.98 was deposited into the court registry.

As further example of Respondent's inability to manage her finances, she advised the investigating social worker that the water to the house was disconnected for non-payment, asserting she had inadequate funds with which to pay the bills.  But, she further added that the water had been poisoned by her husband, so the disconnection was of little import.

7.     Additionally, as per the court records in FL No. 133326, the Respondent had been ordered to vacate the residence at Cummings Lane by October 1, 2017 (see docket entry #379), but to the best of Petitioner's knowledge, Respondent continues to reside there.   It is likely that a temporary guardian of property will be needed to access the funds currently on hold in the court registry and secure a rental property for Respondent, and thereafter ensure that all rental payments are made timely.

App. # 126

2

8.  The Department has no information about the nature or extent of Respondent's income or assets, other than her joint ownership of the Cummings Lane property, and the funds being held on her behalf in the registry of the Court.

9.  No less restrictive form of intervention is available which is consistent with Respondent's welfare and safety.

10.  To the best of Petitioner's knowledge, there are no other cases pending in this Court or elsewhere for the appointment of a guardian, conservator or trustee.

11.  To the best of Petitioner's knowledge, no individual currently holds a Power of Attorney for Respondent.

12.  At this time, the only interested party known to the Department are the Respondent's husband and the Court appointed trustee, listed below:

> Larry Washburn
> 2158 Astoria Circle, Apt. 104
> Herndon, VA  20170

> David C. Driscoll, Jr., Esquire
> 25 West Middle Lane
> Rockville, MD  30850

The Petitioner has learned that Ms. Washburn has three sons, but their names and addresses are currently unknown.

WHEREFORE, the Petitioner requests:

1.  That the Court appoint an attorney to represent Respondent, Choo Washburn;

2.  That a temporary guardian of the property be appointed;

3.  That the Court order Respondent, Choo Washburn, to participate in two competency evaluations under the direction and control of the Department;

APP. # 127

3

4.    That the Respondent be ordered to show cause why the relief prayed in this

      Petition should not be granted;

5.    That the Court grant other and further relief as this cause may require.

                              Respectfully submitted,

                              MARC P. HANSEN
                              County Attorney

                              Peggy R. Odick
                              Associate County Attorney

                              Division of Health and Human Services
                              401 Hungerford Drive, 3rd Floor
                              Rockville, MD  20850
                              (240) 777-6762

I do solemnly declare and affirm under the penalties of perjury that the contents of the foregoing
Petition are true and correct.

_____
Peggy R. Odick, Associate County Attorney

APP. # 128

4

The undersigned approves the filing of this Petition.

Uma Ahluwalia
Director
Montgomery County Department
of Health and Human Services

By:    John J. Kenney, Chief by Mau Waynes
Aging and Disability Services

APP. # 129

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

LARRY RICHARD WASHBURN )
)
Plaintiff )
)
v. )          Case No. 133326FL
)
CHOO KIM WASHBURN )
)
Defendant )

### ORDER

Upon consideration of the Motion to Release Funds from Court Registry, and any response filed thereto, it is this _____21st_____ day of February 2018, by the Circuit Court for Montgomery County, Maryland, hereby:

ORDERED, that the funds placed into the court registry at docket entry #428 in the amount of $32,233.98, plus any applicable interest, less administrative expenses, are to be released to Robert M. McCarthy, Esq., Guardian of the Property at his address of, 4405 East West Highway Suite 201, Bethesda, Maryland 20814, and it is further;

ORDERED, that alimony payments from Larry Richard Washburn due to Choo Kim Washburn are to be paid to Robert M. McCarthy, Esq., Guardian of the Property at his address of, 4405 East West Highway Suite 201, Bethesda, Maryland 20814.

_____
JUDGE, Circuit Court for Montgomery
County, Maryland

App. # 130

491

ENTERED

FEB 2 1 2018

Clerk of the Circuit Court
Montgomery County, Md.

1      IN THE DISTRICT COURT FOR MONTGOMERY COUNTY

2

3   CHOO WASHBURN

4        VS                    CASE NO. 0602-0010675-2019

5   ROBERT MCCARTHY

6

7

8

9

10              THE ABOVE CAPTIONED CASE CAME ON

11              FOR TRIAL ON JULY 15, 2019

12

13

14

15

16              BEFORE:

17              THE HONORABLE ERIC NEE

18

19

20

21              APPEARANCES:

22              CHOO WASHBURN

23              (IN PROPER PERSON)

24              ROBERT MCCARTHY, ESQUIRE

25              (IN PROPER PERSON)


                    APP. # 131

1                              TABLE OF CONTENTS

2

3      <u>WITNESSES</u>              <u>DIRECT</u>    <u>CROSS</u>    <u>REDIRECT</u>    <u>RECROSS</u>

4      CHOO WASHBURN                3

5      ROBERT MCCARTHY              6

6

7

8

9

10

11     <u>EXHIBITS</u>

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*App. # 132*

3

1          P R O C E E D I N G S

2

3          COURT: All right, I'm gonna call this next case. Choo

4    Washburn versus Robert McCarthy.

5          MS. WASHBURN: Yes, Your Honor.

6          COURT: Please come forward.

7          MR. MCCARTHY: Good morning, Your Honor Robert McCarthy,

8    respondent.

9          COURT: Mr. McCarthy. Okay, could the parties please

10   raise their right hands to be sworn.

11

12          Whereupon,

13          ALL WHO ARE TO TESTIFY ARE SWORN

14

15          MR. MCCARTHY: I do.

16          MS. WASHBURN: I do.

17          COURT: Okay and Ma'am what is your name?

18

19          Whereupon,

20                    CHOO WASHBURN

21    was called as a witness on behalf of the

22    Plaintiff, and having been sworn,

23    was examined and testified as follows:

24

25                    DIRECT EXAMINATION

APP. # 133

1      MR. MCCARTHY: To pick up her share of the money at that

2  time.

3      COURT: Okay.

4      MR. MCCARTHY: Her appearances in court were such that

5  it gave concern to Judge Mason and that he referred the matter to

6  the Department of Social Service for investigation and they

7  determined there's a basis for filing an adult guardianship against

8  her. She is now a ward of the Circuit Court of Montgomery County,

9  Maryland, okay? As a ward of the Circuit Court of Montgomery

10  County, Maryland as I said in my motion to dismiss under the

11  Estates and Trust Article 13-206(c)(1) title to all of her property

12  vests in me, including her annuity, including her house, including

13  everything vests in me. And I am to man-, well really vests with

14  the Circuit Court of Montgomery County, Maryland I'm the Court's

15  agent.

16      COURT: Okay.

17      MR. MCCARTHY: And then I account to the Court or report

18  to the Court, we've had multiple, multiple hearings in Circuit

19  Court to the extent now the Circuit Court passed an Order, Judge

20  Greenberg passed an Order barring her from filing any more pro se

21  litigation in this case.

22      COURT: Okay.

23      MR. MCCARTHY: Without leave of court and I asked the

24  Court and I attached that to my motion to dismiss. Further, she

25  then forwent to Virginia and was suing her husband and suing her

App. # 134

1   son for support and all of those matters were all dismissed. She

2   has now found a brand new venue, the District Court of Montgomery.

3        COURT: Replevin.

4        MR. MCCARTHY: So, what she has now done, she's filed

5   this replevin action asking me to replev her husband's annuity

6   that belongs to me to her and that's the number she picked.

7   Further, the same day, she filed a civil lawsuit suing me for the

8   same amount of money that trial is set October and that's set down

9   there. I filed a similar motion to dismiss. So, what happens is

10  very simply and I've been, in the past year I've been involved in

11  this case since I've been permanent, I received a call from at

12  least 20 different attorneys that she would go to and she would

13  say to them Bob McCarthy is not giving me my money. And I'd say to

14  them, in the guardianship case I said that's not what she wants,

15  she wants to redo her divorce case and get millions of dollars

16  from her divorce case and order her husband to go back to work.

17  And the attorneys say, no I've talked to her, go back and talk to

18  her again. And then they'd call back and say never mind we're not

19  taking the case. Because what she really wants to do is she wants

20  to redo her divorce case which is now final, settled and over.

21        We now have a guardianship case, she has a place to go,

22  subject to the (unclear words) pleadings, she has to, because she's

23  filed so many pleadings -- she used to walk around with two

24  suitcases, I imagine most of the suitcases are full of papers of

25  pleadings. She's walking around with two suitcases full of

APP. # 135

pleadings. The wonderful thing about Ms. Washburn is she's a very intelligent woman, she's a very intelligent woman and but she files these pro se pleadings and then gets defeated. So, now she cannot file in the Circuit Court anymore. She was defeated in Virginia so, now she's coming here. So, I would say first of all, because she's a ward of the Circuit Court of Montgomery, Circuit Court of Montgomery County, Maryland and by statute title of her property vests in me. She's asking to replev property, she's asking to replev, my property which she can't do. Second of all, if she has any questions on how I operate the guardianship she has to go to the Circuit Court. But because she has filed so much vexatious pleadings in there also, she has to ask leave of the court to file something new.

　　　　And the third and, I would ask a couple of things. First of all, dismiss this case 'cause the proper venue for this case is the Circuit Court of Montgomery County, Maryland. I would ask you to impose upon you because she has filed the civil suit against me, I've asked to have that civil suit brought up here also and have it dismissed 'cause it's the same motion to dismiss on the same basis of the same thing that's set in October in this case. And I can give the case number on that. And the third thing, I think this matter should be referred to the administrative judge of the District Court of Montgomery County, Maryland, taking judicial notice of the Order already entered by Judge Greenberg saying that she cannot file any more of these pro se pleadings.

APP. # 136

1   Mason indicated in his order that was provided to you --

2          MS. WASHBURN: Whose, whose order?

3          COURT: July 12, 2018 that Mr. McCarthy and there's some

4   other information is appointed guardian of the property of the

5   respondent with the rights, duties and powers as set forth in the

6   Estates and Trusts Article.

7          MS. WASHBURN: The income is just the alimony he's

8   talking about, Judge Mason already here, here said only alimony my

9   ex-husband has to pay alimony to him. So, Judge Mason said income

10  means alimony.

11         COURT: Do you want me to look at that too?

12         MS. WASHBURN: Judge, yes, please.

13         COURT: All right, I'll look at that.

14         MS. WASHBURN: So, OPM has nothing to do with this, it's

15  completely different.

16         COURT: I, I disagree because if he's your guardian --

17         MS. WASHBURN: He's a guardian of property.

18         COURT: Of your property he's to watch over your

19  property and make sure that nobody's --

20         MS. WASHBURN: No, he does, he is a --

21         COURT: Nobody steals it.

22         MS. WASHBURN: He's stealing my money.

23         COURT: Well --

24         MS. WASHBURN: He's, he, he has to be terminated.

25         COURT: Okay.

APP. # 137

1 | worker, we're on our second social worker.

2 | COURT: Okay.

3 | MR. MCCARTHY: She burned out the first one. But what,

4 | she's living in a place in Virginia now.

5 | COURT: Right.

6 | MR. MCCARTHY: Because we found her a house in Silver

7 | Spring, but she wants to stay in kind of a ratty hotel in Virginia

8 | and that's where I'm paying for, that's what she has to do because

9 | there is no guardianship of the person over her. She can live

10 | wherever she wants.

11 | COURT: Right.

12 | MR. MCCARTHY: She has to respect the guardianship case

13 | and we'll deal with all of these things we go through and she does

14 | not want to recognize the guardianship at all as she's not

15 | recognizing today in front of you.

16 | COURT: Right.

17 | MR. MCCARTHY: I, I give the, the, her, her social worker

18 | has her insurance card for her.

19 | COURT: Card, right, okay.

20 | MR. MCCARTHY: And that's what she has, but she has to

21 | kind of (unclear) to this whole thing and she just resists

22 | everything.

23 | COURT: Who's this, who is this social worker?

24 | MR. MCCARTHY: She works for Seabury Case Management

25 | also.

APP. # 138

1  to court, okay? All right, but I have to make a ruling now, all

2  right? And I've reviewed your documents, I've listened to you,

3  I've listened to Mr. McCarthy and I also read this motion from

4  Judge Greenberg and I also reviewed what Judge Mason did in this

5  case. All right and in the Circuit Court, the Circuit Court

6  appointed Mr. McCarthy to be your guardian of your property, all

7  right. And the arguments that you're making here as I hear them

8  were pretty much made in the Circuit Court also.

9         MS. WASHBURN: Circuit Court I did not make any, any --

10        COURT: Well I have to make a ruling now, okay? Now I've

11  listened to you and I've considered your arguments, all right but

12  I have to make a finding in terms of whether you're entitled to

13  these properties or not.

14        MS. WASHBURN: Annuity, I'm talking about.

15        COURT: Correct, the annuity and the other things you

16  listed in the replevin action. And I'm gonna go ahead and make a

17  finding that Mr. McCarthy is the person who is to oversee the

18  properties and that you are to work with the Circuit Court in terms

19  of any type of argument or complaint that you may have with Mr.

20  McCarthy. So, what I'm gonna do, is I'm gonna with regard to your

21  request for these properties, I'm gonna deny your request for a

22  replevin action, I'm gonna re- --

23        MS. WASHBURN: How about the, the other property also,

24  also you --

25        COURT: I'm gonna return these, I'm gonna return these

APP. # 139

1                           C E R T I F I C A T E

2

3         I, Christina Neufell, official court transcriber for

4 the District Court of Maryland, do hereby certify that the

5 foregoing testimony was taken before Judge Eric Nee, on the 15th

6 day of July, 2019, and that said testimony has been reduced to

7 typewriting by me and that the foregoing transcript is a true and

8 accurate record of the proceedings herein to the best of my

9 knowledge and belief.

10

11

12

13                *Christina Neufell*

14                Christina Neufell

15                August 26, 2019

16

17

18

19

20

21

22

23

24

25                APP. # 140

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

IN THE MATTER OF CHOO WASHBURN     *
FOR THE APPOINTMENT OF A GUARDIAN    *    FL No. 149491
OF THE PROPERTY                               *

## LINE TO FILE CERTIFICATES OF PHYSICIANS

Please receive for filing a Certificate of Incapacity completed by Dr. Susan Miller, based on an examination conducted on December 19, 2017, and a Certificate of Incapacity completed by Dr. Patricia Nay, also based on an examination conducted on December 19, 2017.

Respectfully submitted,

MARC P. HANSEN
COUNTY ATTORNEY

Peggy R. Odick
Associate County Attorney

Division of Health and Human Services
401 Hungerford Drive, 3rd Floor
Rockville, MD 20850
(240) 777-6762

**RECEIVED**

JAN 24 2018

Clerk of the Circuit Court
Montgomery County, Md.

APP. # 141

## PHYSICIAN'S CERTIFICATE

NOTE: This certificate will be used in a legal proceeding to appoint a guardian for the patient named below. The information it contains must be based on your personal examination of the patient. (However, you may also consider history obtained from reliable sources.) Please address each issue contained in the certificate including the nature, cause, extent and probable duration of any disability that your patient may have which interferes with his/her ability to make responsible decisions about health care, food, clothing, shelter or property. It is possible that your testimony about this information may be required at a hearing. Thank you for your concern and cooperation.

PATIENT'S NAME: _Choo   Washburn_

PATIENT'S ADDRESS: _3521 Cummings Lane, Chevy Chase MD 20815_

I, _Susan J. Miller, MD_
[Physician's name]
Address, _10215 Fernwood Rd  Suite 630_
_Bethesda, MD   20817_

Telephone number: _240 - 449 - 3094_

I am a graduate of _Eastern Virginia Medical School_
School of Medicine.

I am licensed to practice medicine in the United States. I ~~am~~ was Board Certified in _Internal Medicine / Geriatrics_ My specialty is _Internal Medicine_
_Geriatrics_ . I have known this patient for _2 hours_
(length of time) and (give a brief history of your involvement with the patient)
_Met patient with social worker Karen Serio, APS at Court House and
observed her during court proceeding (Circuit Court Family Law) 1 hour_
_She refused to meet with me as a second doctor in private so spoke with her for an additional hour_
I personally examined _Choo Washburn_ on _12 / 19_ ,20_17_ _in Lobby._
The examination lasted approximately _2 hours_
[time]

I performed the following tests: _Unable to do formal testing. Patient refused._
_Dr. Nay al and I could only speak with her and gently ask questions_
_Revised 2005 forensic Psychology Assessment, but patient refused any_
_request for other records or formal testing_                        (APP. # 14)
The patient exhibited the following symptoms:

Physical: _Arrived with multiple suitcases carrying all her documents (legal)_
_for years. Would leave them in lobby walk away come back_
_R. fled through papers during Court proceedings. Pressured Speech_

2

this well groomed, no physical distress or visible pain.

Mental: Has memory, but distorts facts, pressured speech, difficulty
staying on task, ignors court rules, perseveration, very paranoid about
ex-husbands, involvement in court proceeding despite being told several times
this was an APS concern. Parental concerns about contempt. Not able to
understand particular context from home, unable to take in information.
Based on tests and my examination of this patient, it is my professional opinion that s/he
due to her delusions. Financially does not understand facts about property sold or

[ ]  *does not* have mental disability which interferes with the ability to make or
communicate responsible decisions regarding health care, food, clothing, shelter or
administration of property.

[ ✓ ]  *does* have a mental disability which interferes with the ability to make or
communicate responsible decisions regarding health care, food, clothing, shelter or
administration of property.

The disability is diagnosed as _Obsessive Compulsive disorder with_
_Delusions_

The nature of the disability is _It appears to have progressed since 2005_
_assessment_

The cause of the disability is _not known_

The extent of the disability is _____

The probable duration of the disability is _permanent and progressive_
_as refuses any treatment or formal assessment._

The patient retains the ability to perform the following functions: _She can_
_manage activities of daily living, instrumental activities of daily_
_living and is able to say who she wants as_
_a guardian. She has memory, she can do_
_simple arithmetic._

APP. # 143

<u>3</u>

The patient **does** [ ]   **does not** [✓] require institutional care.

[ · ] In my opinion, the patient has a disability which prevents her/him from making or communicating **any** responsible decisions concerning her/his <u>person</u>.

[ ] In my opinion, the patient has a disability which prevents her/him from making or communicating **some** responsible decisions concerning her/his <u>person</u>. The patient is able to decide: _____

_____

[ ] In my opinion, the patient has a disability which prevents her/him from making or communicating **any** responsible decisions concerning her/his <u>property</u>.

[✓] In my opinion, the patient has a disability which prevents her/him from making or communicating **some** responsible decisions concerning her/his <u>property</u>. The patient is able to decide: <u>who can help her make decision</u>

_____

[✓] In my opinion, the patient has a sufficient mental capacity to understand the nature of guardianship and **can** consent of the appointment of a guardian.

[ ] In my opinion, the patient does not have sufficient mental capacity to understand the nature of guardianship and **cannot** consent to the appointment of a guardian.

I solemnly swear and affirm under the penalties of perjury and upon personal knowledge that the contents of this Physician's Certificate are true.

_____12/19/17_____
**Date**

_____
**Physician's Signature**

APP. #144     _Susan J. M. Hernes_
**Printed Name**

CERTIFIC.REV. 07/18/17

## PHYSICIAN'S CERTIFICATE

**NOTE:** This certificate will be used in a legal proceeding to appoint a guardian for the patient named below. The information it contains must be based on your personal examination of the patient. Please address each issue contained in the certificate including the *nature, cause, extent and probable duration* of any disability that your patient may have which interferes with his or her ability to make responsible decisions about health care, food, clothing, shelter or property. It is possible that your testimony about this information may be required at a hearing. Thank you for your concern and cooperation.

PATIENT'S NAME:      Choo Washburn

PRESENT ADDRESS:     3521 Cummings Lane
                     Chevy Chase, MD 20815

I, Patricia Tomsko Nay, MD, CMD, located at 11119 Rockville Pike, Suite G-100, Rockville, MD 20852, am a graduate of the Ohio State University College of Medicine. I am licensed to practice medicine in Maryland. My Maryland license number is D0051916. I am certified in Family Medicine, Hospice and Palliative Medicine, and Quality Management. My specialty is Geriatrics.

I have known Choo Washburn since December 19, 2017. The history of my involvement with Choo Washburn is the following: I interviewed her at the Montgomery County Circuit Courthouse, 50 Maryland Avenue, Rockville, Maryland 20850.

I personally examined Choo Washburn on the 19th of December, 2017. The interview lasted 45 minutes. I performed a history, interview, and a mental status evaluation.

Based on tests and my examination of Choo Washburn, it is my professional opinion that she:

[ ]   does not have a mental disability that interferes with the ability to make or communicate responsible decisions regarding health care, food, clothing, shelter, or administration of property.

[ X ]   does have a mental disability that interferes with the ability to make or communicate responsible decisions regarding health care, food, clothing, shelter, or administration of property.

*APP. # 145*

Page 1 of 3

The disability is diagnosed as obsessive compulsive personality disorder with histrionic personality features.

The nature of the disorder is enduring patterns of maladaptive personality traits across a wide range of situations that cause significant distress and impaired functioning.

The cause of the disability is unknown at this time.

The extent of the disability is across the major executive functions, those self-supervisory skills necessary for self-monitoring, self-regulation, planning, and foresight.

The probable duration is long-standing and permanent.

There is no cure, but supportive treatments include psychotherapy and self-education with medications as an adjunct.

Choo Washburn [   ] does   [ X ] does not   require 24-hour supervision at this time.

PERSON

[   ]   In my opinion, Choo Washburn has a disability which prevents her from making or communicating **any** responsible decisions concerning her **person**.

[ X ]   In my opinion, Choo Washburn has a disability which prevents her from making or communicating **some** responsible decisions concerning her **person**.

PROPERTY

[ X ]   In my opinion, Choo Washburn has a disability which prevents her from making or communicating **any** responsible decisions concerning her **property**.

[   ]   In my opinion, Choo Washburn has a disability which prevents her from making or communicating **some** responsible decisions concerning her **property**.

Page 2 of 3        APP. # 146

CAPACITY

[ ]   In my opinion, Choo Washburn **does have** sufficient mental capacity to understand the nature of guardianship and **can** consent to the appointment of a guardian.

[ X ]   In my opinion, Choo Washburn **does not have** sufficient mental capacity to understand the nature of guardianship and **cannot** consent to the appointment of a guardian.

I solemnly swear and affirm under the penalties of perjury and upon personal knowledge that the contents of this petition are true.

Date: December 19, 2017          *Patricia Tomsko Nay, MD*
                                 Patricia Tomsko Nay, MD

APP. # 147

### PHYSICIAN'S CERTIFICATE OF COMPETENCY

I, _WONSOCK SHIN MD_ (name) _410 pine st. SE #200_ (address,

phone number), do hereby certify; _Vienna VA 22180  703-865-8615_

1. That I am a physician duly licensed to practice medicine in the United States, having
   specialized in the filed of _internal Medicine_ for _20_ years.

2. That I have managed _CHOO WASHBURN_ (alleged disabled name ) for
   _____ (disability)/

3. That on the _24th_ day of _January_, ~~2018~~, I last examined
   _2019_ _am wk 1/24/19_
   _CHOO WASHBURN_ (alleged disabled name), and in my professional medical
   opinion within a reasonable degree of medical certainty, find _CHOO WASHBURN_
   (alleged disabled name) does not have a mental disability and that she is capable of
   making and communicating responsible decisions concerning her personal affairs and
   property.

I, the undersigned, do hereby further certify, under the penalties of perjury, that all of the

statements set forth in the foregoing Certificate are true and correct to the best of my knowledge,

information and belief.

DATE: _01/25/2019_

_Wonsock Shin_ MD
(NAME)
Wonsock Shin MD
410 Pine St, SE #200
Vienna, VA 22180

APP. # 148



**MAPLE**
**MEDICAL**
**GROUP**

WONSOCK SHIN, MD, MPH

410 Pine Street, SE    Suite 200    Vienna VA 22180    t.703.865.8615    f.703.865.8632    www.MapleMedicalGroup.com

April 23, 2018

Re: Doctor's Visit

Washburn, Choo (DOB 02/07/1950)

To whom it may concern,

Ms. Washburn is both mentally and physically in good condition.  She is competent to take care of her ownself.

Respectfully,

Dr. Wonsock Shin

APP. #149

**INOVA HEALTH SYSTEM**

Inova Central Laboratory
2832 Juniper Street
Fairfax, VA 22031

Patient: WASHBURN, CHOO
DOB: 02/07/1950   Age: 68
Gender: F

Collect DT: 04/23/2018   11:33
Print/DT: 04/24/2018   08:04

PID:
Order MD: REFERRING, NOT ON FILE
Copy To:

---

─────────────── PHYSICIAN: ───────────────

REFERRING, NOT ON FILE

| Test Name | Abnormal Result | Normal Result | Reference | Units | Site |
|-----------|-----------------|---------------|-----------|-------|------|
| **HEMATOLOGY** | | | | | |
| **CBC** | | | | | |
| WBC | | 5.33 | 3.50-10.80 | x10 3/uL | J |
| RBC | | 4.39 | 4.20-5.40 | x10 6/uL | J |
| HGB | | 13.5 | 12.0-16.0 | g/dL | J |
| HCT | | 40.9 | 37.0-47.0 | % | J |
| MCV | | 93.2 | 80.0-100.0 | fL | J |
| MCH | | 30.8 | 28.0-32.0 | pg | J |
| MCHC | | 33.0 | 32.0-36.0 | g/dL | J |
| RDW | | 12 | 12-15 | % | J |
| Platelets | | 316 | 140-400 | x10 3/uL | J |
| MPV | | 9.5 | 9.4-12.3 | fL | J |
| Nucleated RBC | | 0.0 | 0.0-1.0 | /100 WBC | J |
| Absolute NRBC | | 0.00 | 0 | x10 3/uL | J |
| **Differential** | | | | | |
| Neutrophils | | 56.2 | None | % | J |
| Lymphocytes | | 36.4 | None | % | J |
| Monocytes | | 5.3 | None | % | J |
| Eosinophils | | 1.5 | None | % | J |
| Basophils | | 0.4 | None | % | J |
| Immature Granulocyte | | 0.2 | None | % | J |
| **Absolute Cell Count** | | | | | |
| Absolute Neutrophils | | 3.00 | 1.80-8.10 | x10 3/uL | J |
| Absolute Lymphocytes | | 1.94 | 0.90-4.40 | x10 3/uL | J |
| Absolute Monocytes | | 0.28 | 0.00-1.20 | x10 3/uL | J |
| Absolute Eosinophils | | 0.08 | 0.00-0.70 | x10 3/uL | J |
| Absolute Basophils | | 0.02 | 0.00-0.20 | x10 3/uL | J |
| Absolute Immature Granulocyte | | 0.01 | 0 | x10 3/uL | J |

Performing Site:
J Inova Central Laboratory, 2832 Juniper Street, Fairfax VA 22031

KEY FOR RESULTS:   L - Low   H - High   AB - Abnormal   CL - Critical Low   CH - Critical High

---

ORDER#: A02306768
ACCOUNT#: T13083114411
Printed/Date: 04/24/18

Page 1 of 2

Font: MM CRS1

WASHBURN, CHOO
MR#: 30529033
Location: 98855

APP. # 150

04/24/18 08:07 AM EDT   via VSI-FAX
RECEIVED 04/24/2018 08:08AM
Page 14 of 16 #1996   BI

## INOVA HEALTH SYSTEM

Inova Central Laboratory
2832 Juniper Street
Fairfax, VA 22031

Patient: WASHBURN, CHOO
DOB: 02/07/1950   Age: 68
Gender: F

Collect D/T: 04/23/2018   11:33
Print/DT: 04/24/2018   08:04

PID:
Order MD: REFERRING, NOT ON FILE
Copy To:

| Test Name | Abnormal Result | Normal Result | Reference | Units | Site |
|-----------|-----------------|---------------|-----------|-------|------|
| **CHEMISTRY** | | | | | |
| General | | | | | |
| Glucose | | 89 | 70-100 | mg/dL | J |

ADA guidelines for diabetes mellitus:
Fasting:  Equal to or greater than 126 mg/dL
Random:   Equal to or greater than 200 mg/dL

| Test Name | Abnormal Result | Normal Result | Reference | Units | Site |
|-----------|-----------------|---------------|-----------|-------|------|
| BUN | | 18.0 | 7.0-19.0 | mg/dL | J |
| Creatinine | | 0.8 | 0.4-1.5 | mg/dL | J |
| Sodium | | 141 | 136-145 | mEq/L | J |
| Potassium | | 3.7 | 3.5-5.1 | mEq/L | J |
| Chloride | | 105 | 100-111 | mEq/L | J |
| $CO_2$ | | 25 | 21-29 | mEq/L | J |
| Calcium | | 9.3 | 8.5-10.5 | mg/dL | J |
| Protein Total | | 7.0 | 6.0-8.3 | g/dL | J |
| Albumin | | 4.2 | 3.5-5.0 | g/dL | J |
| AST | | 18 | 5-34 | U/L | J |
| ALT | | 20 | 0-55 | U/L | J |
| Alkaline Phosphatase | | 82 | 37-106 | U/L | J |
| Bilirubin Total | | 0.5 | 0.1-1.2 | mg/dL | J |
| Globulin | | 2.8 | 2.0-3.7 | g/dL | J |
| A/G Ratio | | 1.5 | 0.9-2.2 | | J |
| GFR | | >60.0 | | | J |

Disease State Reference Ranges:
   Chronic Kidney Disease; < 60 ml/min/1.73 sq.m
   Kidney Failure; < 15 ml/min/1.73 sq.m
   [Calculated using IDMS-Traceable MDRD equation (based on
   gender, age and black vs. non-black race) recommended by
   National Kidney Disease Education Program. No data
   available for non-white, non-black race.]

GFR estimates are unreliable in patients with:
   Rapidly changing kidney function or recent dialysis,
   extreme age, body size or body composition (obesity,
   severe malnutrition). Abnormal muscle mass (limb
   amputation, muscle wasting). In these patients,
   alternative determinations of GFR should be obtained.

| Test Name | Abnormal Result | Normal Result | Reference | Units | Site |
|-----------|-----------------|---------------|-----------|-------|------|
| Hemolysis Index | | 10 | 0-18 | Index | J |

Performing Site:
J Inova Central Laboratory, 2832 Juniper Street, Fairfax VA 22031

KEY FOR RESULTS:  L - Low   H - High   AB - Abnormal   CL - Critical Low   CH - Critical High

ORDER#: A02306768
ACCOUNT#: T13083114411
Printed/Date: 04/24/18

Page 2 of 2

Name: MM CRS1

WASHBURN, CHOO
MR#: 30529033
Location: 98855

APP. # 151

# PHYSICIAN'S CERTIFICATE OF COMPETENCY

I, _TOBY KARYADI, CRNP_ (name) _18950 OFFICE PARK DR, MD 20896_ (address,
phone number), do hereby certify;  _T: 301 330 2700_

1. That I am a physician *NURSE PRACTITIONER* duly licensed to practice medicine in the United States, having
   specialized in the field of _FAMILY NURSE PRACT_ for _11_ years.

2. That I have managed *FIELD* _CHOO WASHBURN_ (alleged disabled name ) for
   _Physical exam_ (disability)/

3. That on the _8th_ day of _June_, 2018, I last examined
   _CHOO WASHBURN_ (alleged disabled name), and in my professional medical
   opinion within a reasonable degree of medical certainty, find _CHOO WASHBURN_
   (alleged disabled name) does not have a mental disability and that she is capable of
   making and communicating responsible decisions concerning her personal affairs and
   property.

I, the undersigned, do hereby further certify, under the penalties of perjury, that all of the
statements set forth in the foregoing Certificate are true and correct to the best of my knowledge,
information and belief.

DATE: _11/01/2018_

_TOBY KARYADI, CRNP_
(NAME)

APP. # 152

REF. #24



Montgomery Village Office
18550 Office Park Dr.
Montgomery Village, MD 20886
Tel: 301-330-2700
Fax: 301-990-7170

Date: June 8, 2018

Re: Choo Washburn (DOB: 02/07/1950)

To Whom It May Concern:

This letter is to inform that, based on our visit today, Mrs. Choo Washburn is physically and mentally healthy. My impression is that she is very capable of managing her own activity of daily living, including domestic and financial affairs.

If you have any further question, please feel free to contact the office.

Sincerely,

Toby Karyadi, CRNP

APP. # 153

Jun 27, 2018 13:04 PM

**Washburn, Choo K,** F, 02/07/1950

📞 301-549-6105

## CUMULATIVE REPORT

### Urinalysis, Routine

| | |
|---|---|
| COLLECTION DATE | 06/08/2018 |
| Order Date | 06/08/2018 |
| Result Date | 06/09/2018 |
| Ordering Physician | Karyadi, Toby |
| Urine-Color | Yellow (Yellow ) |
| Occult Blood | Negative (Negative ) |
| Nitrite, Urine | Negative (Negative ) |
| pH | 5.0 (5.0-7.5 ) |
| Appearance | Clear (Clear ) |
| WBC Esterase | Negative (Negative ) |
| Protein | Negative (Negative/Trace ) |
| Glucose | Negative (Negative ) |
| Ketones | Negative (Negative ) |
| Bilirubin | Negative (Negative ) |
| Urobilinogen,Semi-Qn | 0.2 (0.2-1.0 mg/dL) |
| Specific Gravity | 1.027 (1.005-1.030 ) |

### TSH

| | |
|---|---|
| COLLECTION DATE | 06/08/2018 |
| Order Date | 06/08/2018 |
| Result Date | 06/09/2018 |
| Ordering Physician | Karyadi, Toby |
| TSH | 1.990 (0.450-4.500 uIU/mL) |

### CBC With Differential/Platelet

| | |
|---|---|
| COLLECTION DATE | 06/08/2018 |
| Order Date | 06/08/2018 |
| Result Date | 06/09/2018 |
| Ordering Physician | Karyadi, Toby |
| Immature Granulocytes | 0 (Not Estab. %) |
| Immature Grans (Abs) | 0.0 (0.0-0.1 x10E3/uL) |
| Neutrophils (Absolute) | 2.9 (1.4-7.0 x10E3/uL) |
| Baso (Absolute) | 0.0 (0.0-0.2 x10E3/uL) |
| Hematocrit | 43.2 (34.0-46.6 %) |
| WBC | 5.2 (3.4-10.8 x10E3/uL) |
| Monocytes(Absolute) | 0.3 (0.1-0.9 x10E3/uL) |
| Hemoglobin | 14.1 (11.1-15.9 g/dL) |
| Eos (Absolute) | 0.1 (0.0-0.4 x10E3/uL) |
| MCV | 93 (79-97 fL) |
| MCH | 30.3 (26.6-33.0 pg) |
| MCHC | 32.6 (31.5-35.7 g/dL) |
| RDW | 13.2 (12.3-15.4 %) |
| Platelets | 331 (150-379 x10E3/uL) |
| | 6 |

*APP. # 154*

| COLLECTION DATE | 06/08/2018 |
|---|---|
| Monocytes | (Not Estab. %) |
| | 37 |
| Lymphs | (Not Estab. %) |
| | 1 |
| Eos | (Not Estab. %) |
| | 0 |
| Basos | (Not Estab. %) |
| | 1.9 |
| Lymphs (Absolute) | (0.7-3.1 x10E3/uL) |
| | 56 |
| Neutrophils | (Not Estab. %) |
| | 4.65 |
| RBC | (3.77-5.28 x10E6/uL) |

## Lipid Panel

| COLLECTION DATE | 06/08/2018 |
|---|---|
| Order Date | 06/08/2018 |
| Result Date | 06/09/2018 |
| Ordering Physician | Karyadi, Toby |
| | 120 H |
| LDL Cholesterol Calc | (0-99 mg/dL) |
| | 16 |
| VLDL Cholesterol Cal | (5-40 mg/dL) |
| | 87 |
| HDL Cholesterol | (>39 mg/dL) |
| | 78 |
| Triglycerides | (0-149 mg/dL) |
| | 223 H |
| Cholesterol, Total | (100-199 mg/dL) |

## Comp. Metabolic Panel (14)

| COLLECTION DATE | 06/08/2018 |
|---|---|
| Order Date | 06/08/2018 |
| Result Date | 06/09/2018 |
| Ordering Physician | Karyadi, Toby |
| | 76 |
| eGFR If Afircn Am | (>59 mL/min/1.73) |
| | 66 |
| eGFR If NonAfricn Am | (>59 mL/min/1.73) |
| | 9.5 |
| Calcium, Serum | (8.7-10.3 mg/dL) |
| | 7.4 |
| Protein, Total, Serum | (6.0-8.5 g/dL) |
| | 12 |
| ALT (SGPT) | (0-32 IU/L) |
| | 17 |
| AST (SGOT) | (0-40 IU/L) |
| | 68 |
| Alkaline Phosphatase, S | (39-117 IU/L) |
| | 0.6 |
| Bilirubin, Total | (0.0-1.2 mg/dL) |
| | 1.6 |
| A/G Ratio | (1.2-2.2 ) |
| | 2.8 |
| Globulin, Total | (1.5-4.5 g/dL) |
| | 4.6 |
| Albumin, Serum | (3.6-4.8 g/dL) |
| | 26 |
| Carbon Dioxide, Total | (18-29 mmol/L) |
| | 86 |
| Glucose, Serum | (65-99 mg/dL) |
| | 102 |
| Chloride, Serum | (96-106 mmol/L) |
| | 4.2 |
| Potassium, Serum | (3.5-5.2 mmol/L) |
| | 142 |
| Sodium, Serum | (134-144 mmol/L) |
| | 23 |
| BUN/Creatinine Ratio | (12-28 ) |
| | 0.90 |
| Creatinine, Serum | (0.57-1.00 mg/dL) |
| | 21 |
| BUN | (8-27 mg/dL) |

Washburn, Choo K. F. 02/07/1950

APP. # 155

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| CHOO WASHBURN | * |
| Plaintiff, | * |
| v. | *   Case No. 403867-V |
| LARRY RICHARD WASHBURN | * |
| Defendant | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### ORDER OF JUDGMENT

This matter came before the Court on January 6, 2016 for a bench trial. Upon consideration of the testimony presented and a review of the file, it is therefore, this 19th day of February, 2016, hereby

**ORDERED,** that judgment is entered against the Defendant, Larry Washburn, for the benefit of the Plaintiff, Choo Washburn, in the amount of twelve thousand two hundred seventeen dollars and thirty-nine cents ($12,217.39).

Marielsa A. Bernard, Judge

APP. # 156

ENTERED

FEB 2 3 2016

Clerk of the Circuit Court
Montgomery County, Md.

1