UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHOO WASHBURN, <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. OFFICE OF PERSONNEL MANAGMENT, <br><br> *Defendant*. | Civil Action No. 21-1281 (TJK) |

**MEMORANDUM OPINION**

Plaintiff sued the Office of Personnel Management, seeking to redirect federal-retirement-benefit payments linked to her ex-husband's federal service that it is paying to her court-appointed guardian. But Congress has vested the exclusive power to decide such issues in other adjudicative bodies. So the Court must dismiss most of her claims for lack of subject-matter jurisdiction. To the extent the Court has jurisdiction, it will dismiss her complaint for failing to state a claim.

**I.   Background**

   **A.   Factual Background**

Plaintiff alleges that the Office of Personnel Management ("OPM") has failed to pay her benefits correctly. *See* ECF No. 27 ("Compl.") at 5–12. She says her former husband, a retired federal employee, has benefits payable under the Civil Service Retirement System, Compl. at 6, and that she is entitled to roughly a third of those benefits, Compl. at 5. But OPM, she explains, is paying her share of those benefits to a person named Robert McCarthy instead. Compl. at 5–6.

She attributes those payments to computer hack, for which she says OPM is responsible.[1]  *See* Compl. at 6.  She asks the Court for a writ of mandamus compelling OPM to pay the annuity to her.  *See* Compl. at 10–11.

But Plaintiff acknowledges that McCarthy is a court-appointed guardian of her property.  *See* Compl. at 17 ¶ 19, 40 ¶ 9.  A Maryland state court imposed that guardianship on Plaintiff after concluding that she was "unable to manage her property and affairs effectively."  *Washburn v. McCarthy*, No. 20-37, 2021 WL 4477449, at *1 (Md. Ct. Spec. App. Sept. 30, 2021) (quotation omitted).  Plaintiff considers that order "absolutely WRONG."  Compl. at 17 ¶ 19.

Plaintiff further asserts entitlement to health-insurance coverage under a federal plan.  *See* Compl. at 21–23.  She also claims that she is owed another type of benefits, in part because her former husband did not disclose them during their divorce proceedings.  *See* Compl. at 23–25.

Finally, Plaintiff has corresponded several times with OPM about her claims.  *See* Compl. at 15, 17, 19–22, 24.  At first, she says it paid her benefits appropriately under what Plaintiff describes as OPM's decision on her approved application.  Compl. at 19–20.  It is thus possible to construe her claims against OPM as being based on the agency's mistake, inadvertence, or failure to consider her position.  But OPM says it has now rendered a final decision on her requests, insofar as they are within the agency's power.  ECF No. 48-1 ¶ 4.  OPM has concluded that it must pay benefits owed to Plaintiff to McCarthy as her representative payee under the guardianship order of the Maryland state court.  ECF No. 48-2 at 6.

---

[1] Specifically, she believes her former husband hacked her annuity account.  *See* Compl. at 14 ¶¶ 7–9.  She faults OPM for failing to investigate her claim once she brought it to the agency's attention.  *See* ECF No. 28 at 4–5.

### B. Procedural History

Plaintiff sued what she called the "Court Ordered Benefits Section" of OPM, asking for an order compelling the agency to record the disputed annuity as belonging to her and to make its payments directly to her. *See* ECF No. 1 at 2–4. She also requested orders directing other payments to her and directing the conversion of assets managed by McCarthy into other forms. *See id.* at 4–8. Plaintiff originally obtained a Clerk's Entry of Default, ECF No. 13, but that default was vacated with Plaintiff's consent after OPM appeared. *See* ECF Nos. 22–24; Min. Order of June 1, 2022. OPM moved to dismiss for lack of subject-matter jurisdiction, ECF No. 25, and Plaintiff amended her complaint in response, ECF No. 27. Because Plaintiff had the right to amend her pleading under Fed. R. Civ. P. 15(a)(1)(B), the Court denied OPM's first motion to dismiss as moot. Min. Order of June 14, 2022.

Plaintiff then moved to "withdraw" part of her prior filings and to substitute new legal authorities in place of those already asserted. ECF No. 28. The Court construes that motion as one for further amendments of Plaintiff's complaint. The same day, Plaintiff filed another motion to "attach" various portions of her original complaint to her then-operative complaint, ECF No. 29, which the Court also construes as a motion to amend her complaint.

OPM reasserted its motion to dismiss for lack of subject-matter jurisdiction. ECF No. 31. It contends that the Civil Service Reform Act ("CSRA") divests this Court of jurisdiction in favor of an exhaustive administrative remedial scheme. *See* ECF No. 31-1 at 10–13. It also noted that— at that time—it had not yet "rendered a final decision" on Plaintiff's requests. *Id.* at 13–14. Plaintiff responded to that motion in part by moving for summary judgment. ECF No. 39. She also again asked to amend her operative complaint by appending some materials she had already filed. *See* ECF No. 40.

During further briefing on those motions, OPM notified the Court that it had rendered a final decision on Plaintiff's requests before the agency. ECF No. 48 at 9; *see also* ECF Nos. 48–1, 48-2. Seemingly based on that representation, Plaintiff moved to amend her complaint once more to add claims arising from what she calls OPM's false statements that it had rendered a final decision against her. *See* ECF No. 52 at 1–2.

## II.     Legal Standards

Under Rule 12(b)(1), Plaintiff has the burden to establish the Court's subject-matter jurisdiction. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). That burden includes the obligation to "establish by a preponderance of the evidence" that a jurisdiction-stripping statute, such as the CSRA, does not preclude the Court's consideration of the case. *See Martin v. EPA*, 271 F. Supp. 2d 38, 43 (D.D.C. 2002). In evaluating its jurisdiction at the pleading stage, the Court generally should "assume the truth of all material factual allegations in the complaint and . . . grant[ Plaintiff] the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation omitted). That is particularly true here because Plaintiff proceeds pro se; the Court must "liberally construe[ ]" her filings and hold her to a "less stringent standard." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But she still has the burden to prove subject-matter jurisdiction. *Bickford v. United States*, 808 F. Supp. 2d 175, 179 (D.D.C. 2011). In evaluating whether she has met that burden, the Court may consider the allegations in her complaint, the undisputed facts in the record, and, if necessary, its resolution of disputed facts. *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).

To the extent the Court has subject-matter jurisdiction, the question is whether Plaintiff has stated a claim for which relief may be granted. OPM has not moved to dismiss on that basis, so the ordinary standard under Federal Rule of Civil Procedure 12(b)(6) does not apply. *See Baker*

4

*v. Director*, 916 F.2d 725, 726–27 (D.C. Cir. 1990) (per curiam).  Still, after "taking all the material allegations of the complaint as admitted and construing them in [Plaintiff's] favor" the Court can dismiss a complaint sua sponte.  *Turan Petroleum, Inc. v. Ministry of Oil and Gas*, 406 F. Supp. 3d 1, 4 n.1 (D.D.C. 2019) (quotation omitted).  Sua sponte dismissal is appropriate if it is "patently obvious" that Plaintiff cannot "prevail[ ] on the facts alleged in [her] complaint." *Baker*, 916 F.2d at 727.  That is so "when the established law plainly prohibits this kind of suit." *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 47 (D.D.C. 2013).

**III.     Analysis**

Plaintiffs' filings are hard to decipher.  She mentions several legal authorities, but their relationship to her claims is often unclear.  Because she proceeds pro se, the Court will do its best to "infer the claims made wherever possible," seeking to identify "all possible legal theories that could apply."  *Davis v. United States*, 973 F. Supp. 2d 23, 26 (D.D.C. 2014).  Moreover, the Court will consider the material in all of Plaintiff's filings, including her various amendment motions, in deciding whether she has established jurisdiction or stated a claim, not just that in her complaint. *See Watson v. D.C. Water & Sewer Auth.*, 249 F. Supp. 3d 462, 464 (D.D.C. 2017); *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015).

**A.     To the Extent Plaintiff Seeks to Compel a Decision, Her Claim is Moot**

This Court's power to decide an issue depends on whether there is a "live" dispute in which the parties retain a "legally cognizable interest."  *See Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726–27 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)).  The dispute must remain live "at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quotation omitted).  If a claim becomes "moot because it no longer presents a live controversy, the court lacks jurisdiction to entertain the claim, and must dismiss it." *Han v. Lynch*, 223 F. Supp. 3d 95, 105 (D.D.C. 2016).

In very limited circumstances, federal courts have mandamus authority to order agencies to render a final decision. *See generally Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79–81 (D.C. Cir. 1984). Perhaps Plaintiff means to invoke that authority because she asks, several times, for various mandamus orders and appears to dispute that the agency has rendered a final decision against her. *See, e.g.*, Compl. at 10–11; ECF No. 39 at 12 ¶ 6; ECF No. 52 at 1–2. So construed, Plaintiff's claim is that OPM has unreasonably delayed in acting on the information she presented to it. *See, e.g.*, *Arab v. Blinken*, 600 F. Supp. 3d 59, 68–72 (D.D.C. 2022) (applying the standard for unreasonable-delay claims "under both the Mandamus Act and the [Administrative Procedure Act]").

But any such claim is now moot because OPM has rendered a final decision.[2] An unreasonable-delay claim does not survive the issuance of the decision whose delay was challenged. *See, e.g.*, *Potomac Elec. Power Co. v. ICC*, 702 F.2d 1026, 1035 (D.C. Cir. 1983); *Martin v. O'Rourke*, 891 F.3d 1338, 1349 (Fed. Cir. 2018); *Laguatan v. Lacey*, No. 99-5001, 1999 WL 504927, at *1 (D.C. Cir. June 23, 1999); *Ctr. for Biological Diversity v. Kempthorne*, 489 F. Supp. 2d 293, 296–97 (D.D.C. 2007). The Court can no longer provide "effective relief"—even if it ever

---

[2] Insofar as Plaintiff disputes the existence of a final agency decision, *see* ECF No. 52 at 1–2, the court resolves that dispute by finding that the agency has issued a final decision. A copy of its ruling is in the record, ECF No. 48-2, and it is explicitly a "final decision," *id.* at 7, that contains instructions for appealing the decision before the Merit Systems Protection Board, *id.* at 8–16. An agency official has also declared that the decision is final. ECF No. 48-1 ¶ 4. Neither Plaintiff nor OPM has given the Court any reason to think that OPM will take further action on her requests. Moreover, "if subject-matter jurisdiction turns on contested facts, the trial judge may . . . review the evidence and resolve the dispute." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The Court resolves this dispute, if there is one, because its subject-matter jurisdiction depends on a contested fact.

could—and so it must dismiss Plaintiff's claim insofar as it seeks a final decision. *See Ctr. for Biological Diversity*, 489 F. Supp. 2d at 297.[3]

### B. The CSRA Divests The Court of Jurisdiction Over Plaintiff's Statutory Claims

Plaintiff's core demand is that OPM begin paying her former husband's annuity to her instead of McCarthy. Ancillary to that demand are her claims related to other benefits, such as health insurance, and McCarthy's management of her other assets. *See* Compl. at 5–6, 21–25; ECF No. 1 at 4–8. OPM notes that it has no control over several of those desired actions, *see, e.g.*, ECF No. 48 at 6, 10, but its larger point is that this Court lacks jurisdiction to consider Plaintiff's claims because Congress has vested review over those sorts of claims elsewhere, *see* ECF No. 31-1 at 10–13. The Court agrees.[4]

For actions within its purview, the CSRA "removes the jurisdiction given to the federal courts" by the federal-question statute. *See Whitman v. Dep't of Transp.*, 547 U.S. 512, 514 (2006) (per curiam). The CSRA "comprehensively overhauled the civil service system." *Lindahl v. OPM*, 470 U.S. 768, 773 (1985). The act created the Merit Systems Protection Board ("MSPB"), a "quasi-judicial agency" that adjudicates some civil-service-related disputes. *See Zummer v. Sallet*, 37 F.4th 996, 1003 (5th Cir. 2022) (citing *Lindahl*, 470 U.S. at 773–74). In doing so, the act

---

[3] The Court does not suggest that it had subject-matter jurisdiction over this aspect of Plaintiff's claim before it became moot. When a court "has no present or future jurisdiction over agency actions assigned by statute to . . . review [elsewhere,] it can contemplate no jurisdiction that mandamus might aid." *Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 77. In other words, this Court could not order OPM to render a final decision if it would not have jurisdiction to review the decision itself. *See McReady v. Breeden*, No. 90-338 (JHG), 1991 WL 255590, at *8 (D.D.C. Nov. 14, 1991).

[4] To the extent Plaintiff opposes the Maryland state court's appointment of McCarthy as her guardian, the Court lacks jurisdiction because it cannot "review judicial decisions by state . . . courts." *Richardson v. D.C. Court of Appeals*, 83 F.3d 1513, 1514 (D.C. Cir. 1996); *see also United States v. Choi*, 818 F. Supp. 2d 79, 85 (D.D.C. 2011) (District courts "generally lack[ ] appellate jurisdiction over other judicial bodies . . . .").

"centralized adjudication of those disputes and replaced a 'patchwork' system that was 'lengthy,' 'complicated,' and heterogenous." *Id.* (quoting *United States v. Fausto*, 484 U.S. 439, 444–45 (1988)). In that centralized system, OPM decides benefit claims, the MSPB reviews those decisions, and aggrieved parties may obtain judicial review of MSPB decision in the Federal Circuit. *See Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005).

That review scheme is exclusive, as the D.C. Circuit has repeatedly confirmed. *E.g.*, *Fornaro*, 416 F.3d at 67; *Carducci v. Regan*, 714 F.2d 171, 173–75 (D.C. Cir. 1983); *Graham v. Ashcroft*, 358 F.3d 931, 933– 35 (D.C. Cir. 2004). That exclusivity applies "in a variety of contexts." *Fornaro*, 416 F.3d at 67. And the unavailability of relief for statutory claims does not alter that conclusion. *See Carducci*, 714 F.2d at 174. In other words, "what you get under the CSRA is what you get." *Fornaro*, 416 F.3d at 67.

Those principles foreclose the Court's jurisdiction over Plaintiff's statutory claims. Plaintiff claims OPM must pay her directly under 5 U.S.C. § 8345(j)(1)(A). OPM has decided it must pay her benefits, to the extent they are within its power, to McCarthy under *id.* § 8345(e)(1).[5] That decision is reviewable by the MSPB under *id.* §§ 8347(d)(1), 8461(e)(1). A final decision of that body is judicially reviewable by the Federal Circuit. *Id.* § 7703(b)(1); 28 U.S.C. § 1295(a)(9). This Court may not upset "the CSRA regime's exclusivity for individual benefits determinations." *Fornaro*, 416 F.3d at 405.

---

[5] "Payment due . . . an individual mentally incompetent or under other legal disability, may be made to the person . . . who is constituted guardian or other fiduciary by the law of the State of residence of the claimant or is otherwise legally vested with the care of the claimant or his estate." When a guardianship has been imposed by a court, OPM's regulations provide that the agency will make payments to the guardian until it receives "[a] certified copy of a court order restoring the annuitant's rights." 5 C.F.R. § 849.602(b).

Plaintiff's invocation of other statutes changes nothing.  She references the Administrative Procedure Act ("APA"), the Privacy Act of 1974, and the Mandamus Act, but in doing so, she walks well-trodden ground.  This Court has recognized before that the APA does not "open the district court's door" if the challenged action is covered by the CSRA.  *Esparraguera v. Dep't of the Army*, No. 21-CV-421, 2022 WL 873513, at *3 (D.D.C. Mar. 24, 2022).  The same is true for the Privacy Act, *see Kleinman v. Department of Energy*, 956 F.2d 335, 338 (D.C. Cir. 1992), and the Mandamus Act, *see Carson v. U.S. Office of Special Counsel*, 514 F. Supp. 2d 54, 57–58 (D.D.C. 2007).

Plaintiff must seek review of OPM's payment decisions in the MSPB or not at all.  *See* 5 U.S.C. § 8461(e)(1).  This Court lacks jurisdiction over her statutory claims, and so it will dismiss them.  *Arbaugh*, 546 U.S. at 514.

### C. To the Extent Plaintiff Asserts a Due-Process Violation, It Is Patently Obvious She Has Not Stated a Claim

But Plaintiff also references her right to due process under the Fifth and Fourteenth Amendments.  *See* ECF No. 27 at 20 ¶ 32; ECF No. 28 at 2.[6]  If she means to assert a constitutional claim under a due-process theory, the Court has jurisdiction.  But she has not stated such a claim.

The Court has jurisdiction over her due-process claim under 28 U.S.C. § 1331.  The MSPB and, by extension, the Federal Circuit, lack jurisdiction to hear constitutional due-process claims in this posture.  *See Esparraguera*, 2022 WL 873513, at *3–4 (citing *Coleman v. Napolitano*, 65 F. Supp. 3d 99, 105 (D.D.C. 2014)).  And the Supreme Court has explained that a statute wrests other federal courts' jurisdiction to hear constitutional claims only if Congress's intent to do so is clearly expressed in the statute's text.  *See Elgin v. Dep't of the Treasury*, 567 U.S. 1, 9 (2012).

---

[6] Because Plaintiff has sued a federal agency, the Court construes this claim as having been brought only under the Fifth Amendment.  *See Trazell v. Wilmers*, 975 F. Supp. 2d 133, 142 (D.D.C. 2013).

That is because of the "'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). Courts in this district, including this Court, have "determined that the CSRA lacks the sort of heightened showing of congressional intent that would prohibit judicial review of constitutional claims." *Esparraguera*, 2022 WL 873513, at *4. Thus, it does not preclude this Court from reviewing any due-process claim that Plaintiff asserts.[7]

The elements of a due-process claim are: "(i) deprivation of a protected liberty interest or property interest; (ii) by the government; (iii) without the process that is 'due' under the Fifth Amendment." *N.B. ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015). The first element is a threshold question. The Court must find "the deprivation of a protected interest" before it can ask whether the "government's procedures comport with due process." *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (quotation omitted and alteration adopted).

Plaintiff's allegations patently fail to cross the threshold. She does not allege that OPM has deprived her of the annuity without an appropriate process; she says it is making the payments for her benefit to a person that she acknowledges has been appointed by a court as a guardian of

---

[7] It is no jurisdictional problem that Plaintiff seeks monetary relief. A federal agency is immune from suit, a jurisdictional defect, unless Congress says otherwise. *See Loeffler v. Frank*, 486 U.S. 549, 554–55 (1988); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). So the Court's power to hear Plaintiff's due-process claim depends on whether Congress has waived OPM's sovereign immunity. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). In the APA, Congress waived agencies' sovereign immunity for claims seeking "relief other than money damages." 5 U.S.C. § 702. That waiver "applies to any suit whether under the APA or not." *Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996). And although Plaintiff seeks money, that does not mean she seeks money *damages*. In this Circuit, "money damages" under the APA means "compensatory relief"—not "specific relief," regardless of its form. *Md. Dep't of Hum. Res. v. HHS*, 763 F.2d 1441, 1447–48 (D.C. Cir. 1985). In other words, the APA's waiver of sovereign immunity applies to claims asserting "specific legal entitlement to particular monies." *McKoy v. Spencer*, 271 F. Supp. 3d 25, 33 (D.D.C. 2017). That is the nature of Plaintiff's claim; she says she has a right to receive payments from a particular annuity. See Compl. at 20–21 ¶ 32.

her property. *See* Compl. at 6, 17 ¶ 19, 40 ¶ 9. A deprivation of property occurs when a person is stripped of its "possession, use[,] or enjoyment."[8] But in Maryland, a court-appointed guardian steps into the protected person's shoes to obtain title to "all property . . . that is held at the time of appointment or acquired later." *See* Md. Est. & Trusts Code § 13-206(c)(1)(i). And Plaintiff's property interest in the annuity is "defined by" Maryland law. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); Compl. at 19–20 ¶¶ 26–29.[9] In other words, the substance of her right to possess, use, or enjoy those funds is Maryland's to decide, and it has given control to McCarthy.

Because McCarthy acts on Plaintiff's behalf under Maryland law, OPM's entrusting her property to him does not strip Plaintiff of her possession, use, or enjoyment of it. That is because any shortcomings she identifies in her control over the funds preceded and exist independently of the federal procedures she challenges.[10] Although a state's property-right determination is also subject to the federal guarantee of "constitutionally adequate procedures," *see Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1985), this Court lacks jurisdiction to consider

---

[8] *See Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316, 1319 (3d Cir. 1982); *see also United States v. TWP 17 R 4, Certain Real Prop. in Me.*, 970 F.2d 984, 990 (1st Cir. 1992); *Reardon v. United States*, 947 F.2d 1509, 1518–19 (1st Cir. 1991).

[9] Federal law provides only that annuity payments that "would otherwise be made" to a person because of his federal "service . . . shall be paid . . . by [OPM] to another person if and to the extent expressly provided for in the terms of—(A) any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation; or (B) any court order or other similar process in the nature of garnishment for the enforcement of [some] judgment[s] rendered against [the annuitant]." 5 U.S.C. § 8345(j)(1). That language creates no justified "expectation" of receiving any property apart from an independent justification provided by state law. *See Roth*, 408 U.S. at 577.

[10] A different situation would be presented if Plaintiff claimed that the state court had not, in fact, appointed a guardian and challenged OPM's procedures for determining whether one had been appointed. But that is not Plaintiff's claim. *See* Compl. at 17 ¶ 19, 40 ¶ 9.

whether Maryland's procedures were constitutionally adequate, *supra* note 4, so it can inquire no further. In this posture, her lack of direct control over the funds is part of her substantive property right, not a procedure within this Court's jurisdiction.

Because Plaintiff has not alleged that OPM "deprived" her of "property," U.S. Const. amend. V, it is "patently obvious" that she cannot prevail on a due-process claim. *See Baker*, 916 F.2d at 727. The D.C. Circuit has repeatedly held that alleging the deprivation of a protected interest, such as property, is a required element of a due-process claim. *See, e.g.*, *Gen. Elec. Co.*, 610 F.3d at 117. Thus, "established law plainly prohibits" her claim, *Jefferies*, 916 F. Supp. 2d at 47, and the Court will dismiss it sua sponte. Moreover, because Plaintiff appears pro se, the Court has already considered the materials presented in her various amendment motions in reaching that conclusion, so it will deny those motions as futile. *See Singletary v. Howard Univ.*, 939 F.3d 287, 295 (D.C. Cir. 2019). And the Court will not permit further amendment because new allegations consistent with those pleaded could not alter the Court's conclusions. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (per curiam).

## IV. Conclusion

For all the above reasons, the Court will grant Defendant's motion and dismiss the case in part for lack of subject-matter jurisdiction and in remaining part for failure to state a claim. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 11, 2023